SHANE B. TREESH
November 8, 2005

Page 60

1    A.  Correct.

2    Q.  All right.  Now, are you aware that one of the

3  claims that Mr. Washington is making in this suit, this

4  lawsuit, that he was denied a promotion to the position

5  of PSM?

6    A.  Yes.

7    Q.  You are aware of that?

8    A.  Yes.

9    Q.  Has he informed you of that or how do you know

10  that?

11    A.  He was not eligible for a parts sales manager

12  because he would have to be full-time to become a parts

13  sales manager.  You don't go from part-time to parts

14  sales manager.  You have to actually become full-time,

15  have that, get your knowledge and then you would move up

16  to PSM if your store could have it or allow it.

17    Q.  Right.

18    A.  But at his current situation, he was not able to

19  do any of that due to his other job.

20    Q.  Right.  All right.  Now, are you aware that he is

21  claiming in this lawsuit that less qualified employees

22  at Autozone were promoted to a PSM position over him;

23  are you aware of that?

24    A.  Yeah.

25    Q.  Okay.  In fact, he contends that he should have

A047

SHANE B. TREESH
November 8, 2005

Page 61

1  gotten a PSM position over you because he was more

2  qualified than you.  Did you know that?

3     A.  No.

4     Q.  All right.  You don't agree with that, do you?

5     A.  No.

6     Q.  In fact, your automotive knowledge was superior

7  to Mr. Washington's, wasn't it?

8     A.  Yes.

9     Q.  You would come over and help him work on his own

10  car?

11     A.  Correct.

12     Q.  Okay.  Now, Mr. Washington also claims in this

13  suit that he was more qualified for the PSM position

14  than Robert Baker.  Were you aware of that claim?

15     A.  No.  Probably because he had been at the store

16  longer and had more knowledge of the store, is probably

17  what he is referring to as far as more knowledge.

18     Q.  Okay.  Well, you would agree, though, that

19  Mr. Baker's automotive knowledge was superior even to

20  yours, wasn't it?

21     A.  In some areas.  No one knows everything about

22  everything.  Everybody knows a little bit about

23  something and if one person didn't know, we would ask

24  the other person and vice versa.

25     Q.  He knew more about parts than you did, Mr. Baker,

SHANE B. TREESH
November 8, 2005

Page 62

1    didn't he?

2       A.   More about parts?

3       Q.   Yes.

4       A.   It depends on the parts and what they are used

5    for.  Like I said, nobody is an expert in everything.

6       Q.   Okay.

7       A.   Rob would ask me questions about things, I would

8    ask him questions about things.

9       Q.   Okay.  But in certain respects, his parts

10   knowledge was superior to yours, correct?

11      A.   In certain areas, yes.

12      Q.   Okay.  Which would mean at least in those aspects

13   they were superior to Mr. Washington's, weren't they?

14      A.   Yes.

15      Q.   All right.  Now, do you know Deanna Brinn?

16      A.   I know of her.

17      Q.   She worked for Autozone briefly?

18      A.   Correct.

19      Q.   All right.  And you don't have any idea about

20   what her work history was, do you?

21      A.   No.

22      Q.   Either during Autozone and before Autozone?

23      A.   All I know is she used to work at the Dover store

24   and that's about it.

25      Q.   Okay.  So you are not in a position to say

SHANE B. TREESH
November 8, 2005

Page 67

1   license; are you aware of that?

2       A.   He told me.

3       Q.   Now, employees are supposed to show up for work

4   on time, aren't they?

5       A.   Correct.

6       Q.   All right.  Because if they are late, then that

7   would cause customer service to suffer?

8       A.   Correct.

9       Q.   And it would cause a hardship on the other

10  employees, wouldn't it?

11      A.   Yes.

12      Q.   All right.  So if an employee was scheduled to

13  work, say, four p.m. and they didn't show up for work

14  until 4:20, 4:30 p.m., that would warrant a Corrective

15  Action Review, wouldn't it?

16      A.   It should.

17      Q.   Okay.  Now, employees were not allowed to use

18  their cell phones in the workplace, were they?

19      A.   I don't believe so.

20      Q.   Okay.  And you saw Mr. Washington use his cell

21  phone in the workplace; didn't you?

22      A.   Yes.

23      Q.   That would be an Autozone violation?

24      A.   Yes.

25      Q.   All right.  Now, we talked -- you talked earlier

```
prsmsint                        AUTOZONE                      RUN DATE: 08/31/99
prsmshir                   NEW EMPLOYEE SETUP                 TIME: 11:52
                            FOR STORE:1157
```

AUTOZONER INFORMATION

        AUTOZONER #:              OLD SSN # :    -  -
        LAST NAME  : WASHINGTON JR
        FIRST NAME : MELVERT
        MIDDLE NAME:
        SEX: M
        RACE: BLACK
        BIRTHDATE: 1953-12-16
        MARITAL STATUS: SINGLE
        ADDRESS: 319 BILLIE MITCHELL LN
        ADDR 2: APT 308D
        CITY: DOVER
        STATE: DE
        ZIPCODE: 19901
        PHONE #: (302)521-8796

WORK STORE INFORMATION

        WORK STORE: 1157
        STORE CITY: SMYRNA
        STORE STATE: DE
        STORE ZIP: 19977-0000

PAYROLL INFORMATION

        PAY CLASS: PT
        WAGE_CODE: HOURLY
         PAY_RATE: 7.50
        HIRE DATE: 1999-08-30
        HIRE TYPE: NEW HIRE
        JOB TITLE: PART TIME SALES PERSON

FEDERAL WITHHOLDING DATA

        SINGLE         --
        W4 ALLOWANCES: 03
        W4 ADDITIONAL AMT:  0.00

EMERGENCY NOTIFICATION DATA

        NAME: MELVIN SOLL
        PHONE: (302)678-9672
        RELATIONSHIP: FRIEND

        NAME: DOUGLAS WASHINGTON
        PHONE: (540)720-6847
        RELATIONSHIP: BROTHER

HIRED BY:


HIRED BY: 302 PR 0861

A051

# ////AutoZone

*The diversity of our AutoZoners is a vital part of our success. If every AutoZoner were exactly alike, we'd all come up with the same ideas, and our company couldn't grow. Diversity helps us learn new things and see old things from different perspectives.*

*We want every AutoZoner to understand our commitment to diversity, and we want you to be committed, too. Please join us as we work toward this goal:*

## AutoZone Diversity Mission Statement

AutoZone strives to create an environment in which every AutoZoner and every customer is treated with dignity and respect – regardless of race, gender, age, physical ability, sexual orientation or any other perceived difference. We are committed to seeking out talented, diverse people, encouraging them to work to their full potential and valuing their contributions. These AutoZoners will help us remain number one with our customers and in our communities.

**I understand AutoZone's commitment to valuing the diversity of every AutoZoner and every customer, and, as an AutoZoner, I understand my obligation to support this commitment.**

Melvert Washington Jr
Name (Please print.)

1157
Location (store#, DC, call center, department#)

Melvert Washington
Signature

SS#

1-10|2001
Date

**AutoZoner Relations: 1-800-510-1033 (Metro Memphis: 495-7250)**

SKU # 998824    White copy - Personnel Records    Yellow copy - AutoZoner    Pink copy – Store personnel file    10/96

A052

*The diversity of our AutoZoners is a vital part of our success. If every AutoZoner were exactly alike, we'd all come up with the same ideas, and our company couldn't grow. Diversity helps us learn new things and see old things from different perspectives.*

*We want every AutoZoner to understand our commitment to diversity, and we want you to be committed, too. Please join us as we work toward this goal:*

### AutoZone Diversity Mission Statement

AutoZone strives to create an environment in which every AutoZoner and every customer is treated with dignity and respect – regardless of race, gender, age, physical ability, sexual orientation or any other perceived difference. We are committed to seeking out talented, diverse people, encouraging them to work to their full potential and valuing their contributions. These AutoZoners will help us remain number one with our customers and in our communities.

**I understand AutoZone's commitment to valuing the diversity of every AutoZoner and every customer, and, as an AutoZoner, I understand my obligation to support this commitment.**

Melvert Washington Jr
Name (Please print.)

1157
Location (store#, DC, call center, department#)

Melvert Washington
Signature

SS#

Date

A053

AutoZoner Relations: 1-800-510-1033 (Metro Memphis: 495-7250)

## Diversity commitment

AutoZone strives to create an environment in which every AutoZoner and every customer is treated with dignity and respect – regardless of race, gender, age, physical ability, sexual orientation or any other perceived difference. We are committed to seeking out talented, diverse people, encouraging them to work to their full potential and valuing their contributions. These AutoZoners will help us remain number one with our customers and in the communities we serve.

## Equal employment opportunity commitment

AutoZone obeys all applicable laws pertaining to federal, state and local equal employment practices and complies with all applicable orders and regulations. This means there is equal opportunity for all AutoZoners without regard to race, color, religion, sex, national origin, age, physical or mental disability, military veteran status or sexual orientation.

The policy pertains to recruiting, hiring, training, promotions, compensation, benefits, transfers, education and all other aspects of employment with the company. All employment decisions are based on job-related requirements.

## Employment-at-will policy

Employment with AutoZone is an at-will relationship. This means you and AutoZone have the right to terminate your employment at any time, with or without cause or notice. No AutoZoner can change this policy verbally or otherwise.

A054

## Fair treatment

There may be times when AutoZoners question or don't understand an AutoZone policy. For these reasons, we've established problem-solving procedures to help you express your concerns.

Approach your manager with any concerns you have. If you and your manager are unable to solve the problem, talk with your area advisor or district manager. If questions are still unanswered, or you still have concerns or complaints, contact the AutoZoner Relations department for assistance.

AutoZone wants to hear any concerns you have about any policy or program that affects your job performance. We want to work with you to resolve problems as quickly as possible. AutoZone forbids any form of retaliation against you if you choose to use AutoZone's problem-solving procedure or if you file a charge of discrimination with any public agency or legal system.

AutoZoner Relations Hotline: 1-800-510-1033

## Harassment

We want you to know that AutoZone is committed to having a cooperative and harassment-free work environment. If you believe that you've been harassed, tell your manager at once, or report the situation directly to your area advisor. You may also contact the vice president of Human Resources, the director of AutoZoner Services or the AutoZoner Relations manager at 1-800-510-1033. If the company determines that an AutoZoner has engaged in harassment, that AutoZoner will be subject to corrective action, up to and including termination.

A055

## Work schedule

Customers and their needs control our business. Your store scheduling has been carefully planned – we know exactly how many AutoZoners are needed to keep our customers happy and to get the job done.

For these reasons, you may be asked to work nights, weekends, holidays and extra hours to meet business needs.

Your manager will explain the weekly store schedule to you and make every effort to announce any changes in your hours as far in advance as possible. However, the hours, shifts and days of your normal work schedule may not always be the same due to changing business conditions.

Unless otherwise directed by your manager, follow the schedule. Your absence or tardiness can mean heavier workloads for other AutoZoners and may result in corrective action.

A056

# AutoZone

# Corrective Action Review

**Date** _2-2-00_

**Name** _Melvert Washington Sr_    **SS#** _____:_____    **Store#** _1157_

**Check appropriate space below:**

☐ Verbal warning

☒ First written warning

☐ Second written warning

☐ Serious violation
*May be separated without prior warning*

**Type of infraction:** *(fill in below)*

_Register Integrity_

_____

_____

_____

_____

**Details of infraction:** _On 1-26-00 Register Came Up $10.00_
_over._

_____

_____

_____

**Suggestions for improvement:** _When Running A Register you should_
_Focus what you Are Doing So you can Ring The_
_correct Transaction and Give customer The correct_
_change or charge slip when The Sale is Done_
_Follow Autozone Company Policy on Running Registers._

**I have read this report and understand that my signature doesn't necessarily indicate agreement. NOTE: AutoZoner's signature isn't needed for verbal warnings.**

**Notice: Should your performance not improve or should this same violation recur, the following action will be taken:**

_____

_____

_____

_Refused_

_____
AutoZoner's signature

_____
Manager's signature

*Original to your Personnel Records Department*
*Copy to Area Advisor*
*Copy to AutoZoner's Store Personnel File*

A057

*SKU# 932319*

*Rev. 6/97*

To: Dennis \ DM / Area Advisor / Store 1157/
    Autozone Relations Department Manager

Fr: Melvert Washington JR. P/T Sales
    Customer Service

Sub: Fair Treatment / Harassment in the workplace/
    Employee Comments referrencing 03/11/2000 Sales Person Performance Appraisal

Content : 4 total pages

Date: 04/29/2000

I have been employed with Autozone beginning Sept 1999 to present. I am preparing this statement as a direct result of what in my opinion are attempts and motives by Mr. Ralph Findle to harass me, character assassinate me personally on the job , use of provoking remarks and underrate my abilities to perform my Autozone duties as a result to what I believe are Mr. Findles own biases and prejudicial opinion of myself .

Mr. Findle really began showing a dislike for me as a result when on one occasion he failed to arrive at 7:30 AM to open the 1157 Autozone as he and I were scheduled. At around 7:50 AM, I contacted Asst. Manager Mr. Frank Wilson at his home for instructions on who was going to open the store. Mr. Wilson advised me to contact the 1152 Dover store and advise my situation. Mr. Antonio Farley was contacted and later came to the store shortly thereafter. Mr. Findle did in fact arrive shortly to open the store.

On Occasion Mr. Findle has also slandered my good name making unprofessional comments to customers about my ability to perform my Autozone duties. Further, on one occasion, while I was pulling overstock Mr. Findle approached me and asked if I needed any help, I responded saying a lot of items aren't in the correct location. At that moment, Mr. Findle very loudly started shouting at me while pointing to the item concerned, saying, " the item is on the top shelf and if you open your eyes you can find it ". This incident occurred during the time period after Mr. Thomas Sheehorn "PSM" had just reorganized the overstock area. I mentioned Mr. Findles behavior to whom , at that time was Asst. Manager Frank Wilson for store 1157. It seems that sometimes in the early morning hours when Mr. Findle and I arrive to open the store, Mr. Findle is in a bad mood and attempts to intimidate and provoke me into a confrontation in which he will have the opportunity to use his managerial authority.

A good example is on one occasion as I arrived for work, Mr. Sheehorn PSM and Mr. Ralph Findle , were waiting outside the store beside the doors to open the store, as I departed my vehicle and joined Mr. Findle and Mr. Sheehorn, I commented to Mr. Findle " are you going to open the doors so that I can clock in and do my 30/30 / Witt Jr. and other duties Ralph? " Mr. Findle replied " Yea right" I responded "Ralph why are you always messing with me?" Looking directly at me, Mr. Findle responded in the presence of Mr. Sheehorn " BECAUSE I LIKE IT ". On Occasion Mr. Findle has also referred to Mr. Sheehorn as "Goofy" as well.

Mr. Findle, within the past 2 weeks attempted to provoke me by using a trigger word referring to me as a "LITTLE BOY " while on the sales floor of 1157. Mr. Findle did this as a direct result of my not wanting to respond to a comment made by Mr. Findle concerning the use of Autozone phones for personal phone calls. I felt at that time Mr. Findle was trying to provoke an argument that I wanted to avoid. The gist of this particular conversation was that the district manager " DM" Dennis said that it was ok to use the Autozone phones to make a personal phone call. Asst. Manager Frank Wilson was outside the store and as he reentered the store
I mentioned about Mr. Findles remark to Mr. Wilson during which Mr. Findle admitted to Mr. Wilson that he indeed did make the remark, However, that I had taken it out of context. The fact is that Mr. Findle did indeed make the remark however he may have intended its context to be taken .

Mr. Findle has really been harassing me concerning the use of AutoZone telephones since Mr. Joe Mannering, HP 302-378-8968 " who is a devoted Autozone customer complained to me personally on one occasion after in Mr. Mannering words " on two occasion's was unable to get Mr. Findle to wait on him, due to the fact Mr. Findle was on the parts counter phone and looking directly at Mr. Manering ignoring him while having a conversation with someone about a sandwich. When I approached Mr. Mannering and waited on him, afterward Mr. Mannering wanted to know Mr. Findles bosses name and telephone number to complain due to the poor customer service he received from Mr. Findle. It's my understanding that the DM Antonio Farley was contacted.

Mr. Findle also has been harassing me after DM Mr. Antonio Farley was made aware that Mr. Findle made a comment to the effect "that he didn't give a F__ __ __ about how the floors looked at the 1157 store .

## ITEM # 1 WOW! CUSTOMER SERVICE

Mr. Findle comments on my Sales Person Appraisal that I don't promote Premium Products First. One of the first things then Asst. Manager Frank Wilson taught me was to always sell premium products first. I disagree with Mr. Findles comments because they aren't true. I agree with the " 3" rating, not the comments .

## ITEM #2 SELLING

Mr. Findle rated me a "2" fails to meet job expectations. Mr. Findle indicates that I don't Promote Autozone premium products, I disagree, because I always use WITT JR with the brand, part number, alt part number and price, warranty, etc Quote premium first, normally the customer makes the final decision based on ability to pay. Mr. Findle makes no comments in this area.

## #3 JOB KNOWLEDGE ITEM E and ITEM G

As I prepare these comments, To date, I have completed 12 out of 15 total test. Concerning concerning Item "E" I disagree with Mr. Findles rating of "2" and also his comments, As the DM, "Dennis advised me that as a part-time employee , I really was only required to complete only 4 out of 15 test .

Item "G"

The Autozone policy is clearly stated on the parts screen along with other information, all Autozone parts have a ninety-day warranty unless otherwise stated. I state this information to every customer. The return procedures are approved with receipt or with manager approval, a cores is returned anytime and I always check for damaged.

## #4 Responsibility Item H

I only work 15 or less hours weekly including weekends. When I read my mail it is already full.

## #5 Attendance Item C & D

I was very flexible when schedule changes occurred, and continue to be so.

A059

When I was interviewed for this job, it was discussed that I had another fulltime job that might make it impossible for me to attend store meetings regularly.

When I began my employment with Autozone store 1157 September 1999 , a total of 4 Autozoners were employed. On the day I was hired one Autozoner went home for lunch and never returned. At that time, and other times I was asked to work over and sometimes in addition to my regular shift. This I did at the request of Mr. Findle with little or no notice. Mr. Findle was even given my home phone and my cell phone as well. To this date, Mr. Findle has this information written on a small note pad which he carries in his shirt pocket. I have worked in the past as a part-timer for Mr. Findle as much as 30hrs weekly, this in addition to my fulltime job.

Mr. Findle always makes up his store schedule every Monday and at that time request go in for days off. I have even given Mr. Findle written request well in advance of any requested days off.

#6 INITIATIVE ITEM B& C

Mr. Findle indicates that I don't volunteer to do other task when not selling. I disagree and also the DM "Dennis" After consulting with the DM, Mr. Findles comments were lined out and initialed by the DM. The rating was also increased from "2" to "3".

#7 Teamwork Item A&B

A. Mr. Findle indicates that Im not a team player. I am not an individualist. I very much enjoy working and dealing with people, customers especially and fellow Autozoners.

B. I don't disrespect anyone, due to the fact that my mother and father didn't bring me up that way, and am very offended that Mr. Findle would consider such a thing.

#8 Mr. Findle makes no comments, However I do agree with the rating

Finally, Mr. attempted to intimidate me on 04/29/00. A man and his wife came into the store to say that a DL3218S starter had failed and would like to check on the warranty. I proceeded to look up the warranty by customer Phone # and look the item up in WITT JR. After I located the correct chart to use for testing the damaged starter, I pulled the new starter off the shelf. At this point Mr. Findle approach the man and his wife and started taking over my customer. Then Mr.Findle picked up the damaged starter and shoved it toward me saying " here go test this starter" I did not care for his tone and the way he talked to me in front of the customers. At that point I said " Ralph I know what I'm doing, please let me do my job". Then right in front of the customer, Mr. Findle tried to discuss what he felt was my lack of job knowledge. I really didn't care for Mr. Findles tone of voice or his trying to discount me in the presence of the customer with his tone of voice and intimidating manner. I completed the damaged swap for the customer. I later approached Mr. Findle to ask him please let me help my customers , and if I require assistance that I would call on him. Mr. Findle interrupted me before I could finish what I was saying. I asked Mr. Findle to let me finish please. Before I could complete what I was saying Mr. Findle told me to shut up whenever he was talking, " I then asked Mr. Findle not to talk to me that way and not tell me to shut up. " Again Mr. Findle told me to shut up and that I was to punch out and go home. At that point I advised Mr. Findle that I was contacting the DM Dennis. Mr. Findle at that point got on the phone talking to someone about the incident I don't know whom he was talking to. I wasn't able

to make contact with the DM  However, I did leave a voice message concerning the events that occurred on 04/29/00 . Mr. Findles conduct , verbal abuse , and harassment , and intimidating manner  have created and uncomfortable working enviornment that I should not have to tolerate under any circumstances . Mr. Findle has even gone so far as to say " I  want two weeks notice" .

I might also add that whenever Mr. Findle talks to me it's not with the same degree of cooperation, willingness, and respect he requires for himself. And I think its fair to say that I have asked the

DM Dennis to transfer me please to the Bear Delaware Store. The DM says its ok, if the manager of the Bear store manager Mr. Frank Wilson will agree to the transfer.

Further, I would like to add that for some strange reason, my sales performance data has disappeared from the computer. Mr. Findle says that he doesn't know what has happened to the data .

Finally,  A good demonsration of my willingness to go that extra mile was displayed earlier last month in the following manner when  a customer by the name of Mr. Lindsay  " HP 302-659-1305 was waited on by me earlier last month. And this occurred during the end of my scheduled shift about two weeks ago. Due to the nature of my assistance, I was instructed by the Asst. Manager Mr. Wilson to clock out because my shift had ended. However, I continued to assist the customer in the parking lot  off the clock because I had had not completed the task begun when I was instructed to clock out as schedualed . Asst.  Manager Frank Wilson thought this noteworthy and submitted paperwork to the "DM"  Dennis for my consideration of recognition. I would ask that the disposition of that consideration be researched.

Thanking you in advance for your consideration in this matter.   I await your reply .

Melvert Washington Jr.

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE ™

**POST OFFICE TO ADDRESSEE**

EK063992599US

Customer Copy

**ORIGIN (POSTAL SERVICE)**

PO ZIP Code
19936

Day of Delivery
☒ Next    ☐ Second

Flat Rate Envelope

Date In
3-5-00
Mo. Day Year

☐ 12 Noon    ☒ 3 PM

Postage
$ 11.75

Time In
7:18
☐ AM    ☒ PM

☐ Military
☐ 2nd Day    ☐ 3rd Day

Return Receipt Fee
1.25

Weight
3.0
lbs.    ozs.

Int'l Alpha Country Code

COD Fee    Insurance Fee

No Delivery
☐ Weekend    ☐ Holiday

Acceptance Clerk Initials

Total Postage & Fees
$ 13.00

**SEE REVERSE SIDE FOR SERVICE GUARANTEE AND INSURANCE COVERAGE LIMITS**

**CUSTOMER USE ONLY**
METHOD OF PAYMENT:

Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

FROM: (PLEASE PRINT)    PHONE 302, 521 8400
Mdvart Washington Jr
319 Billy Mitchell LN  Apt 308B
Dover Del. 19901

TO: (PLEASE PRINT)    PHONE
Alison Smith / AutoZone Relations
Dept 8029                    Dept.
1235 Front St
Memphis Tenn 38103

**FOR PICKUP OR TRACKING CALL 1-800-222-1811    www.usps.gov**    EMS

Label 11-B  July 1997

```
13:17
   109 POST VAL IMP        13.00
      TOTAL               13.00
      CASH T              13.00
      CHANGE                .00

**** U.S. POSTAL SERVICE ****
CHESWOLD DE            19936
690900                 42.00
DOTTIE                  # 03
05-05-00            13:18:00

      CUSTOMER RECEIPT

109 POST VAL IMP        13.00

   TOTAL               13.00
   CASH T              13.00

   CHANGE                .00
```

A062

2.70 A

# SALESPERSON
# PERFORMANCE APPRAISAL

| Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Overall Rating |
|---|---|---|---|---|---|---|---|---|---|---|
| Perf. Rating | 3 | 2 | 2 | 3 | 3 | 3 | 2 | 3 | | |

(required)

Name: __Melvert Washington JR__    SS#: _____

Rating period: __8/30/99__ – __3/11/00__    Store #: __1157__
(From)  (To)

Signatures:
Salesperson __Refused to Sign Appraisal__    Date: __5 / 4 / 2000__
(Signature indicates AutoZone has seen and discussed appraisal, it doesn't imply agreement.)

Store Manager __Ralph Saddler__    Date: __03 / 11 / 2000__

Store Manager SS#: ____

*In each of the performance areas, indicate the AutoZoner's level of achievement by checking the appropriate box. Then circle the specific letters that need improvement or fail to meet company standards. Finally, use the comments section to explain the circled items and to praise the AutoZoner who exceeds job expectations.*

ENTERED

MAY 10 2000

AutoZone Compensation

|  | Not observed/ Not applicable | Fails to meet job expectations (1) | Needs Improvement to meet job expectations (2) | Achieves job expectations (satisfactory) (3) | Consistently exceeds job expectations (4) |
|---|---|---|---|---|---|
| **1. WOW! CUSTOMER SERVICE** | ☐ | ☐ | ☐ | ☒ | ☐ |

A. Practices Drop/Stop. 90/30.
B. Greets customers with a smile and treats all customers with respect.
C. Practices GOTTChA.
D. Answers phone quickly and politely/Doesn't leave customers on hold more than 30 seconds.
Ⓔ Quotes premium product price first in store and on phone.
F. Gives approved refunds courteously.
Ⓖ Carries batteries/alternators/starters for customers.

Comments: __Mel needs to promote Premium Products First and to carry Batteries and starters to Reg.__

|  |  | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **2. SELLING** | ☐ | ☐ | ☒ | ☐ | ☐ |

A. Takes initiative to approach customers.
B. Practices WITTDTJR (Suggests seasonal/related items/Prints warranty information/Prints specifications).
Ⓒ Promotes AutoZone premium products/preferred brands (TSW).
D. Promotes testing to diagnose customers' car problems.
E. Uses Vendor Direct Program.
Comments: _____

|  |  | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **3. JOB KNOWLEDGE** | ☐ | ☐ | ☒ | ☐ | ☐ |

A. Looks up parts quickly and accurately.
B. Demonstrates ability to diagnose customers' car problems.
C. Operates testing equipment accurately and safely.
D. Is receptive to training.
Ⓔ Has completed Specialist/Certification Programs (Being an AutoZoner, Cash Register, WITT-JR, Safety, Oil WITTDTJR, Brake Lathe, Battery, Testing).
F. Uses available references (catalogs, manuals, testing charts).
Ⓖ Understands and communicates AutoZone warranty and return procedures.

Comments: __Mel has not Finished ALL Tests. At the time of signing this appraisal Mel has only three test remaining to complete.__

|  |  | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **4. RESPONSIBILITY** | ☐ | ☐ | ☐ | ☒ | ☐ |

A. Responds positively to managers.
B. Follows loss prevention and shrink control procedures.

White - Return to Compensation, Department #8028    Yellow - AutoZoner Copy    Pink - Store Copy

2/00

A063

| | Not observed/ Not applicable | Fails to meet job expectations | Needs improvement to meet job expectations | Achieves job expectations (satisfactory) | Consistently exceeds job expectations |
|---|---|---|---|---|---|

C. Follows established safety procedures.
D. Handles customer returns quickly and accurately.
E. Refers dissatisfied customers to management, when appropriate.
F. Operates cash register willingly, when needed.
G. Takes responsibility as an Area Merchandiser.
H. Reads and initials all bulletins/Checks E-mail regularly.

Comments: _Mel needs to check E-mail Regularly_

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **5. ATTENDANCE** | ☐ | ☐ | ✎ | ✹ | ☐ |

A. Reports to work as scheduled and on time.
B. Timely notifies manager before being absent.
C. Is flexible when schedule changes.
D. Attends WITTDTJR meetings regularly.
E. Clocks in/out accurately.

Comments: _Mel needs to be more Flexible when schedule changes - people call out or can't work certain days and schedule needs to change_

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **6. INITIATIVE** | ☐ | ☐ | ✹ | ✹ ×C | ☐ |

A. Takes initiative to learn more and improve job performance.
B. Volunteers to do other tasks when not selling.
C. Works sales floor voluntarily, when needed.

Comments: _Mel needs To get out From Parts counter and work sales Floor more._

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **7. TEAMWORK** | ☐ | ☐ | ✹ | ☐ | ☐ |

A. Is a willing contributor to the store team.
B. Cooperates willingly with other AutoZoners and treats them with respect.
C. Is enthusiastic and supportive of AutoZone policies.
D. Helps other AutoZoners improve selling skills.

Comments: _Mel has good Days And bad Days And some days where he won't even Talk to Autozoners._

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **8. APPEARANCE/GROOMING** | ☐ | ☐ | ☐ | ✹ | ☐ |

A. Follows dress code, and wears uniforms in good condition.
B. Maintains professional appearance.
C. Complies with hair, grooming and personal hygiene standards.

Comments: _____

| | | (1) | (2) | (3) | (4) |
|---|---|---|---|---|---|
| **9.** _____ | ☐ | ☐ | ☐ | ☐ | ☐ |

Comments: _____

Eligible Pay Increase: ☐ Approved  ☐ Not approved     Recommended merit increase: _____% or _____.

**AUTOZONER COMMENTS:**
*Ask AutoZoner to write comments about this performance appraisal. (Attach additional sheets if necessary.)*

_See attached Autozoner comment 4 total pages dated 4-29-2000_

A064

MATTLEMAN WEINROTH & MILLER
200 CONTINENTAL DRIVE, STE. 211
NEWARK, DELAWARE 19713

FACSIMILE TRANSMITTAL SHEET

TO: *Molvert Washington*       FROM: *John Mulfor*

COMPANY:                        DATE:

FAX NUMBER: *(302) 674 5751*    TOTAL NO. OF PAGES INCLUDING COVER:

PHONE NUMBER:                   SENDER'S REFERENCE NUMBER:

RE:                             YOUR REFERENCE NUMBER:

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:

*attached in letter received from*
*Auto Zone*

CONFIDENTIALITY NOTE

The documents accompanying this telecopy transmission contain information from the law firm of Mattleman, Weinroth & Miller, which is confidential and/or legally privileged. The information is intended only for the use of the individual or entity named on the transmission sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopy information is strictly prohibited, and that the documents should be returned to the firm immediately. In this regard, if you have received this telecopy in error, please notify us at any of the below telephone numbers so that we can arrange for the return of the original documents to us at no cost to you.

(302) 731-8349
(302) 731-6753 FAX

A065

# MATTLEMAN, WEINROTH & MILLER

### A PROFESSIONAL CORPORATION
#### COUNSELLORS AT LAW

JOHN C. MILLER, III

NATALE G. SA VASTA ◊
STEVEN H. FINKELSTEIN▲
DELIA A. CLARK ¢
PAUL D. AARONSON
MICHAEL J. MILSTEAD +
HELENE B. RAUSH
ERIC L. METH
SHARON ORAS MORGAN
ADAM R. ELGART ▲
ELISE LAZARUS
MICHAEL J. KENNEDY
LYNN M. BOWLBY ▲
JOHN P. CONNORS
PINA S. WERTZBERGER
MELANIE J. THOMPSON¢
DAN C. PELLETIER +
MARIA A. DANIEL

MEMBERS OF NJ & PA BARS
◊ NJ & FL BARS
+ PA BAR ONLY
+ NJ BAR ONLY
▲ PA & DE BARS
¢ NJ, PA & DE BARS
▲ NJ & NY BARS
∞ DE BAR ONLY

OF COUNSEL

GEORGE J. WEINROTH
HERMAN MATTLEMAN•
DOLORES M. BOIAZI
JOHN G. MULFORD∞
WILLIAM H. KENNEY∞
GERALD J. PROFFITT▲

PLEASE REPLY TO:

OUR FILE NO.:
Delaware

34225

August 1, 2000

Alison Smith
Director of Human Relations
Department 8029
Auto Zone
123 S. Front Street
Memphis, TN 38103

RE:    Melvert Washington, Jr.
       319 Billy Mitchell Lane, Apt. 308D
       Dover, DE 19901

Dear Ms. Smith:

We have been consulted by Melvert Washington, Jr., who is a part-time employee at your Smyrna, Delaware Auto Zone store regarding alleged unfair treatment and harassment he has sustained in the work place from his immediate supervisor. The Auto Zone store number is 1157.

Mr. Washington informs us that he sent to you by registered letter a grievance letter on May 5, 2000 and attached to that letter a witness statement which clearly indicates that the harassment by Mr. Washington's immediate supervisor.

We are informed by Mr. Washington that he has not received any reply to his grievance letter or been contacted regarding same.

We are informed by Mr. Washington that he has been called various names by his supervisor including "boy". This comment has direct racial implications as you know, Mr. Washington is an African-American.

**A066**

401 ROUTE 70 EAST
CHERRY HILL, NEW JERSEY 08034
TEL: (856) 429-5507

LAND TITLE BUILDING, SUITE 2226
BROAD & CHESTNUT STREETS
PHILADELPHIA, PENNSYLVANIA 19110

200 CONTINENTAL DRIVE, SUITE 211
NEWARK, DELAWARE 19713
TEL: (302) 731-8349
FAX: (302) 731-8753

1135 BROAD STREET, SUITE 207
CLIFTON, NEW JERSEY 07013
TEL: (973) 365-6140
FAX: (973) 365-6143

RE:    Melvert Washington, Jr.
August 1, 2000
Page 2

I have been informed that you have not apparently received Mr. Washington's grievance letter nor the witness statement attached to the letter which verifies the harassing treatment received by Mr. Washington. I am also enclosing a letter from Mr. Washington to the area supervisor.

The conduct alleged by Mr. Washington, if true, is a violation of the Civil Rights Act of 1970, 42 U.S.C. §1981 and Title 7 of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) to §2000(e)(17) which forbids discrimination or harassment on the basis of sex, race, religion, color or national origin.

I am writing this letter on behalf of Mr. Washington to demand that an investigation into the harassment of Mr. Washington be taken place by the human resources department and following that investigation all appropriate action be taken.

As you may or may not know, Mr. Washington has requested a transfer to another Auto Zone store and the transfer, for which reasons which are inexplicable, has not been authorized.

If you have any questions regarding this letter, please direct your response to Mr. Washington at the address above or at 302-521-8407.

Sincerely,

John G. Mulford
For the Firm

JGM/kah

Enclosures

cc:    Melvert Washington, Jr.



P. O. Box 2198, Memphis, TN 38101-9642 / (901) 495-6500

August 2, 2000

Via Fax No. (302) 731-8753

John G. Mulford, Esq .
Mattleman, Weinroth & Miller
200 Continental Drive, Suite 211
Newark, DE 19713

    Re:   Melvert Washington, Jr.

Dear Mr. Mulford:

Thank you for your letter of August 1st regarding the alleged unfair treatment and harassment received by Mr. Washington. We take all such allegations seriously and will investigate the matters raised by Mr. Washington in his letter. Once the investigation has been completed, appropriate action will be taken.

Please direct any future correspondence regarding this matter to me at:

    AutoZone, Inc.
    Dept. 8029
    123 S. Front Street
    Memphis, TN 38103-3607
    (901) 495-7327

Very truly yours,

Timothy P. Harrison
Staff Attorney
AutoZoner Relations

THE BEST PARTS IN AUTO PARTS

A068

I, Melvert Washington Jr    D.O.B 12/16/53 AGE 46  SS#____

ADDRESS 319 Billy Mikell Ln   Apt 308D

PHONE # (302) 521-8407    HEREBY GIVE THIS VOLUNTARY STATEMENT TO   Ron Wertz

Regional Loss Prevention Manager  AT  Dover Delaware

ON 8/8/2000 at 750 AM/PM THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. ( MW )

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by:  Melvert Washington Jr.

Q What is your position with AutoZone?

A. Partime Sales Associate

Q. What is your date of hire?

A. Sept 1999

Q. Did you receive a review from Ralph Fiedle sometime between 3/1/00 and 4/29/00?

A. Yes I did.

Q Did you discuss the review with DM Denny Courth after this?

A. Yes I did discuss my review with Dennis Curruth several times after Ralph Findle ask me to sign it and insisted that I sign it. When I refused and further approach Dennis to please look at the review because I didn't agree with Ralphs appraisal and wanted Dennis to give a second opinion.

Q How many times did you ask Dennis to look at the review?

A. At least three times before he finally did sit down with me and even then after he did review the appraisal I still didn't want to sign it.

SIGNED Melvert Washington    TIME 909 AM/PM DATE: 8-8-2000

WITNESS Ronald Wertz    TIME 9.09 AM/PM DATE: 8/8/00

EXHIBIT

A069

D-00353
Washington v. AutoZone

Q Then what happened?

A. Dennis suggested to me at this point that since I didn't want to sign my appraisal I should at least make a statement in my own behalf. I then told Dennis I would and also I was going to address my mistreatment I received from Ralph when I was selling a DL32185 ~~Starter to my~~ Starter to a customer.

Q When was this meeting?

A. On April 26, 2000

Q Then, you ~~wrote~~ wrote the letter on 4/29/00 and took a copy of the appraisal and the letter to Denny. Is that Correct?

A Yes it is.

Q Was this on 5/4/00?

A yes it is.

Q What did Denny do?

A. Dennis then wrote refused to sign Appraisal on my Performance Appraisal And dated it 5-4-2000. And the Dennis told me on 5-4-2000 that he was turning the information over to Human Relations to let them handle it.

Q On 5/5/00 according to your Post office Receipt you mailed a copy of the letter to Corporate? Why?

A. To cover myself just in case Dennis didn't send in the paperwork as he promised he would to Autozone Human Relations.

Q Did you inquire about it to Dennis?

A. yes several times and on 5-12-2000 ~~Dennis~~ Dennis informed

SIGNED _Melvat Washington_    TIME 9 09 AM/PM DATE: 8-8-2000

WITNESS _Arnold West_    TIME 9 09 AM/PM DATE: 8/8/2000    Pg 2 of 4

me that he had just sent in 4-29-2000 paperwork.

Q What did Dennis tell you after this date when you asked him about the letter?

A. Dennis said I don't know Didn't you send your paperwork in, I'm still waiting to hear just Like you, they will contact you.

Q Did Dennis say anything about talking to Ralph about the letter?

A. I ask Dennis did he talk to Ralph about the 4-29-2000 letter and had Ralph seen the letter? Dennis said yes he did mention the letter To Ralph but he didit show it to Ralph and that Ralph said OK.

Q Did you have a Conversation with Dennis on 7/24/00 about your Transfer to Dover? What did he say?

A. Dennis said that he was waiting for Antonio Farley to call him back, Also Dennis said that Ralph Findle had been bad mouthing me to Debbie the 1152 Store Manager

Q How would you like to see this investigation end?

A. I would like my transfer to 1152 Dover Store, Antonio Farley promised me when he interviewed me in the Dover Store in Sept 1999, that I would be transfered to 1152 with the first available opening. thats the only reason I agreed to start in 1157 Smyrna Store in the first place.

I think Ralph Findle should be terminated for his behavior and unprofessional manner in which he treats people.

Q Did Dennis call you on 8/2 or 8/3 and What did he Say?

A. Dennis my Dennis called me on my cell Phone and left A message

SIGNED _Melvet Washington_   TIME _909_ AM/PM DATE: _8-8-2000_

WITNESS _Ronald Wirtz_   TIME _9.09_ AM/PM DATE: _8/8/00_   Pg. _3_ of _4_

to return his call right away, or call him at home tonight, it was important. When I did call Dennis on his cell phone at 302 540 2716, his first words were, " Mel you didn't tell me you had gone and got an attorney.

Q. Do you have anything else to add?

A. Yes I do. At all times I have always tried to do my best, and if I could I would work fulltime, but I already have a fulltime job I hope the truth comes out of all this and we all learn something that helps Autozone.

Q. Were you treated fair during this interview?

A. Yes I was to the best of my knowledge.

Q. Were there any threats or promises made?

A. No.



SIGNED _____   TIME 9:04 AM/PM. DATE: 8-8-2000

WITNESS _M___   TIME___:___ AM/PM. DATE: _____   Pg. 4 of 4

A072

I, Ralph S. Findle Sr. D.O.B 7/8/46 AGE 54 SS#_____

ADDRESS 34 Candlewick Ct. New Castle, De. 19720

HONE # (302) 322-9619   HEREBY GIVE THIS VOLUNTARY STATEMENT TO Ron Wertz

Regional Loss Prevention Manager AT AutoZone Store #1157

ON 8/4/2000 at 6:30 AM/PM. THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. (RF)

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: Ralph Findle

Q What is your position with AutoZone?

A. MANAGER OF STORE #1157

Q. What is your date of hire?

A. MAY 18th 1998

Q Have you seen a letter from Mel Washington dated 4/22/00 in which several issues were raised? Y

A. Yes

Q Who showed you the letter?

A. D.M. Dennis Carruth

Q What happened next?

A. I read it and handed back to Dennis. I said it was B, S, and out of context

Q Did Denny Caruth go over the letter line by line?

A. No.

Q What did Caruth say to you?

A. said he thought so to but he had to send it in.

Q Do you know if he responded back to Mel?

A. No, I don't Know.

SIGNED Ralph Findle Jr.   TIME 6:50 AM/PM. DATE: 8-4-2000

WITNESS _____   TIME 6:50 AM/PM DATE 8/4/00

D-00357
Washington v. AutoZone

EXHIBIT
A073

Q. Were you late the day of the overstock?

A. I was late but I believe the Dover store called I

Q. Did you say anything to Mel about calling the Dover store?

A. Yes - I asked him why - because I would be here sometime.

Q. Did you hold this action against Mel in the future?

A. No.

Q. Please describe what happened concerning the overstock and Mel?

A. I had given Mel the overstock report to do that morning. He had not returned in about 20 min. but I went back to get figures for a planogram. I saw him standing there looking at overstock I asked him what he was doing he said he couldn't find something - I looked and said its right in front of you are you Blind.

Q. Did the conversation get loud?

A. Yes. I guess it did.

Q. Did you refer to him as stupid?

A. No. Never.

Q. Please describe what happened one morning when you + Tom were standing outside before opening?

A. Tommy & I were finishing a cigarette when Mel walked up and pulled on the front doors. I said can't you see the door is locked Mel said you just like messing with me, I said yes I guess I do. (Kidding (Lg)

SIGNED _Ralph Ennis_         TIME 7:15 AM/PM. DATE: 8-4-2000

WITNESS _Ronald West_      TIME 7:15 AM/PM DATE: 8/4/00     Pg 2 of 5

Q Have you ever referred to Mel as [illegible] at [illegible]?

A. I might have but it was only in a kidding way not a serious way.

Q Have you ever called Mel a "Little Boy"?

A. This was over phone calls Mel was making one morning. He had made about 4 phone calls and was ignoring customer's I asked him if he had any more phone calls to make, He ignored me and said nothing. I asked him about 3 or 4 more times the same question. He said nothing and walked toward the back of the store. That's when I said OH ARE you going to act like a little boy and pout all day.

Q Did this upset Mel?

A. Yes - But - I believe he took it the wrong way. I did not mean it as a racial comment.

Q Did Antonio Farley (DM) ever talk to you about a customer complaining you wouldn't wait on them?

A. No, I don't recall hearing this from anyone.

Q Please tell me about the floor incident and antonio?

A. Antonio came in and took me outside and reamed my ass about being late and the floors and said he wanted them done by thurs. - This was a monday. He left, when I came in I said I didn't give a fuck about the floors because we short handed at the time and noway could I do the floors. than.

SIGNED Ralph Pundle          TIME 7 45 AM/PM. DATE: 8-4-2000

WITNESS Amwell West        TIME 7 45 AM/PM DATE: 8/4/00        Pg. 3 of 8

A075