STATEMENT

I, Shawn Pamela                                    D.O.B. _1_/_5_/_72_ AGE _22_ SS#_____

ADDRESS _913   Heights   cc   RD   Clayton   De   19975_

PHONE # (302) 650-030_____ HEREBY GIVE THIS VOLUNTARY STATEMENT TO  Ron Wertz

_Regional Loss Prevention Manager__ AT __AS7_____

ON _10/18/00_ at _12:30_ AM/PM. THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. ( _Sp_ )

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: _Shawn Pamela_____.

Q What is your position with AutoZone?

A. _Sales_

Q. What is your date of hire?

A. _Aug 2000_

Q Did you make a remark to Melvert Washington in which you used the word Boy?

A yes

Q What was the remark?

A The customer was on the phone with me Because he left a part in the store that mel had in his possesion. Then I said yes your Boy said To come In and get it. The reason I said That was Because I Thought They was freind. And Boy (& I said) was slang used for freind.

Q Did you mean this Racially?

A no not at all.

SIGNED _Shawn Pamela_____ TIME _6:50_ AM/PM. DATE: _10/18/00_

WITNESS _Ronald West_____ TIME _12:46_ AM/PM. DATE: _10/18/00_____ Pg _1_ of__

A114

To: Mr. Aleong Kelston, DM AutoZone Store 1157
    Mr. Leon Bynum Sr. Manager AutoZone Store 1157

Fr: Mr. Melvert Washington Jr. Sales AutoZone Store 1157

Subject: Availability and Autozone Flexibility

Date: Febuary 26,2001

Recently on 02-08-01 within the last thirty days at around 2pm I called out sick to inform my manager at Autozone that I would be unable to work my assigned shift which I was scheduled to work at 5pm. Mr. Bynum answered the phone and upon learning that I wasn't able to work informed me that this was unacceptable. During this same call Mr. Emmanuelle Kitchins, former DM for Autozone store 1157 also was put on the phone to speak with me concerning my calling out sick. Mr. Kitchins also told me that this was unacceptable. I explained to Mr. Kitchens that as we spoke I was working my full time job and that at the end of that shift I would be going home to get some rest and take medication. Mr. Kitchins said that my calling out sick would be documented. Further, during this same phone conversation Mr. Kitchins mentioned that it appears I have been missing time lately. I explained to Mr. Kitchins that on January 20th I had been called away from State of Delaware by family members in Virginia due to the fact my father had become seriously ill and was placed on life support and not given much chance of recovery by his Doctors. Unfortuntely , I was scheduled to report at store 1157 at 5pm this same day . At this time I contacted store 1157 and spoke with Mr. Thomas Sheehorn Asst..manager of 1157 and advised that I would not be reporting for my shift . Mr. Sheehorn advised me that he would let Mr. Leon Bynum Sr. manager of 1157 know my situation , as I understand , Mr. Bynum was scheduled to complete his shift at 6:30pm this same day . On January 21st I contacted store 1157 and talked with Mr. Sheehorn as I was scheduled to work on 01-22-01 and informed Mr. Sheehorn that I was still in Virginia on matters concerning my father . On January 01-23-2001 . I did come into 1157 to speak with Mr. Bynum and advise him that I was back in the state . At this time Mr. Bynum suggested that if I wanted to take off on 01-24-01 to further deal with matters concerning my father it would be alright .

The Following Concerns a Phone call That That Occured ON CEll Phone 3025218407 Between Mr. Kitchins and Mr. Bynum and myself on 02-01-01 at approximately 9:33am.

Mr. Bynum called me and said he was trying to make the schedule and when was I available to work . The next instant Mr. Bynum then gave the phone to Mr Kitchins and he asked me what would be a schedule that I could work concerning my part-time position with Autozone .At this time I requested a 5pm to 830pm schedule due to the fact I only have Tuesdays an Wensdays off on my fulltime job and most of the time I would use that time to leave the state going to Virginia or conduct personal business . During the course of the conversation Mr. Kitchins ask me repeatedly to work on the two days

A115

off I had with the state . , I answered and said that it would cause a conflict due to the fact I need to leave the state on those days and also that I am attending classes two nights a week Monday and Wensday and that I would not also be available on Sundays . I took this opportunity to inquire if this meant that I could no longer remain employeed with Autozone and Mr. Kitchins replyed that he nor Mr. Bynum were trying to fire me but he just needed to know when I am available to work . He continued to ask if I could work mostly on my days off with the state . I replyed no . But if it means I wont get any hours , if you must schedule me on my days off with the state have me come in at 730am and off at 130pm, this way I can still go out of state for personal reasons as I have stated before .Mr. Kitchins assured me that Autozone was not trying to work me to death and that I would not work every week on my only days off during the week with the state . While I didnt want to work on the only days I had off with he state I felt pressure to do so. Mr. Kitchins wasnt able to tell me what days I would be off just that I wouldnt work the same days every week .

On Febuary 02-08-01 when I called out sick , Mr. Kitchins was put on the phone to speak to me by Mr. Leon Bynum .At that time I mentioned to Mr, Kitchins the fact that he had scheduled me on 02-07-01 to get off at 3pm and not 130pm as we had discussed earlier . at that time I mentioned again that I felt having me come in on my only days off with the state would conflict .Finally At this time Mr. Kitchins was able to accommodate a 5pm to 830pm schedule for myself Thursday, Friday, Saturday. As we spoke Mr. kitchins corrected the schedule for week 02-11-01 and redid that same schedule to reflect that I would be working Thursday , Friday , Saturday 5pm -830pm

The Schedule had not been printed yet , and the way I knew when I was to work during the week of 02-11-01 is due to the fact that during my shift on 02-07-01 , I asked Mr. Sheehorn to go into the system , at that, I wrote my hours down on a sheet of paper and the next day when Mr. Kitchins was at the store he and I spoke to that effect on the phone
.

Concerning my fulltime job:
Beginning January 16th 2001 I began working 730am to 430pm Thursday through Monday. The former shift was 3pm to 12 midnights concerning my fulltime job with Delaware State University Monday through Friday.

Further, on February 23rd 2001 at 1157 AutoZone I had the opportunity to meet with Mr. Kelston the 1157-DM for the first time and introduce myself and to further explained the reason for my schedule change request. At his time Mr. Kelston ask me did I like working for AutoZone? "Which I replied yes I do". I explained to Mr.. Kelston that I would love to work additional hours, however, at present Im only available 5pm to 830pm Thursday through Saturday. Also that I anticipate in the future being available for extra hours if that's possible at that time.

Also I believe it noteworthy to mention at this time that in the past I was scheduled to open at 6am to help with the matrix , this I did not mind . However , When I was on 3pm

A116

to mids concerning my fulltime job ... I mentioned that it only allowed maybe 8hrs rest in 48hrs. I had to request only one day of matrix not two days back to back as was the case

Mr. Kelston promised to speak with Mr. Bynum concernig my present hour being cut to 7 hrs a week from 10.5 a week, and also he and I were to meet on 02-27-01. However I was to learn from Mr. Bynum when I called 1157 on 02-27-01 that the DM Mr. Kelston was not coming to 1157 and was advised by Mr. Bynum that the Mr. Kelston would contact me at my home phone or cell phone to that effect as I had been advised by Mr. Kelston on 02-23-01. TO that end I contacted Mr. Bynum again later this same day at 1157 and mentioned that I hadnt heard from the DM yet and could "he" Mr. Bynum grt into the Voice mail system and request that the DM please give me a call as I wanted to speak with him please. This Mr. Bynum promised he would do.

*Kelston cut my HRS.*

Concerning our 02-23-01 conversation:
Mr. Kelston promised to speak with Mr. Bynum, but that he couldn't promise anything definite concerning extra hours or that the present 10.5 hours weekly at present would remain the same .

Further, do to the fact that my present fulltime supervisors at Delaware State University with little or no notice occasionally require myself to work past 430pm on days I am scheduled to report for work for 5pm at 1157 AUTOZONE making it next to impossible for myself to arrive at Autozone on time at 5pm. I would respectfully request I be allowed to report to work at 530pm rather than 5pm.

In the past I have contacted Autozone supervisors when this has occurred. Just recently on February 24, 2001 my supervisor with the State made a 4.30pm announcement that overtime was required. Mr. Pilar was contacted as he was Autozone supervisor on duty and was informed I would be at least 10 minutes late. Its my understanding according to Mr. Pilar, during this same shift Mr. Pilar received a phone call from the store manager of 1157 Mr. Bynum concerning whether or not I had called to advise that I might be running a little late.

However, not to incur a penalty or write-up on this and other occasions due to arriving late to work as a direct result I may be required to work overtime for my fulltime employer, I am making the following request, and again I **apologies** for any inconvenience I have caused to anyone as that is not my intentions . I respectfully request 530pm to 830pm Thursday, Friday, Saturday rather than 5pm to 830pm

Thank you for your understanding in this matter

Signed:

A117

# Corrective Action Review

**AutoZone**

Date 2-8-01

Name Melvin Washington JR          SS# _____          Store# 1157

**Check appropriate space below:**

☒ Verbal warning

☐ First written warning

☐ Second written warning

☐ Serious violation
   *May be separated without prior warning*

**Type of infraction:** *(fill in below)*

Call-out

_____

_____

_____

_____

**Details of infraction:** On 2-8-2001 Mr. Washington Called out When he was Scheduled from 5pm till Close 8:30 pm.

**Suggestions for improvement:** Follow Schedule when not Giving

**I have read this report and understand that my signature doesn't necessarily indicate agreement.** NOTE: AutoZoner's signature isn't needed for verbal warnings.

**Notice:** Should your performance not improve or should this same violation recur, the following action will be taken: up to and including termination with any prior Notice

_____          _____
*AutoZoner's signature*            *Manager's signature*

*Original to your Personnel Records Department*
*Copy to Regional Human Resources Manager*
*Copy to AutoZoner's Store Personnel File*

*Rev. 2/00*

*SKU# 932319*

A118

# SALESPERSON
# PERFORMANCE APPRAISAL

| Category | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | Overall Rating |
|---|---|---|---|---|---|---|---|---|---|---|
| Perf. Rating | 2 | 2 | 3 | 2 | 2 | 3 | 2 | 2 | | 2 . 5 (required) |

Name: _Melvert  Washington  Jr._     SS#: ___ - __ - ____

Rating period: ___/___/___ — ___/___/___     Store #: __1132__
                    (From)            (To)

Signatures:
Salesperson _Melvin Washington SR_                Date: __4__/__20__/__01__
            (Signature indicates AutoZoner has seen and discussed appraisal, it doesn't imply agreement.)

Store Manager _____                     Date: __4__/__20__/__01__

Store Manager's name (print) __Leon Byrum SR__

_In each of the performance areas, indicate the AutoZoner's level of achievement by checking the appropriate box. Then circle the specific letters that need improvement or fail to meet company standards. Finally, use the comments section to explain the circled items and to praise the AutoZoner who exceeds job expectations._

| | Not observed/ Not applicable | Fails to meet job expectations (1) | Needs improvement to meet job expectations (2) | Achieves job expectations (satisfactory) (3) | Consistently exceeds job expectations (4) |
|---|---|---|---|---|---|

**1. WOW! CUSTOMER SERVICE** — (2) ☑
   A.  Practices Drop/Stop - 30/30.
   B.  Greets customers with a smile and treats all customers with respect.
   C.  Practices GOTTChA.
   D.  Answers phone quickly and politely/Doesn't leave customers on hold more than 30 seconds.
   E.  Quotes premium product price first in store and on phone.
   F.  Gives approved refunds courteously.
   G.  Carries batteries/alternators/starters for customers.
Comments:_____

**2. SELLING** — (2) ☑
   A.  Takes initiative to approach customers.
   B.  Practices WITTDTJR (Suggests seasonal/related items/Prints warranty information/Prints specifications).
   C.  Promotes AutoZone premium products/preferred brands (TSW).
   D.  Promotes testing to diagnose customers' car problems.
   E.  Uses Vendor Direct Program.
Comments:_____

**3. JOB KNOWLEDGE** — (3) ☑
   A.  Looks up parts quickly and accurately.
   B.  Demonstrates ability to diagnose customers' car problems.
   C.  Operates testing equipment accurately and safely.
   D.  Is receptive to training.
   E.  Has completed Specialist/Certification Programs (Being an AutoZoner, Cash Register, WITT-JR, Safety, Oil WITTDTJR, Brake Lathe, Battery, Testing).
   F.  Uses available references (catalogs, manuals, testing charts).
   G.  Understands and communicates AutoZone warranty and return procedures.
Comments:_____

A119

| | Not observed/ Not applicable | Fails to meet job expectations (1) | Needs improvement to meet job expectations (2) | Achieves job expectations (satisfactory) (3) | Consistently exceeds job expectations (4) |
|---|---|---|---|---|---|

**4. RESPONSIBILITY**   □ ... (3) ☒

A. Responds positively to managers.
B. Follows loss prevention and shrink control procedures.
C. Follows established safety procedures.
D. Handles customer returns quickly and accurately.
E. Refers dissatisfied customers to management, when appropriate.
F. Operates cash register willingly, when needed.
G. Takes responsibility as an Area Merchandiser.
H. Reads and initials all bulletins/Checks E-mail regularly.

Comments: _____

| | | (1) □ | (2) ☒ | (3) □ | (4) □ |
|---|---|---|---|---|---|

**5. ATTENDANCE**

A. Reports to work as scheduled and on time.
B. Timely notifies manager before being absent.
C. Is flexible when schedule changes.
D. Attends WITTDTJR meetings regularly.
E. Clocks in/out accurately.

Comments: _____

| | | (1) □ | (2) ☒ | (3) ☒ | (4) □ |
|---|---|---|---|---|---|

**6. INITIATIVE**

A. Takes initiative to learn more and improve job performance.
B. Volunteers to do other tasks when not selling.
C. Works sales floor voluntarily, when needed.

Comments: _____

| | | (1) □ | (2) ☒ | (3) □ | (4) □ |
|---|---|---|---|---|---|

**7. TEAMWORK**

A. Is a willing contributor to the store team.
B. Cooperates willingly with other AutoZoners and treats them with respect.
C. Is enthusiastic and supportive of AutoZone policies.
D. Helps other AutoZoners improve selling skills.

Comments: _____

| | | (1) □ | (2) □ | (3) ☒ | (4) □ |
|---|---|---|---|---|---|

**8. APPEARANCE/GROOMING**

A. Follows dress code, and wears uniforms in good condition.
B. Maintains professional appearance.
C. Complies with hair, grooming and personal hygiene standards.

Comments: _____

| | | (1) □ | (2) □ | (3) □ | (4) □ |
|---|---|---|---|---|---|

**9.**

Comments: _____

_____

Eligible Pay Increase: □ Approved   □ Not approved       Recommended merit increase: _____ % or _____.

A120

**AUTOZONER COMMENTS:**
Ask AutoZoner to write comments about this performance appraisal. (Attach additional sheets if necessary.)
_N/A Worlkington "Has Commenbess Jacked Comanting Hopea Pere"_
_from Plura Tele_

**///AutoZone**          **Corrective Action Review**

Date _8-31-01_

Name _Melvin Washington JR_          SS# _____          Store# _1157_

**Check appropriate space below:**          **Type of infraction:** *(fill in below)*

[ ] Verbal warning          _Tardiness / Late_

[X] First written warning          _____

[ ] Second written warning          _____

[X] Serious violation          _____
*May be separated without prior warning*

**Details of infraction:** _On 8-31-01 Mr Washington_
_Said He had some Problems, at his_
_Office Joe, Said He would be a little_
_late, Mr Washington Did Not Show up_
_For Work Until 6:40 pm_

**Suggestions for improvement:** _Follow Schedule when Giving_

_____

_____

_____

**I have read this report and understand that my signature doesn't necessarily indicate agreement.** NOTE: AutoZoner's signature isn't needed for verbal warnings.

**Notice: Should your performance not improve or should this same violation recur, the following action will be taken:** _Up To and including termination with any_
_Prior Notice_

_____          _____
AutoZoner's signature          Manager's signature

*Original to your Personnel Records Department*
*Copy to Regional Human Resources Manager*
*Copy to AutoZoner's Store Personnel File*

SKU# 932319          *Rev. 2/00*

A121

**AutoZone**    # Corrective Action Review

Date _10-6-01_

Name _Melvert Washington Jr._ SS# _/_ /_    Store# _1157_

**Check appropriate space below:**

☐ Verbal warning

☐ First written warning

☒ Second written warning

☐ Serious violation
*May be separated without prior warning*

**Type of infraction:** *(fill in below)*

Did not call or show up for work when scheduled.

**Details of infraction:** Did not call or show up for work when scheduled.

**Suggestions for improvement:** To call when going to be late, and ~~this~~ to show up for work on time.

**I have read this report and understand that my signature doesn't necessarily indicate agreement.  NOTE:** AutoZoner's signature isn't needed for verbal warnings.

**Notice:** Should your performance not improve or should this same violation recur, the following action will be taken:

_____    _Pilar Sanchez_ JR
*AutoZoner's signature*    *Manager's signature*

*Original to your Personnel Records Department*
*Copy to Regional Human Resources Manager*
*Copy to AutoZoner's Store Personnel File*

*SKU# 932319*

*Rev. 2/00*

A122

Date: Jan 28th 2002  ( 1 OF 2 pages)

To: Leon Bynum . Store 1157
Autozone
100 W Glenwood Ave.
Smyrna, Delaware 19904

From: Melvert Washington Jr.
380 Fork Branch Rd
Dover Delaware 19904
302-521-8407

Subject: Weekly Schedule request change and request for full-time status 40 hr
workweek.


Dear Mr. Bynum,

 In January of 2001 my father became very ill with life threatening complications and it
became necessary for me to take time off from Autozone to attend out of state family
matters. Since that time my mother has also become hospitalized with similar
complications and as a result both are in nursing homes as I have shared this information
with you and the former (DM) Kelston several times.

Around Jan 2002 I placed a had written note on the bulletin board in the managers office
of Autozone 1157 requesting that in the future when ever you would make the schedule
please schedule my two days off on Sunday and Monday due to the fact I will need to go
out of state to attend to family matters concerning my parents.  The next day I contacted
you by telephone at 659-1562 to follow up on that request. Your reply was that you were
the only one at Autozone getting every Sunday off. And that your aren't giving up your
Sundays for anybody that you would see what you could do. I also at that time suggested
that if you could not accommodate my request for every Sunday and Monday off that at
least every other Sunday and Monday, to this your reply was no, I don't think that will
happen either.

Mr. Bynun, I am a single parent of two daughters the oldest is in college and the youngest
is in the 10th grade. What I am asking is that you would be flexible and try to meet me
halfway please.

I would prefer to not remove my daughters out of school during the week and hurt their
attendance. Also I would prefer not to lose any time from the job as well.


Also I have been employed with Autozone part-time since September 1999. I have made
several requests to you and also the former (DM) District Manager Mr. Kelston Keleong
for full time status. To that request, I was informed by yourself and the former (DM) that

A123

(2 OF 2) pages

at present, store 1157 has a total of four fulltimers, yourself, Mr. Shane Treesh, Mr. David Sobotkin, Mr. Robert Baker and one part-timer myself.

If at anytime one of the fulltimers leaves store 1157 that I will be next in line for full-time employment with Autozone at store 1157.

Would you please advise me in writing if Autozone intends to accommodate this request or any part of it?

Sincerely,

Melvert Washington Jr.
Melvert Washington Jr.

*Signed before me, HARRY HOLLINGSWORTH, by Melvert Washington, Jr. on this 28th day of January, 2002.*

*Barry V. Hollingsworth
Notary Public*

*On the 31st of January 2002 I hand carried and delivered this letter to Mr. Bynum at store 1157 personally*

*Melvert Washington Jr.*

A124

**AutoZone**

# Corrective Action Review

Date 5-17-02

Name Melvert Washington JR    SS#_ _ - _ _ - _ _ _    Store# 1157

**Check appropriate space below:**

- [x] Verbal warning
- [ ] First written warning
- [ ] Second written warning
- [ ] Serious violation

  *May be separated without prior warning*

**Type of infraction:** *(fill in below)*

Failure To Properly Account
For Sales of AutoZone
Merchandise

**Details of infraction:** Mr Washington Let Customer Go
out of Store with Auto Zone Merchandise, with out
Paying For the Merchandise. Two Auto Belts were
installed on Customer Truck.

**Suggestions for improvement:** Everyone Must Pay For
Merchandise Before installing any Parts on Any
Car's or Trucks.

**I have read this report and understand that my signature doesn't necessarily indicate agreement.** NOTE: AutoZoner's signature isn't needed for verbal warnings.

**Notice: Should your performance not improve or should this same violation recur, the following action will be taken:**

Mel refused to sign    David Sabathin 5/17/0

He Melvert Washington JR Refused To sign

5-17-02    1:10 pm

_____    _____
AutoZoner's signature           Manager's signature

*Original to your Personnel Records Department*
*Copy to Regional Human Resources Manager*
*Copy to AutoZoner's Store Personnel File*

SKU# 932319                                          Rev. 2/00

A125

12/22/2002 9:44:35 AM

# Corrective Action Review

Date 6-22-02

Name Melvin Washington          SS# _____          Store# 1157

Check appropriate space below:

☑ Verbal warning

☐ First written warning

☐ Second written warning

☑ Serious violation
*May be separated without prior warning*

Type of infraction: *(fill in below)*

Failure To Follow AutoZone

Check Policy

_____

_____

Details of infraction: On 6-20-02 Mr Washington accept check #1050 From Larry Watson in The amount of $16.99 which was The wrong Amount, The Check Should of Been For $18.97 Second He put in The wrong Phone Number For Warranty Info, which the parts was For someone other then Larry Wat. ✱ (Arthur F. Brown) ✱

Suggestions for improvement: To write a personal check The Customer Must present either a Driver's license or military ID, Mr Washington Need To Pay More Attention When He's at the Register.

I have read this report and understand that my signature doesn't necessarily indicate agreement. NOTE: AutoZoner's signature isn't needed for verbal warnings.

Notice: Should your performance not improve or should this same violation recur, the following action will be taken:

Said them had wrong information and refused to sign Said He was clocking out and Going Home 6-22-02

Deanna Bynum / [signature]       6-22-02

_____        _____
AutoZoner's signature                          Manager's signature

Mall original to Human Resources, Department #8204
Give copy to Regional HR Manager
Keep copy for AutoZoner's Store Personnel File

SKU# 932319

A126

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

ENTER CHARGE NUMBER

FEPA 0206430

EEOC 17CA200447

and EEOC

Delaware Department of Labor

(State, or local Agency, if any)

NAME (indicate Mr., Mrs., Ms)
Mr. Melvert Washington, Jr.

HOME TELEPHONE NO. (Include Area Code)
(302) 674-5751

STREET ADDRESS    CITY, STATE AND ZIP CODE    COUNTY
380 Fork Branch Road, Dover, DE 19904    Kent

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME
(If more than one, list below.)

| NAME AutoZone | NO. OF EMPLOYEES OR MEMBERS 100+ | TELEPHONE NUMBER (Incl. Area Code) (302) 659-1562 |
|---|---|---|

STREET ADDRESS    CITY, STATE AND ZIP CODE
116-A Glenwood Avenue, Smyrna, DE 19977

TELEPHONE NUMBER (Include Area Code)

NAME

STREET ADDRESS    CITY, STATE AND ZIP CODE

[ ] RACE [ ] COLOR    [ ] SEX    [ ] RELIGION    [ ] NATIONAL ORIGIN    [ ] AGE

[x] RETALIATION    [ ] DISABILITY    [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST 10/01
LATEST 5/29/02

[x] CONTINUING ACTION

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I. I began my employment with Respondent on September 1, 1999. I am an individual who made a complaint of race discrimination internally against Respondent in 2000. Respondent has retaliated against me since I made this complaint by denying me the opportunity to advance byway of promotion, and have created a hostile work environment by accusing me of violating standard company policies, which I have not. This is a continuing action on the part of Respondent as of today's date.

II. Recently, Leon Bynum, Sr., Manager of Store #157, informed me that I would never get promoted into a full-time position because of the internal discrimination complaint that I made against Respondent in 2000, and indicated that I would have to seek approval from additional members of management. Mr. Bynum also stated that I had a "rather thick personnel file which was located in Fort Washington, Maryland."

III. I believe that Respondent has violated Title VII of the Civil Rights Act of 1964, as amended, and the state of Delaware's Discrimination in Employment Act, as amended, because it is retaliating against me for voicing my beliefs that Respondent violated the above listed Acts in 2000.

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the foregoing is true and correct.

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

5-29-02    Melvert Washington
Date    Charging Party (Signature)

EEOC FORM 5    PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED    REV 6/92

A127

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MELVERT WASHINGTON, JR.,          )
                                  )
          Plaintiff,              )
                                  )
     v.                           )          Civil Action No. 04-320 (SLR)
                                  )
AUTOZONERS, INC., a Nevada Corporation,  )
                                  )
                    Defendant.,   )

AMENDED EMPLOYMENT DISCRIMINATION COMPLAINT
JURY TRIAL DEMANDED

Plaintiff, Melvert Washington, Jr., makes the following complaint seeking relief for one

or more adverse employment decisions made by Defendant.


JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331

and 1334.

2. Plaintiff's claim for relief arises under the following statutes:

a. 42 U.S.C. § 2000e et seq.( Title VII, Civil Right Act);

3. The adverse employment decisions alleged in this complaint (see paragraphs

Through ) were committed in the District of Delaware. Plaintiff resides in this District and

Defendant is authorized to do business in this District. Therefore venue in this District is proper

pursuant to Title 28 U.S.C. §1391(c).

4. Plaintiff has exhausted all administrative remedies before the Delaware Department of

1

Labor and the Equal Employment Opportunity Commission and all other relevant administrative review processes available to him.

5.  Plaintiff files this complaint within 90 days of receipt of Notice of Right to Sue issued by the Equal Employment Opportunities Commission on or about 26 February 2004, as shown by copy of Notice of Right to Sue, attached, marked "Exhibit D" and made a part of this complaint.

PARTIES

6.  Plaintiff, Melvert Washington, Jr., is a citizen of the United States and of the State of Delaware, and at all relevant times, an employee of defendant at Store # 1157 (hereafter referred to as "Washington").

7.  Defendant Autozoners, Inc., is a Nevada corporation, doing business in the State of Delaware, and at all relevant times, the owner of the Auto Zone store #1157, located at 116A Glenwood Ave., Smyrna, Delaware (hereafter "Store # 1157").

8.  At all times material to this claim, the following persons were agents, servants and employees of Autozoners' Inc.:

a.  Leon Bynum manager of Store #1157 from on or about September 2000 to and including 29 July 2002;

b.  Robert Baker, an employee at Store #1157 from on or about 31 July 2001 to on or about 16 December 2001;

c.  Shane Treesh, an employee at Store # 1157 from on or about May, 2000 to on or about March, 2002;

c.  Deanna Brown, an employee at Store # 1157 from on or about 18 August 2001 to and including 3 March 2002;

2

A129

f. Michael Broderick was co-President of Defendant from on or about 1 February 2001 to on or about 29 July 2002;

g. Joseph Simmons was co-President of Defendant from on or about 1 February 2001 to on or about 29 July 2002;

h. William Britt was district sales manager of defendant for the district that included Store #1157 from on or about 1 February 2001 to on or about 29 July 2002;

i Ralph Findle was store manager for Store #1157 from on or about September, 1999 to and including September, 2000.

j. Dennis Carruth was district manager from on or about September,1999, to and including September, 2000.

9. At all times material to this claim, the persons enumerated in paragraph (8) acted on behalf of the defendant as agents, servants and employees acting within the scope of their employment.

## ALLEGATIONS OF FACT

10. Defendant hired Washington as a part time sales associate in September, 1999.

11. On or about 29 April 2000, Washington made an internal racial discrimination complaint at Store #1157 against Ralph Findle store manager, a copy of which is attached, marked "Exhibit A" and made a part of this complaint.

12. Dennis Carruth, District Manager of Defendant failed to process the internal racial discrimination complaint in timely fashion

3

A130

13. On or about 1 August 2000, Defendant discharged Dennis Carruth and Ralph Findle.

14. On or about 12 October, 2000, Washington made a request for transfer to another store, a copy of which is attached, marked "Exhibit B" and made a part of this complaint.

15. Defendant denied the request marked "Exhibit B."

16. On or about 28 January, 2002, Washington made a request for change to full-time status, as shown by copy of request, attached, marked "Exhibit C" and made a part of this complaint.

17. On or after 28 January 2002, Leon Bynum told Washington that Defendant denied the request marked "Exhibit C."

18. On or about 16 December 2001, Defendant promoted Robert Baker to Part Sales Manager and was transferred to Store #1157.

19. On or about 3 March 2002, Defendant promoted Deanna Brown to Part Sales Manager and was transferred to Store #1157.

20. On or about January, 2001, Shane Treesh was promoted Part Sales Manager at Store #1157.

21. On or about Leon Bynum told Washington that Washington would never get promoted to a full-time position because he had filed the complaint marked "Exhibit A".

22. On or about 1 February 2001, Leon Bynum told Washington that Washington needed to talk to Michael Broderick, Joseph Simmons and William Britt in order to be promoted or to become a full time employee.

23. On or about 17 May 2002 Leon Bynum gave Washington a verbal warning because Washington let a customer take merchandise outside the store that was not yet paid for to see if the merchandise was suitable for replacement of a similar part in the customer's car.

24. After 2000, Defendant placed Washington in a hostile work environment, including but not

4

limited to the following acts:

    a. being disciplined for actions that Defendant did not discipline Caucasian employees for;

    b. being referred to as a "boy;"

    c. closely scrutinized and disciplined than other employees.

    e comments by Defendant's store manager to other employees that the manager would like to get rid of Washington.

25. Washington was not promoted nor made a full time employee.

26. Washington has exhausted all administrative remedies.


COUNT I

(42 U.S.C. §2000e-2 Differential Treatment)

27. Washington incorporates paragraphs 1 through 26 by reference in this Count of Complaint.

28. Washington twice applied for full-time employment and promotion at Store #1157 and was denied both full-time employment and promotion.

29. Other employees of Defendant who were of the Caucasian race were granted full-time employment and promoted at Store #1157 who had less experience.

30. Washington was fully qualified for full-time employment and promotion.

31. Defendant was motivated by race in denying Washington a full-time position and promotion

A132

## COUNT II

### (42 U.S.C. § 2000e -Constructive Discharge

32.  Washington incorporates paragraphs 1 through 31 by reference in this Count of Complaint.

33.  Defendant denied Washington an opportunity to obtain full-time employment and promotion when full-time positions were open at Store #1157.

34.  Defendant placed Washington in an hostile work environment.

35.  Washington was constructively discharged as a result of the hostile work environment and Defendant's refusal to promote him to Parts Manager.

## COUNT III

### (42 U.S.C. §2000e-3 Retaliation)

36.  Washington incorporates paragraphs 1 through 31 by reference in this Count of Complaint.

37.  Defendant placed Washington in a hostile work environment and denied his requests for full-time status and promotion in retaliation for his report of racial discrimination, marked Exhibit A to this complaint.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests trial by jury on all material issues of fact.

WHEREFORE, Plaintiff requests the following relief:

a.  Judgment and an order of the court declaring the Defendant's conduct was contrary to law;

b.  An award of back pay from date of wrongful conduct to date of rendition of judgment

6

A133

in this cause;

    c. Damages in an amount to compensate the plaintiff for the loss of economic benefits,

and emotional and mental distress;

    d. A reasonable attorney's fee, the costs of this claim; and

for all other relief.

DATED: _June 14_____ 2004

                                      Dana L. Harrington, Esq. #3099
                                      Delaware Volunteer Legal Services, Inc.
                                      P.O. Box 7306
                                      Wilmington, DE 19802
                                      Tel: (302) 478-8680

COUNSEL ADMITTED PRO HAC VICE

                                      Thomas J. Reed
                                      Widener University School of Law/
                                      Delaware Volunteer Legal Services, Inc.
                                      Veterans Assistance Program
                                      4601 Concord Pike
                                      P.O. Box 7474
                                      Wilmington, DE 19803-7474
                                      TEL: (302) 477-2070
                                      E-mail: Thomas.J.Reed@law.widener.edu

A134

7-15-02

Spoke with Mel Washington about being full time Sales
at Store 1157 during the week of 7-8-02. He expressed interest
in being a Full time Br. I told him that we did not
have a Full time Br. Position to fill. The Reason for
this it due to the store doing less than 25k per week.
He said that he would think about it. In the
follow up Conversation with Mel we discussed the
reason for not needing a full time Br in the store
He did not accept the full time Sales Position

Billy Pitt
7-15-02

A135

TO: Autozone:
116-A Glenwood Ave.
Smyrna Delaware 19977
Leon Bynum Sr., Manager, 1157 And William Britt 1157 DM

FROM: Melvert Washington Jr.
408 Fork Branch Rd
Dover Delaware 19904
302-521-8407

Subject: Two Weeks Notice

Date: July 29th 02

Dear Sir,
Effective 7-29-02 please accept my two-week notice.

Also, I will only be available for opening until 1pm any days during weekly schedule workweek 08-04-02, also I wont be able to work 7-30-02, 08-06-02, and 08-07-02.

Thank you for your attention in this matter.

Melvert Wasington Jr.                7/29/02    1:35 Pm

Signed

Leon Bynum Sr.                                    1:35 Pm
Signed

A136

## DECLARATION OF TIMOTHY P. HARRISON

I, Timothy P. Harrison, pursuant to 28 U.S.C. § 1746, do hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct.

1. I am presently employed by AutoZone, Inc. as a staff attorney in the AutoZoner Relations Department at the Store Support Center in Memphis, Tennessee.

2. One of my primary job functions at AutoZone is to review disciplinary issues with operations management and to then make a recommendation regarding whether discipline up to and including termination is warranted.

3. In investigating a complaint of an alleged violation of company policy, I review all investigative materials, statements and other documents which are forwarded to me and then issue a recommendation.

4. AutoZone is not a Federal Contractor, however we strictly enforce and obey all Federal, State, and local anti-discrimination laws and practices.

5. AutoZone has a strong commitment to diversity among every employee (AutoZoner) and every customer, and provides equal opportunity for all AutoZoners in all terms and conditions of employment.

6. If an AutoZoner has any problems, issues, or complaints, AutoZone provides a structured procedure in order to resolve those issues.

7. AutoZone hired Plaintiff, Melvert Washington, on August 30, 1999, as a part-time Customer Service Representative at store 1157 in Smyrna, Delaware.

A137

   
8. On August 1, 2000, I received a letter via facsimile from John Mulford advising that AutoZoner Relations had not received Plaintiff's April 29, 2000, grievance letter which Plaintiff had given to Dennis Carruth.

9. After receiving this letter, I sent a letter to Mr. Washington indicating that AutoZone received his August 1 letter and an investigation would follow.

10. On or about August 4, 2000, AutoZone Regional Loss Prevention Manager, Ron Wertz initiated an investigation.

11. In conducting his investigation, Wertz took statements from Plaintiff; Ralph Findle; Thomas Shehorn; Brandon Diaz; Frank Wilson; and Dennis Carruth.

12. Upon the conclusion of the investigation, I reviewed Wertz's investigative file and determined that the actions of Findle and Carruth constituted violations of AutoZone policy which consistently constituted termination offenses. As such, I forwarded my recommendation of termination to AutoZone regional manager, Shawn Sheikhzadeh, who approved the termination of Carruth and Findle which was then carried out.

13. As a result of Findle's violations of AutoZone policy he was terminated on August 12, 2000 for unprofessional behavior and conduct unbecoming to AutoZone and fellow AutoZoners.

14. As a result of Carruth's violations of AutoZone policy he was terminated on August 12, 2000 for poor job performance, conduct detrimental to AutoZone, and loss of confidence.

A138

17. In connection with my review of disciplinary issues, part of my role is to ensure that no prohibitive factor has played any part in an employment decision or investigation regarding an AutoZoner.

18. In making recommendations, I seek to insure that the decision is consistent with other like situations and that the recommendations are in compliance with state and federal law.

I declare under penalty of perjury and the laws of the United States that the foregoing is true and correct.

Executed on _December 16_, 2005.

TIMOTHY P. HARRISON

A139