## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELVERT WASHINGTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-320 (SLR) |
| | ) | |
| | ) | |
| AUTOZONERS, INC., | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### Defendant AutoZone Inc.'s Joint Answering Brief In Opposition To Plaintiff's Motion For Summary Judgment And Reply Brief To Plaintiff's Answering Brief To Defendant's Motion For Summary Judgment

Matthew F. Boyer (Del. Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Tel: (302)-884-6585

Tracy K. Hidalgo (admitted *Pro Hac Vice*)
James P. Waldron (admitted *Pro Hac Vice)*
Frilot, Partridge, Kohnke, & Clements
1100 Poydras St.
3600 Energy Centre
New Orleans, La 70163
Tel: (504)-599-8358
Fax: (504)-599-8100

*Attorneys for Defendant,*
*AutoZone, Inc.*

DATED: February 2, 2006

## TABLE OF CONTENTS

Page

I.    OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT ........................1

      A.    Genuine Issues of Material Fact Defeat Plaintiff's
            Summary Judgment ............................................................1


II.   REPLY TO PLAINTIFF'S OPPOSITION TO AUTOZONE'S
      SUMMARY JUDGMENT ..............................................................2

      A.    There is No Evidence That Plaintiff's Non-Promotion Was Based
            On an Unlawful Purpose ......................................................2

      B.    There is No Evidence of a Hostile Work Environment ........................5

            1.    No Evidence Supports the Claim of Conspiracy as a
                  Hostile Work Environment .......................................5

            2.    Corrective Actions Cannot Help Establish Hostile Work
                  Environment ..........................................................8

      C.    There is No Evidence of Intolerable Conditions, Which is
            Required to Sustain a Claim of Constructive Discharge ...................10

      D.    Absence of Causal Connection Dooms Retaliation Claim ................12


IV.   CONCLUSION        ..................................................................15

## **TABLE OF AUTHORITIES**

CASES                                                                                                        Page

*Carson v. Bethlehem Steel Corp.,*
  82 F.3d 157 (7th Cir. 1996) ..............................................................................6

*Carter v. Ball,*
  33 F.3d 450 (4th Cir. 1994) ............................................................................12

*Connors v. Chrysler Fin. Corp.,*
  160 F.3d 971 (3d Cir. 1998) ............................................................................11

*Duffy v. Paper Magic Group, Inc.,*
  265 F.3d 163 (3d Cir. 2001) ............................................................................13

*Jalil v. Avdel Corp.,*
  873 F.2d 701 (3d Cir. 1989) ............................................................................13

*Kachmar v. SunGard Data Sys.,*
  109 F.3d 173 (3d Cir. 1997) ............................................................................13

*Keller v. Orix Credit Alliance, Inc.,*
  130 F.3d 1108 (3d Cir. 1997) ............................................................................6

*Krouse v. Am. Sterilizer Co.,*
  126 F.3d 494 (3d Cir. 1997).............................................................................13

*Meritor Sav. Bank, FSB v. Vinson,*
  477 U.S. 57 (1986) ..........................................................................................9

*National R.R. Passenger Corp., v. Morgan,*
  536 U.S. 101 (2002) .....................................................................................2, 3

*Oncale v. Sundowner Offshore Services, Inc.,*
  523 U.S. 75 (1998) ..........................................................................................7

*Revis v. Slocomb Industries,*
  814 F.Supp. 1209 (D. Del. 1993) ....................................................................9

*Robinson v. City of Pittsburgh,*
  120 F.3d 1286 (3d Cir. 1997) ........................................................................13

*United States v. Alker,*
  225 F.2d 851 (3d Cir., 1958) ............................................................................6

CASES                                                                        Page

*Weston v. Commonwealth of Pa.*,
    251 F.3d 420 (3d Cir. 2001) ............................................................14

*Williams v. Giant Food Inc.*,
    370 F.3d 423 (4th Cir. 2004) ...........................................10, 11, 12

OTHER AUTHORITIES:

Federal Rules of Evidence 801(d)(2)(B) ......................................................6

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000-et seq. ........................2, 7

I.      **OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT**

      A.      **Genuine Issues of Material Fact Defeat Plaintiff's Summary Judgment.**

Plaintiff has filed for summary judgment alleging there are no issues of material fact surrounding his claims of hostile work environment, retaliation, failure to promote or constructive discharge.  However, Plaintiff's own exhibits and testimony, which he relies on in support of his summary judgment, clearly establish that: (1) Plaintiff's Motion for Summary Judgment should be denied and (2) as set forth in more detail below, summary judgment in favor of AutoZone is appropriate.

Plaintiff relies on the promotions of three co-employees to establish his failure to promote claim.  However, evidence clearly shows a valid explanation for the non-promotion of Plaintiff.  Specifically, at the time of the promotions of Robert Baker and Shane Treesh, Plaintiff by his own admissions, was either unable to work full time or had no interest in doing so.  (A115/Washington Dep. Exh. 30)[1].  Additionally, the facts establish the incidents of which Plaintiff complains do not rise to the level necessary to establish either a hostile work environment claim or a constructive discharge claim, as established by the fact that in resigning his employment, Plaintiff merely gave two weeks notice and continued to work despite his assertions that that harassment was so severe and the conditions so intolerable that the reasonable person would have resigned.

While overwhelming evidence supports Autozone's claim that its actions were lawful, Plaintiff's evidence continues to elude even the basic evidentiary threshold of proving that AutoZone took actions based on either Plaintiff's race or his engaging in protected activity.  As such, taking the facts in a light most favorable to AutoZone, no

---

[1]      A [pg.] refers to the page number in the Appendix to AutoZone's opening brief; Washington [dep. exh.] refers to the corresponding exhibit number attached to the transcript of Mr. Washington's deposition.

reasonable fact finder could find that no genuine issues of material fact exist in this matter.

## II.    REPLY TO PLAINTIFF'S OPPOSITION TO AUTOZONE'S SUMMARY JUDGMENT

### A.    There is No Evidence That Plaintiff's Non-Promotion Was Based on an Unlawful Purpose.

In support of his failure to promote claim, Plaintiff alleges that Shane Treesh, Deanna Brown, and Robert Baker received promotions even though they were less qualified than Plaintiff. Aside from the fact that Plaintiff has no evidence establishing that these decisions were rooted in discrimination, Plaintiff is time barred from pointing to certain employment decisions involving Treesh and Baker in support of his failure to promote claim.

Under Title VII, discrete discriminatory acts are not actionable under Title VII if they occurred more than 180 or 300 days before plaintiff filed a charge with the Employment Opportunity Commission, even though acts are related to acts alleged in a timely filed EEOC charge. *National R.R. Passenger Corp., v. Morgan,* 536 U.S. 101, 113 (2002). In *Morgan,* an African-American employee sued his employer alleging that he was subjected to racial discrimination, retaliation and a hostile work environment. The Ninth Circuit held that "alleged discriminatory acts that occurred outside the limitations period were still actionable under the continuing violation theory as long as the untimely incidents represent an ongoing unlawful employment practice." *Id.* at 106-107. In reversing the Ninth Circuit, the Supreme Court held that an "unlawful employment practice" refers to discrete discriminatory acts or single occurrences even when related to other acts. *Id.* at 111. As such, the court stated that "discrete acts such as

2

termination, failure to promote, denial of transfer, or refusal to hire are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 114. Thus, each occurrence starts a new clock for purposes of filing charges related to that act, and an employee must file charges within 300 days of a discrete discriminatory act. *Morgan,* 536 U.S. at 114-115.

In this matter, Shane Treesh was hired as a part-time sales employee on May 5, 2000. (PA0172.)[2] Seven months later, on December 10, 2000, Treesh received the promotion at issue. (PA0173.) This promotion occurred some 535 days prior to Plaintiff's filing his charge with the Delaware Department of Labor. As such, Plaintiff is time barred from alleging a failure to promote as it relates to the discrete act of AutoZone promoting Treesh on December 10, 2000.

AutoZone hired Robert Baker a **full time** sales employee on July 31, 2000. (PA0156.) On February 4, 2001, Baker was transferred from Store 1157 to Store 1159 and promoted to the position of Parts Sales Manager ("PSM"). (PA0157.) Baker's promotion to PSM occurred approximately 479 days prior to Plaintiff's filing his charge with the Delaware Department of Labor. As such, Plaintiff is time barred from alleging a failure to promote claim as it relates to the discrete act of AutoZone promoting Baker on February 4, 2001.

Even if this Court chooses to find Plaintiff's claims implicating Baker and Treesh are not time barred, Plaintiff is still unable to establish that AutoZone's decision to promote these individuals was rooted in discrimination. Specifically, at the time of these promotions, Plaintiff's own testimony and evidence establish he was not interested in a

---

[2]    PA[pg.] refers to the page number in the Appendix to Plaintiff's opening brief in support of his motion for summary judgment.

full time position at AutoZone during the time frame in which Treesh and Baker received their promotions. To be exact, Plaintiff states in the affidavit which he attached to his own summary judgment motion as well as in his own sworn deposition testimony that he did not express an interest in becoming a full time employee at AutoZone until some time in 2001. (PA0009, Paragraph 9.) Thus, at the time Treesh received his promotion on December 10, 2000, Plaintiff had no interest in becoming a full time employee with AutoZone. To the contrary, Plaintiff was employed full time by Delaware State University. Specifically, record evidence establishes that on February 26, 2001, Plaintiff informed AutoZone that he was only available to work nine hours a week due to his full time job at Delaware State University. (A115/Washington Dep. Exh. 30). Plaintiff even testified in his deposition that in February 2001, his schedule was "pretty limited" when it came to working at AutoZone. (A032/Washington 177).[3] Thus, on the date Baker received his promotion, February 4, 2001, record evidence and Plaintiff's own deposition testimony reflect that Plaintiff not only had no interest in a full time position; but also that he was unable to work full time at AutoZone in February 2001.

As for the promotion of Deanna Brown, Plaintiff was not working at AutoZone, nor was he capable of performing his job at the time she received her promotion in February 2002. Specifically, Plaintiff was involved in a car accident which disabled him temporarily and he was unable to work from February until late April or early May. (A076/Washington 197). Nevertheless, Plaintiff's allegation still fails to establish that AutoZone denied Plaintiff a full time position in February 2002 because of his engaging in protected activity or on the basis of his race. Once Plaintiff returned to work and a full

---

[3]     A [pg.] refers to the page number in the Appendix to AutoZone's opening brief; Washington [pg.] refers to the corresponding page of the transcript of Mr. Washington's deposition.

time position became available in July 2002, AutoZone offered the job to Plaintiff on July 10, 2002. (A039/Washington 224). The fact that a full time position was not available at the exact moment Plaintiff desired to become full time is of no value in helping to prove Plaintiff's claims and does not establish that Plaintiff's failure to receive a promotion was based either on his race or on his engaging in a protected activity.

**B.      There is No Evidence of a Hostile Work Environment.**

In his opposition, Plaintiff alleges he was the victim of a hostile work environment as a result of: (1) AutoZone's failure to promote him; (2) AutoZone's encouraging a conspiracy behind his back to show he was unfit to be an AutoZoner; and (3) Autozone's use of internal corrective action and performance review system to make Plaintiff look unqualified. As set forth above, there is no evidence that Plaintiff's non-promotion was based on an unlawful purpose.

**1.      No Evidence Supports the Claim of Conspiracy as a Hostile Work Environment.**

In terms of a "conspiracy", Plaintiff alleges that in the fall of 2000, AutoZone managers and employees "tried to drive Washington out of AutoZone because he had made a complaint of racial discrimination that was investigated and resulted in the discharge of both Findle and Carruth." (Plaintiff's Opening Brief in Support of his Motion for Summary Judgment, p. 8).[4] Specifically, Plaintiff alleges that Richard Henion (parts sales manager), Brian Paduano (store manager), Robert Baker (full time customer service representative), James Zambrano (parts sales manager), and Shawn Permelia (full time customer service representative) conspired to have him fired in retaliation for his

---

[4]      In his opposition to AutoZone's Motion for Summary Judgment, plaintiff makes mention of the "conspiracy" and cites to exhibits which he attached to his summary judgment motion. Thus, for purposes of this reply, AutoZone cites to Plaintiff's opening brief in support of Plaintiff's Motion for Summary Judgment, because Plaintiff's opening brief explains the basis for this alleged "conspiracy."

filing a complaint against Ralph Findle in April 2000. Plaintiff surmises that these employees joined together and filed a complaint against him in retaliation for his filing a complaint against Findle. (Plaintiff's Opposition, p. 7).

Without analyzing the legal basis for establishing a "conspiracy" claim, the evidence reflects that after investigating the alleged "conspiracy" AutoZone concluded that none of the employees' actions, including Plaintiff, warranted any discipline. As a result of this investigation, Plaintiff woefully attempts to conclude that AutoZone's failure to terminate Plaintiff equates with an admission that Plaintiff was falsely accused and thus he was somehow the victim of a hostile work environment. Specifically, Plaintiff alleges:

> Defendant had a duty to act if Washington was threatening other employees with dismissal. If Washington had been guilty of the alleged threats and foul language, Defendant would have fired him. The fact that Defendant did nothing is an admission that Washington was falsely accused. *United States v. Alker,* 225 F.2d 851, 852-853 (3rd Cir, 1958); Fed. R. Evid. 801(d)(2)(B).

In support of this far-fetched conclusion, Plaintiff cites to a 1958 criminal case and the Federal Rule of Evidence pertaining to exceptions to the hearsay rule. However, neither bears any relation to the matter at hand and Plaintiff's reliance on these legal principles is further evidence of the web of confusion which Plaintiff has continued to spin in a last-ditched effort to establish his claim. Plaintiff is obviously unaware of the premise that federal courts are not arbitral boards, ruling on the strength or correctness of an employment decision. Indeed, the question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination or some other prohibited activity. *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1108, 1109 (3d Cir. 1997) (citing *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996)).

Additionally, Plaintiff's incorrect reasoning would imply that every time an employee complained about another employee's conduct, the employer would be forced to terminate or take some adverse action against the alleged guilty party out of fear that the business decision could be used negatively in a court of law. Such reasoning ignores the fact that Title VII is not a general civility code for the American workforce. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78 (1998). Indeed, Title VII standards for assessing claims of hostility are designed to filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing. *Id.*

In analyzing Plaintiff's conspiracy theory, it is also important to note that despite Plaintiff's contention that the "conspirators" created a condition which was so unbearable to work in, Plaintiff testified in his deposition that he encountered no problems with Henion, Paduano or Zambrano during his employment at AutoZone. (A023-A024/Washington 140-145). In terms of Robert Baker, the only problem Plaintiff testified involving Baker stemmed from Plaintiff's suspicions that Baker was allegedly stealing from the cash register. (A026/Washington 151-152). In terms of Permilia, Plaintiff recalled one occasion when he became upset with Permilia as a result of Permilia's telling a customer over the phone, "Your boy has your part for you." After Permilia allegedly said this, Plaintiff recalled him turning around and staring directly at him. (A025/Washington 148.) AutoZone investigated Plaintiff's allegation regarding Permilia's use of the word "boy," and determined the comment was not meant to be taken in a racial manner. Aside from this comment, Plaintiff incurred no other problems with Permilia. (A026/Washington 149). Such admissions hardly equate with a finding that a

7

co-employee conspiracy created an environment that was so ripe with harassment which was so pervasive and regular that it detrimentally affected Plaintiff's ability to perform his job.

Regardless of Plaintiff's self-serving allegations, his "conspiracy" theory lacks any evidence tending to establish the existence of a common thread which ties these five individuals together under an umbrella of conspiracy. Indeed, Plaintiff has no evidence establishing that these individuals' actions were anything more than separate and independent acts. Finally, Plaintiff has failed to produce one thread of evidence which shows that any of these individuals' actions were rooted in either discriminatory animus or were carried out as a result of Plaintiff's engaging in protected activity. Simply put, Plaintiff has established no discriminatory or retaliatory animus with regard to the five (5) alleged conspirators, two of which were hourly and not management employees.

## 2. Corrective Actions Cannot Help Establish Hostile Work Environment.

Plaintiff's hostile work environment claim is also rooted in allegations that Leon Bynum, an African American manager, gave Plaintiff one undeserved low performance evaluation and issued unwarranted corrective actions to Plaintiff. Plaintiff first takes issue with an April 21, 2001 performance evaluation from Bynum, on the basis that he believes he should have received "achieves requirements" in all eight of the categories in which he was evaluated. (A084/Washington 182). However, Plaintiff has no evidence indicating that his failure to receive "achieves expectations" was based on his race or his engaging in a protected activity. To be sure, Plaintiff admitted that he has no idea why Bynum failed to evaluate him properly. (A034/Washington 183).

Much akin to the evaluation, Plaintiff has no evidence tending to establish that Bynum issued corrective actions based either on Plaintiff's race or his engaging in protected activity. In *Revis v. Slocomb Industries,* 814 F.Supp. 1209, 1214 (D. Del. 1993), a case chiefly relied on by Plaintiff in his opposition, this Court held that such corrective actions do not alter the conditions of the plaintiff's employment and create an abusive working environment. *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). In *Revis,* plaintiff presented evidence that after filing an EEOC complaint against her employer on May 12, 1989, the plaintiff began receiving written "employee warnings," from the defendant's Chief Financial Officer, who was not Plaintiff's immediate supervisor. Specifically, the plaintiff received five written warnings over a six-week period after filing his EEOC complaint. In one warning given seven days after her charge, on May 19, the plaintiff was written up for arriving four minutes late to work. This report also included a warning that the next violation would result in termination. There was further evidence of a statement by a supervisor that the plaintiff had been denied a promotion to a certain position "because she was black." In addressing the plaintiff's hostile work environment claim, the court stated the written warnings and derogatory remarks made by senior management were insufficient to create an abusive working environment.

Much akin to *Revis,* the <u>five corrective actions</u> which Plaintiff received from Bynum over an approximate <u>20 month period</u> are insufficient to establish a hostile work environment. Moreover, Plaintiff has no evidence aside from his own self serving testimony which indicates that the five corrective actions or one evaluation were given in response to plaintiff's engaging in a protected activity or because of his race. See

9

*Williams v. Giant Food Inc.,* 370 F.3d 423, 432 (4th Cir. 2004) (plaintiff's testimony that she believed her evaluations to be "unfair and untrue and incorrect" is merely a self-serving opinion that cannot, absent objective corroboration, defeat summary judgment). Simply put, Plaintiff has no evidence tending to reflect that Bynum harbored racial thoughts (indeed Bynum is African American) or that Bynum took directives from AutoZone to issue allegedly unjustified corrective actions or an evaluation to Plaintiff based on his race or his engaging in protected activity.

Finally, as further evidence of the lack of a hostile work environment claim in this matter, Plaintiff submitted a resignation letter to AutoZone on July 29, 2002. (A040/Washington 225; A136/Washington Dep. Exh. 43). However, while Plaintiff alleges that the environment at AutoZone became so hostile that he was forced to resign, Plaintiff's resignation letter informed AutoZone that he was merely giving his two weeks notice and even went so far as to advise of which days he would be able to work in those final two weeks. (A040/Washington 225; A136/Washington Dep. Exh. 43). One can only surmise that if the harassment was so severe and pervasive to give rise to a hostile work environment claim, then the Plaintiff would have been unable to return to work and would have not returned following the submission of his resignation letter. Such actions hardly reflect the existence of a hostile work environment and establish the ripeness of summary judgment on Plaintiff's hostile work environment claim.

**C.    There is No Evidence of Intolerable Conditions, Which is Required to Sustain a Claim of Constructive Discharge.**

At his deposition, Plaintiff testified that the reason he resigned his employment in July 2002 is because he was not given a PSM position and additional compensation. (A040/Washington 225-227). In his opposition to AutoZone's summary judgment,

Plaintiff states he resigned his employment because he could no longer take the hostile work environment which AutoZone created. Regardless of the reasons for Plaintiff's resignation, he was not the victim of a constructive discharge. For instance, despite his allegation that he resigned because he was not given a PSM position, a plain reading of Plaintiff's summary judgment motion and opposition to AutoZone's summary judgment, indicate that Plaintiff alleges AutoZone promised him sometime in 2001-2002 that he would receive a full time job when the next opening became available. Record evidence reveals that from February 2002 until late April or early May 2002, Plaintiff was out of work after being involved in a serious car accident. (A036/ Washington 195-197). In July 2002, after plaintiff's return to work, AutoZone offered him a full time job; however, he turned down this offer and resigned his employment apparently because AutoZone's offer did not entail additional money, beyond of course, additional hours worked. (A040/Washington 226-227).

Plaintiff's decision to resign for lack of personal satisfaction hardly equates with a finding that AutoZone knowingly permitted conditions of discrimination that were so intolerable that a reasonable person in Plaintiff's shoes would resign. Indeed, to find that Plaintiff suffered a constructive discharge would open the door for employees to resign and claim constructive discharge every time an employer rejected an employee's request for an increase in salary or grew disgruntled with an employer's decision or became annoyed with a fellow employee. *Connors v. Chrysler Fin. Corp.,* 160 F.3d 971, 972 (3d Cir. 1998) (employees are not guaranteed stress-free environments and discrimination laws cannot be transformed into a palliative for every workplace grievance, real or imagined, by the simple expedient of quitting); *Williams,* 370 F.3d at 432. In *Williams,*

11

cited supra, the plaintiff alleged constructive discharge was based on the fact that her supervisors yelled at her, told her she was a poor manager, gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back. In dismissing the plaintiff's claim, the Fourth Circuit, much akin to the Third Circuit in *Connors,* held that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult ot unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Williams,* 370 F.3d at 432 (quoting *Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994). In this case, Plaintiff's allegations taken as a whole, in a light most favorable to Plaintiff, do not give rise to a claim for constructive discharge as Plaintiff has simply failed to establish that his working conditions were so intolerable that he had no choice but to resign. Indeed, if the conditions were so intolerable that a reasonable person would resign, Plaintiff certainly would not have been able to work out his two weeks after deciding to resign.

### D.    Absence of Causal Connection Dooms Retaliation Claim.

In opposing AutoZone's summary judgment Plaintiff's rationale for his retaliation claim surviving summary judgment is based on unfounded conclusion and illustrates the weakness, implausibility, and speculation upon which his claims are based. Specifically, Plaintiff fails to illustrate the causal connection between his engaging in a protected activity and an adverse employment action.[5] For instance in addressing his retaliation claim, Plaintiff points to the alleged conspiracy by his co-employees and the fact that AutoZone employees allegedly admitted that the environment at the Smyrna store was uncomfortable when Plaintiff was around. (Plaintiff's Opposition Brief, pp. 7-8). Such

---

[5] As discussed in Section III, AutoZone denies that Plaintiff was the victim of an adverse employment action since he fails to establish that he suffered a constructive discharge.

assertions simply do not establish a claim of retaliation. First, without evidence of retaliatory animus or intervening antagonism, an uncomfortable work environment does not lend itself to a retaliation claim. *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 169 (3d Cir. 2001). Second, there is absolutely no causal connection between the alleged conspiracy which occurred in late 2000 and Plaintiff's resignation some twenty seven months later in the summer of 2002.

The Third Circuit has held that in adducing evidence of causation, the plaintiff may not rely merely on a "post hoc, ergo propter hoc" inference from the fact that a restriction was imposed after the filing of a complaint. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997). If timing alone can ever be sufficient to establish a causal link, the timing must be unusually suggestive of a retaliatory motive before a causal link can be inferred. See *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (causal link established where discharge happened two days after employer received notice of Plaintiff's EEOC claim); *Kachmar v. SunGard Data Sys.*, 109 F.3d 173 (3d Cir. 1997) (four month time lapse between protected activity and adverse employment action does not automatically prohibit a finding of a causal connection); but see *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (a nineteen month interlude between the protected activity and the alleged retaliation, without any other evidence of discriminatory animus in the interim, was insufficient as a matter of law to support an inference of causation). However, when temporal proximity between protected activity and alleged retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus. *Krouse* 126 F.3d at 500. As such, the case law sets forth no real parameters on what courts can consider in determining whether the

causation requirement has been satisfied. Regardless, no matter the broadness of the spectrum of evidence which this Court may consider, Plaintiff cannot establish a claim of retaliation.

In this case, not only is any evidence of temporal proximity lacking, but Plaintiff is unable to establish the existence of <u>any</u> evidence tending to establish an inference of retaliatory animus or intervening antagonism. *Weston v. Commonwealth of Pa.*, 251 F.3d 420 (3d Cir. 2001). To be sure, AutoZone offered Plaintiff a full-time position which Plaintiff rejected and proceeded to resign shortly thereafter. In *Weston,* the plaintiff, a prison employee, was subjected to physical touching by a co-employee which lead to "comments, jibes, and jokes made by employees and managers as well as inmates following the incidents. *Id.* at 423. In filing his complaint, plaintiff alleged that these comments, jokes and jibes were made in retaliation for his filing a grievance with his supervisor and an EEOC complaint. *Id.* at 423. Additionally, the plaintiff suffered two written reprimands and he was suspended on two occasions for attendance problems. *Id.* at 430. In granting summary judgment, the Third Circuit first pointed out that the suspensions were more than a year distant from the plaintiff's protected activities. *Id.* at 432. The court also noted that despite plaintiff's contention that a "pattern of antagonism" existed over the entire course of events, this pattern did not portend any future retaliation. *Id.* Instead, the adverse employment actions [suspensions] were discrete responses to particular occurrences. *Id.* As such, the Third Circuit affirmed the district court's granting the defendant's summary judgment.

In this case, Plaintiff has failed to adduce any evidence tending to indicate the existence of any retaliatory animus or intervening antagonism during the 27 month period

14

between his engaging in protected activity and his resignation from AutoZone. Indeed, Plaintiff concedes he has no evidence or idea about who retaliated against him. (A036/Washington 195.) Although Plaintiff alleges Bynum retaliated against him by issuing allegedly unjustified corrective actions and one evaluation, he has no evidence that Bynum's actions were rooted in retaliation for Plaintiff's engaging in protected activity. Regarding the promotions, AutoZone has shown that this claim fails based on the fact that Plaintiff was unable to work due to a non-work related injury and his full-time employment at another job. Additionally, two of Plaintiff's promotion complaints are time barred. Finally, AutoZone offered Plaintiff a full-time position when it became available and Plaintiff turned it down, opting to instead resign shortly thereafter. In sum, there is simply no evidence of retaliatory animus, temporal proximity, or intervening antagonism necessary to establish a causal connection between any protected conduct and adverse employment action. As such, Plaintiff's retaliation claim is ripe for dismissal on summary judgment.

## IV.    CONCLUSION

First, Plaintiff's own exhibits and testimony which he relies on in support of his summary judgment clearly establish that Plaintiff's Motion for Summary Judgment should be denied. Second, conceding, for purposes of summary judgment, the truth of all of Plaintiff's assertions, the fact remains Plaintiff is unable to establish that any decision that was formulated by AutoZone during Plaintiff's employment was based on Plaintiff's race or his engaging in a protected activity. Moreover, Plaintiff fails to establish the existence of harassment which was so severe and pervasive or that the working

conditions at AutoZone were so intolerable that he was forced to resign.   As such,

AutoZone is entitled to summary judgment as a matter of law.

Matthew F. Boyer (Del. Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Tel: (302)-884-6585

Tracy K. Hidalgo (admitted *Pro Hac Vice*)
James P. Waldron (admitted *Pro Hac Vice*)
Frilot, Partridge, Kohnke, & Clements
1100 Poydras St.
3600 Energy Centre
New Orleans, La 70163
Tel: (504)-599-8358
Fax: (504)-599-8100

*Attorneys for Defendant,*
*AutoZone, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

MELVERT WASHINGTON, JR.,    )
        )
    Plaintiff,    )
        )
    v.    )    Civil Action No. 04-320 (SLR)
        )
        )
AUTOZONERS, INC.,    )
        )
    Defendant    )
        )

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2006, a copy of Defendant AutoZone, Inc.'s Joint Answering Brief In Opposition To Plaintiff's Motion For Summary Judgment And Reply Brief To Plaintiff's Answering Brief To Defendant's Motion For Summary Judgment was served upon the following counsel:

**Electronically by CM/ECF and Facsimile**

Joseph J. Farnan, III (Bar No. 3945)
Brian E. Farnan (Bar No. 4089)
Phillips, Goldman & Spence, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302)655-4200
Attorney for Plaintiff

**Facsimile**

Thomas J. Reed (Pro Hac Vice)
Widener University School of Law/
Delaware Volunteer Legal Services, Inc.
4601Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474
(302)477-2070
Attorney for Plaintiff

Timothy Holly (Del. Bar No. 4106)

444144