IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELVERT WASHINGTON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 04-320-SLR |
| | ) |
| AUTOZONERS, INC., | ) |
| | ) |
| Defendant. | ) |

Joseph James Farnan, III, Esquire, Phillips, Goldman & Spence, P.A., Wilmington, Delaware.  Counsel for Plaintiff.

Timothy Michael Holly, Esquire, Connolly, Bove, Lodge & Hutz, Wilmington, Delaware.  Counsel for Defendant.

**MEMORANDUM OPINION**

Dated: September 22, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I.  INTRODUCTION

Melvert Washington, Jr. ("plaintiff"), proceeding in forma pauperis, filed the present action against Autozoners, Inc. ("defendant") on May 19, 2004, alleging employment discrimination under 28 U.S.C. §§ 2000e et seq., also known as Title VII of the Civil Rights Act of 1964 ("Title VII").  (D.I. 2)  He amended his complaint on June 14, 2004.  (D.I. 6)  Plaintiff, an African American male, alleges that he was subjected to differential treatment because of his race, constructive discharge resulting from a hostile work environment, and retaliation for an "internal racial discrimination complaint" he made against his store manager on April 29, 2000.  (Id. at ¶¶ 11, 31, 35, 37)  Plaintiff seeks a jury trial; an award of back pay; compensatory damages for loss of economic benefits and emotional and mental distress; and attorneys' fees and costs.  (Id. at 6-7)  Both plaintiff and defendant have filed motions for summary judgment.  (D.I. 47, 43)  The court has jurisdiction pursuant to 28 U.S.C. §§ 1331.[1]

## II.  BACKGROUND

On or about August 31, 1999, plaintiff was hired by Autozone store #1157, which is owned by defendant and located in Smyrna, Delaware.  (D.I. 6 at ¶¶ 6-7)  At the time he began working for defendant on a part-time basis, plaintiff also had a full-time

---

[1] Defendant challenges neither jurisdiction nor venue.  (D.I. 18 at ¶¶ 1, 3)

job as a custodian with Delaware State University ("DSU"). (D.I. 48 at 4) After being hired by defendant, plaintiff received the company's handbook, which contained policies and procedures (including a "Harassment Policy"[2] and steps for an employee to take if he did not understand something in the handbook); plaintiff also signed defendant's diversity mission statement.[3] (D.I. 44 at 3-4)

After awhile, plaintiff began having problems with his store's manager, Ralph Findle ("Findle"), including alleged verbal abuse and an incident in which Findle, a white man, referred to plaintiff as "a little boy" after the two had argued;

---

[2]Defendant's Harassment Policy includes the following instructions:

> If you believe you have been harassed, tell your manager at once, or report the situation directly to your area advisor. You may also contact the Vice President of Human Resources, the Director of Autozoner Services, or the Autozoner Relations Manager . . . . If the company determines that an AutoZoner has engaged in harassment, that Autozoner will be subject to corrective action, up to and including termination.

(D.I. 46 at A055)

[3]That statement provides, in part:

> Autozone strives to create an environment in which every Autozoner and every customer is treated with dignity and respect – regardless of race, gender, age, physical ability, sexual orientation or any other perceived difference. We are committed to seeking out talented, diverse people, encouraging them to work to their full potential and valuing their contributions.

(D.I. 46 at A052-A053)

2

plaintiff, who is African American, believed that Findle's comment was a racial slur. (D.I. 48 at 4-5) On April 29, 2000, plaintiff wrote a letter to District Manager Dennis Carruth ("Carruth") formally complaining about Findle's behavior. (D.I. 49 at PA-0111) Plaintiff's allegations were eventually investigated by Ron Wertz ("Wertz"), defendant's Regional Loss Prevention Manager. (D.I. 48 at 6) On August 12, 2000, after Wertz completed his investigation, defendant terminated both Findle and Carruth. (D.I. 44 at 12)

After Findle was fired, plaintiff requested a transfer from store #1157; however, the store's new manager convinced him to stay since Findle, the coworker with whom plaintiff had been having problems, was no longer there. (D.I. 46 at A089) In late September and early October of 2000, a number of plaintiff's fellow employees, all of whom were white men, accused him of making threatening statements about how easy it would be for him to get them fired. (D.I. 49 at PA-0088 to PA-0106) Plaintiff denied these allegations and defendant's investigator, Wertz, could not confirm that they were accurate. (Id. at PA-0035a) Wertz also did not find sufficient evidence to support plaintiff's claim that his white coworkers were retaliating against him for filing a racial discrimination complaint against Findle. (Id. at PA-0036 to PA-0037)

Plaintiff renewed his request for a transfer on October 12, 2000, stating that he felt like he was being "blackballed" because of his complaint against Findle and citing, as an example, a recent incident in which one of his coworkers had called him "boy."[4] (Id. at PA-0119 to PA-0120) Between August 31, 2001, and June 22, 2002, plaintiff received four Corrective Action Reviews ("CARs") documenting breaches of Autozone policy for offenses such as calling out sick, being late to work, and letting a customer install parts in his car without paying for them first. (D.I. 46 at A121, A122, A125, A126) Plaintiff refused to sign some of these CARs because he believed that they were given for circumstances that were outside of his control or infractions that were not enforced against other employees. (D.I. 48 at 13-14) Plaintiff likewise refused to sign a mediocre performance review given to him by the store's current manager, an African American named Leon Bynum ("Bynum"). (Id. at 14)

Shane Treesh, who was hired for a part-time position at store #1157 on May 5, 2000, became a full-time employee and received a small raise on December 10th of the same year. (D.I.

---

[4]Another Autozone employee had, referring to plaintiff, told a customer on the phone something to the effect of "your boy has your part." (D.I. 48 at 11; D.I. 44 at 14) Plaintiff claims that the employee looked directly at him while saying it and took it as a racial remark; however, the employee later stated that he thought plaintiff and the customer were friends and used the term "boy" because it is a common slang word for "friend." (D.I. 49 at PA-0120; D.I. 44 at 14-15)

4

49 at PA-0172 to PA-0173) On December 16, 2001, a white Autozone employee who had previously worked at the Smyrna store, Robert Baker, was transferred back to store #1157 as a Parts Service Manager ("PSM"). (D.I. 6 at ¶ 18; D.I. 18 at ¶ 18) A white woman named Deanna Brown likewise transferred to #1157 and was promoted on March 3, 2002. (D.I. 6 at ¶ 19; D.I. 18 at ¶ 19) Plaintiff claims that these white employees were unfairly promoted and/or given full-time status ahead of him even though they were less qualified and he had been promised such a promotion by the store's management. (D.I. 48 at 12-15)

In February 2002, plaintiff was involved in a serious car accident and was unable to return to work until late April or early May. (D.I. 46 at A036-A037) Previously, while still employed by DSU, plaintiff had begun expressing interest in becoming a full-time PSM for defendant.[5] (See D.I. 45 at A003; D.I. 46 at A002) Plaintiff quit his job with DSU in mid-2002; during the second week of July of that year, plaintiff was offered full-time status with defendant but he turned it down and gave his two weeks' notice soon after because the job offer did not include promotion to a PSM position, which he believed store

---

[5]At various times, due to conflicts with his full-time job and illnesses in his family, plaintiff's stated availability for his job with defendant dropped from approximately 45 hours a week (D.I. 49 at PA-0124), to 10.5 hours per week (id. at PA-0217 to PA-0218) and, finally, to 9 hours per week (id. at PA-0219).

5

management had been promising him for some time. (D.I. 49 at PA-0021, PA-0031a; D.I. 46 at A002)

On May 30, 2003, the Delaware Department of Labor found that there was "reasonable cause to believe that a violation of the State Discrimination Act ha[d] occurred." (D.I. 49 at PA-0203) The EEOC issued a Notice of Right to Sue on February 26, 2004. (D.I. 6, Ex. D) Plaintiff filed suit on May 19, 2004, less than 90 days after the issuance of this Notice; he later amended his complaint, which alleges racial discrimination based on differential treatment, a hostile work environment, constructive discharge, and retaliation. (D.I. 2, 6)

### III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper

6

Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). With respect to summary judgment in discrimination cases, the court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." Revis v. Slocomb Indus.,

814 F. Supp. 1209, 1215 (D. Del. 1993) (quoting <u>Hankins v. Temple Univ.</u>, 829 F.2d 437, 440 (3d Cir. 1987)).

## IV. DISCUSSION

Based on the facts discussed below, the court finds that plaintiff is not entitled to summary judgment on any of the counts in his complaint. Viewing the facts and inferences in a light most favorable to the defendant, plaintiff has failed to show that there is "[in]sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." <u>Revis</u>, 814 F. Supp. at 1215. As such, his motion for summary judgment is denied in full, and the rest of the court's analysis will focus on defendant's motion for summary judgment.

Discrimination claims under Title VII are analyzed under the burden-shifting framework set forth by the United States Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).[6]

---

[6]While the factors enunciated in <u>McDonnell Douglas</u> dealt specifically with employment cases that ended in termination, the Third Circuit has recognized that

> the elements of a prima facie case depend on the facts of a particular case. Thus, a prima facie case cannot be established on a one-size-fits-all basis. In fact, the relevant question . . . is whether [the plaintiff] suffered some form of "adverse employment action" sufficient to evoke the protection of Title VII.

<u>Jones v. Sch. Dist. of Philadelphia</u>, 198 F.3d 403, 411 (3d Cir. 1999) (internal citations omitted). As such, "something less than a discharge could be an adverse employment action." <u>Id.</u>

8

First, the plaintiff "must carry the initial burden under the statute of establishing a [prima facie] case of racial discrimination." Id. at 802. A plaintiff can accomplish this by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly-situated person not of the protected class is treated differently. Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000), aff'd, No. 00-1087, 2002 WL 402718 (3rd Cir. Feb. 4, 2002) (citing Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999)); see also Berry v. E.I. DuPont de Nemours & Co., 625 F. Supp. 1364, 1377 (D. Del. 1985) ("A plaintiff may establish a [prima facie] case of discrimination by showing that other similarly-situated employees of a different race were treated differently from the plaintiff."). Once the plaintiff has established a prima facie case of racial discrimination, "the burden shifts to the [employer] 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" Jones, 198 F.3d at 410 (quoting McDonnell Douglas, 411 U.S. at 802). "Finally, should the [employer] carry this burden, the plaintiff then must have an opportunity to prove by preponderance of the evidence that the legitimate reasons offered by the [employer] were not its true

reasons, but were a pretext for discrimination." Id. at 410 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)). Throughout the court's analysis, "[t]he ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the plaintiff remains at all times with the plaintiff." Id. (citing Burdine, 450 U.S. at 253) (first alteration in original).

Under the first step of the McDonnell Douglas test, plaintiff must establish a prima facie case of discrimination. As an African American, plaintiff is a member of a protected class. The proper standard for determining whether plaintiff has suffered an "adverse employment action" varies with the type of discrimination claim he is making. Therefore, the remaining two steps of the prima facie analysis will be divided into the four separate counts of plaintiff's allegations.

### A. Differential Treatment - Failure to Promote

Plaintiff avers that, despite repeated promises by Autozone management to give him a full-time position, he was denied such a promotion in favor of less qualified white employees. (D.I. 48 at 14-15) Likewise, while he was being denied full-time status, his manager, Bynum, issued three CARs against him for "infractions" plaintiff believed were unfair and not enforced

against other employees. (Id. at 13-14)[7] Plaintiff voiced his concerns to Bynum but claims that Bynum told him "that he would never get a full-time position because he filed the complaint against Findle in 2000." (Id. at 15)

With respect to comparator employees, defendant correctly points out that Deanna Brown and plaintiff were not similarly situated when she came to store #1157 in March 2002 - Brown was able-bodied, while plaintiff was recuperating from an injury and unable to work. There is no indication of record that any individuals became full-time employees or were promoted during a period of time when they were not physically able to work at all.

Defendant further argues that plaintiff's claims of differential treatment from Robert Baker and Shane Treesh are discrete acts time barred by the statute of limitations set forth in Title VII. (D.I. 52 at 2-3) The Supreme Court in <u>National Railroad Passenger Corp. v. Morgan</u>, 536 U.S. 101, 113 (2002), held that discrete discriminatory acts which occurred more than

---

[7]But see D.I. 49 at PA-0200, a letter written by Bynum, which states that plaintiff was a good worker and qualified for a management position. Plaintiff avers that, despite Bynum's repeated assertions to that effect, his Autozone superiors would not listen. Therefore, plaintiff uses Bynum's letter of support to bolster his discrimination claims while simultaneously arguing that CARs and poor performance reviews given to him by Bynum were unfair or retaliatory in nature. The court notes that several white employees also received CARs for being late, calling out, or failing to follow Autozone procedure, discrediting plaintiff's charges of selective enforcement. (Id. at PA-0149 to PA-0152, PA-0166 to PA-0168)

300 days before the plaintiff filed a charge of discrimination are not actionable, "even when they are related to acts alleged in timely filed charges." Id. According to the Third Circuit,

> Morgan provides fairly precise guidance as to what sorts of acts are "discrete." The Court first observes that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify," then lists the discrete acts in the case before it . . . .
> We can thus take from Morgan the following non-exhaustive list of discrete acts for which the limitations period runs from the act: termination, **failure to promote, denial of transfer**, refusal to hire, wrongful suspension, **wrongful discipline**, denial of training, **wrongful accusation**.

O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (emphasis added) (quoting Morgan, 536 U.S. at 114).

With regard to plaintiff's allegations of differential treatment, "[a]pplying the Morgan distinction to [plaintiff's] allegations listed above, . . . it is apparent that nearly all of them fall into the category of discrete acts. Accordingly, under Morgan, they cannot be aggregated under a continuing violations theory." Id. Therefore, the statute of limitations on the acts underlying plaintiff's claims began to run at the time those acts occurred. Since plaintiff filed his discrimination claim with the Delaware Department of Labor on May 29, 2002, any discrete event occurring before August 2001 is time barred under Title VII.

Shane Treesh's elevation to full-time status and promotion to PSM occurred in May 2000 and December 2000, respectively.

12

(D.I. 49 at PA-0172 to PA-0173)  Robert Baker was hired as a full-time employee at store #1157 in August 2000.  (Id. at PA-0156)  He was promoted while working at store #1159 in Bear, Delaware, in February 2001.  (Id. at PA-0157)  All of these events clearly occurred more than 300 days before plaintiff filed his discrimination claim.  These were the sole remaining events that plaintiff pointed to in support of his claim of differential treatment.[8]

The court concludes, therefore, that plaintiff was not similarly situated with Deanna Brown and the events relating to Baker and Treesh are time barred.  Defendant's motion for summary judgment is granted as to this count.

### B. Hostile Work Environment

To state a Title VII claim premised on a hostile work environment, plaintiff must demonstrate that:  (1) he suffered intentional discrimination because of his race; (2) the discrimination was severe or pervasive;[9] (3) the discrimination

---

[8] Baker's transfer back to store #1157 appears to have occurred in December 2001.  (D.I. 6 at ¶ 18; D.I. 18 at ¶ 18) Since it is not clear from the record whether plaintiff is claiming that Baker's transfer back into the Smyrna store was somehow discriminatory, the court will not consider this fact in its analysis.

[9] Although there has been some disagreement among courts in the Third Circuit as to whether it is proper to use the "pervasive and regular" standard enumerated in Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990), see, e.g., Arasteh v. MBNA America Bank, N.A., 146 F. Supp. 2d 476, 494 & n.36 (D. Del. 2001), the United States Supreme Court recently utilized a

detrimentally affected him; (4) the discrimination would detrimentally affect a reasonable African American person in that position; and (5) the defendant is liable under a theory of respondeat superior. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1482-83 (3d Cir. 1990). A prima facie showing, therefore, contains both a subjective standard (that plaintiff was in fact affected) and an objective standard (that a reasonable, similarly situated African American would be affected). Id.

According to plaintiff, white employees at store #1157 only began voicing complaints about him after he filed the complaint that led to Findle's and Carruth's termination. (D.I. 48 at 8) Plaintiff claims that, soon after Findle called him a "boy," another white employee did so as well. (Id. at 24-25) Plaintiff's subsequent repeated requests for a transfer were denied. (Id.) Plaintiff contends that, after filing his complaint, Store Manager "Bynum, an African-American himself, used poor performance reviews, unwarranted Correction [sic] Action reports and denial of promotion as weapons against [plaintiff]." (Id. at 25) Therefore, plaintiff asserts, "[b]ecause of the false complaints, racist remarks and improper

---

"severe or pervasive" standard. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 270 (2001).

14

Corrective Action Reviews, [he] was continually subjected to a hostile environment." (Id.)

Viewing the facts and related inferences in a light most favorable to plaintiff, the court finds that there remain in issue genuine material facts which would allow a jury to find that plaintiff was subjected to a hostile work environment. Defendant's motion for summary judgment on this count is denied.

### C. Constructive Discharge

According to the Third Circuit, in analyzing whether an adverse employment action has occurred in a constructive discharge case, "a court must determine 'whether a reasonable jury could find that the [employer] permitted conditions so unpleasant or difficult that a reasonable person would have felt compelled to resign.'" Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (alteration in original) (citation omitted). Mere "stressful and frustrating" conduct "would not compel a reasonable person to resign." Id. at 169.

Plaintiff points to the Delaware Department of Labor's finding that he was "regularly scrutinized more closely than other employees, and suffered unreasonable disciplinary actions and intentionally kept from obtaining more hours, moving up to a management position and from transferring to another store." (D.I. 48 at 15-16 (citing D.I. 49 at PA-0204)) Plaintiff likewise asserts that he was "driven out of his job by a two year

15

history of discriminatory treatment," and that this is sufficient to make a prima facie showing of constructive discharge. (Id. at 26-27)

The record demonstrates the existence of genuine issues of material fact. On the one hand, plaintiff repeatedly requested (and was denied) promotion to full-time status and a management position, as well as a transfer to another store. On the other hand, there is evidence demonstrating that plaintiff's opportunities for advancement were limited so long as he remained a part-time employee.[10] Indeed, plaintiff was offered a full-time position, but left defendant's employ instead because the offer did not include a promotion to PSM.

Viewing the facts and inferences in a light most favorable to plaintiff, it is possible that defendant's repeated denial of plaintiff's requests for transfer and promotion amounted to more than mere "stressful and frustrating conduct." Duffy, 265 F.3d at 169. Therefore, defendant's motion for summary judgment is denied as to this count.

---

[10]See D.I. 46 at A047 ("[Plaintiff] was not eligible for a [PSM position] because he would have to be full-time to become a [PSM]. You don't go from part-time to [PSM]. You have to actually become full-time, have that, get your knowledge and then you would move up to PSM if your store could have it or allow it.").

16

**D. Retaliation**

The United States Supreme Court recently stated that "Title VII's substantive provision and its anti-retaliation provision are not coterminous. The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." Burlington N. & Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414 (2006). Moreover,

> [t]he anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . . In [the Court's] view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (quoting Washington v. Ill. Dep't of Revenue, 420 F.3d 658, 662 (7th Cir. 2005)).

Id. at 2414-15. "[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." Id. at 2416.

Plaintiff's charge of retaliation is based on the complaints made against him by his coworkers (which, he believes, created a "hostile work environment") and defendant's failure to promote him to a full-time PSM position. (D.I. 48 at 21-24) He believes that he was unfairly given poor performance reviews and multiple CARs because of his racial discrimination complaints. (Id. at 22-23)

17

In a letter to the Delaware Department of Labor, Shane Treesh wrote that "[s]ince I was hired at Autozone (Store 1157) [plaintiff] has never [been] given a chance by any Autozone Manager or District Manager to grow with the company or be promoted." (D.I. 49 at PA-0196) According to Treesh, Leon Bynum, the store manager, told him that "he would like to get rid of [plaintiff] (as in the way of a store transfer) but that no other store manager would take him. This was because he was labeled as a troublemaker" due to his racial discrimination complaint. (Id. at PA-0197) Bynum himself stated that plaintiff was management material but, despite his suggestions that his superiors make plaintiff a full-time employee, "[n]o one would hear of this." (Id. at PA-0200)

Taking the facts and inferences in a light most favorable to plaintiff, the court finds that, while defendant has identified legitimate, non-discriminatory reasons for its actions, genuine issues of material fact which could allow a jury to find defendant's race-neutral explanations pretextual still remain. Consequently, defendant's motion for summary judgment is denied with respect to plaintiff's retaliation claim.

## V. CONCLUSION

Based on the analysis above, plaintiff's motion for summary judgment (D.I. 47) is denied. Defendant's motion for summary judgment (D.I. 43) is granted in part (as to plaintiff's claim of

18

differential treatment through failure to promote) and denied in part (with regard to the charges of hostile work environment, constructive discharge, and retaliation).  An appropriate order shall issue.