IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELVERT WASHINGTON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-320 (SLR) |
| | ) |
| AUTOZONERS, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION IN LIMINE TO PRECLUDE ANY REFERENCE TO PLAINTIFF'S 1983 COURT MARTIAL AND PLAINTIFF'S 1984 DISCHARGE**

PHILLIPS, GOLDMAN & SPENCE, PA
Joseph J. Farnan, III (Bar No. 3945)
1200 N. Broom St.
Wilmington, DE 19806
TEL: (302) 655-4200
jjf@pgslaw.com

and

Thomas J. Reed (admitted *Pro Hac Vice*)
Widener University School of Law
Delaware Volunteer Legal Services, Inc.
Veterans Assistance Program
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474

DATE:   January 23, 2008

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| TABLE OF CITATIONS | ii. |
| STATEMENT OF THE NATURE AND STATE OF THE PROCEEDINGS | 1 |
| STATEMENT OF THE ISSUES | 2 |
| FACTS | 2 |
| ARGUMENT | |
| I.   IS PLAINTIFF'S 1983 COURT MARTIAL DECISION INADMISSIBLE TO IMPEACH HIS CREDIBILITY? | 3 |
| II.  IS PLAINTIFF'S 1983 DISCHARGE INADMISSIBLE TO IMPEACH HIS CREDIBILITY? | 8 |
| III. ARE THE UNDERLYING FACTS OF THE 1983 COURT MARTIAL INADMISSIBLE TO IMPEACH PLAINTIFF'S CREDIBILITY? | 9 |
| IV.  ARE THE 1983 COURT MARTIAL DECISION, THE 1984 DISCHARGE AND ANY UNDERLYING FACTS RELATING TO THEM INADMISSIBLE ON ANY SUBSTANTIVE ISSUE? | 9 |
| CONCLUSION | 10 |

# TABLE OF CONTENTS

PAGE

*Erving v. State*, 116 N.W.2d 7 (Neb. 1962) ................................. 3

*Jordan v. State*, 141 Ark. 504, 217 S.W. 788 ............................. 3-4

*Knowles v. Panopoulos*, 363 N.E.2d 805 (Ill. 1977) ........................ 3

*Matzenbaugh v. People*, 62 N.E. 546 (Ill. 1901) ........................... 3

*Nelson v. State*, 44 So.2d 802 (Ala. App. 1950) ........................... 3

*People v. Helm*, 237 N.E.2d (Ill. 1968) ................................... 3

*United States v. Green*, 648 F.2d 587 (9th Cir. 1981) ..................... 8

*United States v. Weaver*, 1 M.J. 111 n. 6 (C.M.A. 1975) ................... 5

## OTHER CITATIONS:

10 U.S.C. § 819 ............................................................ 7

10 U.S.C. § 856. Art. 56 ................................................... 5

Federal Rule of Evidence 404(a) ............................................ 9

Federal Rule of Evidence 405 ............................................... 9

Federal Rule of Evidence 608(a) ............................................ 9

Federal Rule of Evidence 609 ......................................... *passim*

Manual for Courts Martial (1969) ........................................... 6

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Melvert Washington, Jr., the Plaintiff, filed an employment discrimination complaint with the Delaware Department of Labor on May 29, 2002. He alleged that Autozoners, Inc., the Defendant, intentionally discriminated against him on account of his race by denying him the opportunity to take a full-time position with Defendant and to be promoted to Parts Service Manager. He contended he was qualified for the position but white employees with less experience and education were promoted over him. The Department of Labor found probable cause to believe a violation had occurred on May 31, 2003. The determination of the Department of Labor was forwarded to the Equal Employment Opportunity Commission who issued a Notice of Right to Sue letter on February 26, 2004.

Washington filed his complaint in this Court in three counts on May 19, 2004. Count I alleged that Defendant had subjected Washington to differential treatment by failing to promote him due to his race. Count II alleged that Washington was constructively discharged because of the hostile work environment countenanced by Defendant. Count III alleged that Defendant retaliated against Washington because he made a complaint about racial discrimination against his store manager, Ralph Findle.

After the close of discovery, Defendant moved for summary judgment on December 21, 2005. Plaintiff cross-moved for summary judgment on January 5, 2006. The Court issued its order on summary judgment on September 22, 2006. The Court granted defendant's summary judgment motion with respect to Count I of plaintiff's complaint alleging differential treatment and failure to promote. It denied summary judgment with respect to Counts II and III of the complaint.

The final pre-trial conference in this matter is scheduled for February 6, 2008. This is Plaintiff's Opening Brief in support of his motion in limine to preclude any use of his 1983 Court Martial and his 1984 discharge for impeachment or any other purpose.

## STATEMENT OF THE ISSUES

I. Is Plaintiff's 1983 Court Martial Decision Inadmissible to Impeach his Credibility?

II. Is Plaintiff's 1984 Discharge Inadmissible to Impeach his Credibility?

III. Are the Underlying Facts of the 1983 Court Martial Inadmissible to Impeach Plaintiff's Credibility?

IV. Are the 1983 Court Martial Decision, the 1984 Discharge and any Underlying Facts relating to Them Inadmissible on Any Substantive Issue?

## FACTS

On January 10, 1983, Staff Sergeant Melvert Washington, Jr., stationed at RAF Aulconbury, UK, was charged with violation of two counts of Art. 134 UCMJ:

    a. Use of a Controlled Substance; and

    b. Solicit to Transfer a Controlled substance.

On January 13, 1983, a Special Court Martial was convened by Col. James M. Rhodes, Jr., Commanding Officer 10th Combat Support Group, 436th Air Base Group. The Court Martial dismissed Count I (Using Controlled Substance) but found that Washington committed the act charged in Count II (Soliciting Drugs) on January 26, 1983. It sentenced Washington to be discharged with a bad conduct discharge, and reduced to the grade of E-1. A copy of Special Court Martial Order No. 6 dated March 24, 1983 is attached as Exhibit A.

2

On February 15,1984, Washington was discharged from the U.S. Air Force. A copy of Form DD-214 is attached as Exhibit B.

## ARGUMENT

I. **Is Plaintiff's 1983 Court Martial Decision Inadmissible to Impeach His Credibility?**

  A. <u>Military Offenses in General</u>

The Federal Rules of Evidence make no express provisions for impeaching a witness by proof of a Court Martial decision. Rule 609 prescribes the criteria for use of a prior criminal conviction to impeach a witness' credibility. No federal decision on the use of a Court Martial decision to impeach was located after diligent research.

There is some guidance from case law on this matter from state courts. *People v. Helm*, 237 N.E.2d 433 (Ill. 1968) held that a Court Martial decision that found the accused guilty of robbery was an "infamous crime" under Illinois law. The same court ruled that admission of the accused's Court Martial decision for simple assault was not an "infamous crime" and inadmissible. (*Id.* at 436). In 1968, Illinois law defined an "infamous crime" as a crime that was deemed "infamous at common law." *Matzenbaugh v. People*, 62 N.E. 546 (Ill 1901). Illinois later adopted Federal Rule of Evidence 609 as a judicial standard for impeachment, limiting crimes eligible for impeachment to crimes for which the punishment was at least one year's incarceration. *Knowles v. Panopoulos*, 363 N.E.2d 805, 807 (Ill. 1977); <u>see also</u> *Erving v. State,* 116 N.W.2d 7 (Neb. 1962) (allowing impeachment for felony defined as "such an offense as may be punished with death or imprisonment in the penitentiary"); *Nelson v. State*, 44 So.2d 802 (Ala. App. 1950) (allowing impeachment for any felony or misdemeanor involving moral turpitude); *Jordan v. State*, 141 Ark. 504, 217 S.W. 788. (Allowing impeachment for any felony

3

or misdemeanor involving moral turpitude). Therefore, the Court should apply Rule 609(a) and (b) to evaluate use of Court Martial decisions to impeach credibility.

B. Rule 609(a)(2)

Rule 609(a)(2) states that:

> (2) evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

By inspection of the charge sheet, one quickly ascertains that the elements of the charge and specification under Article 134 that Washington was found to have committed do not contain any elements of deceit, deception or lying. A copy of the original charge sheet setting out the charges and specifications is attached as Exhibit C.

Additionally, Article 134 the General Article of the Uniform Code of Military Justice, reads as follows:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

It is the "catch-all" article of the Uniform Code of Military Justice that is used to try a service member for offenses not included anywhere else in the punitive articles. If a service-member is found to have committed a breach of this article, the facts of the breach determine its availability to impeach the service member in another military or civil case. The former U.S. Court of Military Appeals provides guidance on determining whether an act charged under the Article 134 is classifiable as a crime of dishonesty or not:

4

> Acts of perjury, subornation of perjury, false statement, or criminal fraud, embezzlement, or false pretense are, for example, generally regarded as conduct reflecting adversely on an accused's honesty and integrity. Acts of violence or crimes purely military in nature, on the other hand, generally have little or no direct bearing on honesty and integrity.

*United States v. Weaver*, 1 M.J. 111, 118 n.6 (C.M.A. 1975). Clearly, the charge Washington was found to have committed does not involve an act of dishonest or false statement.

   C. Rule 609(a)(1)

Rule 609(a)(1) permits impeachment by proof of a prior offense that is not a crime or deceit under certain circumstances:

> (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused.

Military Rule of Evidence 609 is also helpful. It states that in courts-martial, a prior conviction is admissible if it:

> (1) was punishable by death, dishonorable discharge, or imprisonment in excess of one year under the law under which the witness was convicted, and the military judge determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused, or
>
> (2) involved dishonesty or false statement, regardless of the punishment. In determining whether a crime tried by court-martial was punishable by death, dishonorable discharge, or imprisonment in excess of one year, the maximum punishment prescribed by the President under Article 56 [1] at the time of the conviction applies without regard to whether the case was tried by general, special, or summary court-martial.

Mil. R. Evid 609(a). The table of maximum punishments is the primary reference for

---

[1] 10 U.S.C. § 856. Art. 56. Maximum limits
The punishment which a court-martial may direct for an offense may not exceed such limits as the President may prescribe for that offense.

5

punishment for military offenses. The relevant table in 1983 was Ch. 27 of the 1969 edition of the <u>Manual for Courts Martial</u>. A copy is attached as Exhibit D. The table does not list "soliciting another for drugs" under Article 134. The closest analogous offense may be "soliciting another to commit a crime" which prescribes according to note 7 that the person found to have solicited another to commit a crime may be punished up to the maximum punishment prescribed for the offense solicited. <u>Manual for Courts Martial</u> (1969), Ch. 27 L, 1969 CH, XXV Punishments (Revised Edition)

The problem with using the Table of Maximum Punishments as a guideline is in defining just what offense Washington wanted another to commit: there was no proof that Washington ever offered money to buy hashish[2] from anyone. Therefore, Washington at worst was requesting a "smoke" from another service member, i.e., simple possession of marijuana of less than 30 grams. The table of maximum punishments in 1983 did not include a dishonorable discharge for simple possession of marijuana. <u>See</u> Table of Maximum Punishment Appendix Attached as Exhibit D.

Since Washington could not have been confined for more than one year by a Special Court

---

[2] "Hashish" is a preparation of cannabis composed of the compressed trichomes collected from the cannabis plant. It contains the same active ingredients but in higher concentrations than other parts of the plant such as the buds or the leaves and produces identical psychoactive effects and is generally prohibited to the same extent.
Hashish is often a solid or paste-like substance, of varying hardness and pliability, and will soften under heat. Its color can vary from green, black, reddish brown, or most commonly light to dark brown. It is consumed in much the same way as cannabis buds, often being smoked in joints mixed with tobacco or cannabis buds, or in smoking pipes, or vaporized. It can also be eaten alone (pure hash is described as having a peppery flavor) or used as an ingredient (baked into cookies or cakes, or added to stews and chocolate). Sale of Hashish is illegal in most parts of the world. Wikipedia http://en.wikipedia.org/wiki/Hashish downloaded Jan. 19 2008.

Martial in any case, 10 U.S.C. § 819 (Art. 19 UCMJ) the offense that the Court Martial determined was committed amounted to the equivalent of a civilian misdemeanor.

Should the Court disagree with this assessment and find that Washington's offense was punishable at the worst by a dishonorable discharge by analogy to possession with intent to sell, the probative value of that offense with respect to Washington's credibility is nil.

D. Rule 609(b)

Assuming, but not deciding that the 1983 Court Martial decision somehow met the criteria for an offense punishable by more than one year, the 1983 conviction is stale. Its probative value with respect to Washington's truthfulness is low and the potential for prejudice is high. It should not be admitted under Rule 609(b).

Plaintiff concedes that Defendant has made adequate notice of its intent to use the 1983 Court Martial decision to impeach the Plaintiff and for other purposes. Rule 609(b) discourages the use of stale convictions, such as this 25 year old Court Martial decision for impeachment purposes and provides:

> Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

Id. The fact that Washington may have asked another service member for hashish in 1983 has little to do with his credibility in 2008. The probative value of the Court Martial decision is dependent on an inference of bad moral character arising from the prior conviction, bad moral

7

character with respect to substance abuse twenty- five years ago. As stated above, Plaintiff was not convicted of a crime of deceit or dishonesty. The potential prejudice that will be provoked among the jury by introduction of this stale 1983 decision greatly exceeds the low probative value of the 1983 Court Martial decision. The jury will draw an impermissible inference: because Washington was convicted of a drug-related offense 25 years ago, his claim for violation of his civil rights by Defendant should be ignored because he doesn't deserve to be compensated due to his military Court Martial.

The Court should conclude that the 1983 Court Martial conviction should be excluded from voir dire questions put to the jury, from any opening statement, any cross-examination of Washington or any other witness, or closing arguments.

## II. Is Plaintiff's 1983 Discharge Inadmissible to Impeach his Credibility?

The character of Washington's discharge is not admissible, in its own right, without proof of a Court Martial decision ordering the discharge. It is not the kind of bad act contemplated by Rule 608(b) Fed. R. Evid. that can be brought out on cross examination of Washington. Rule 608(b) bars introduction of Washington's DD-214 showing the Bad Conduct Discharge to prove that he had a less than honorable discharge. Diligent research showed no Federal or state cases permitting proof of a less-than-honorable discharge to impeach the credibility of a witness. It is not admissible to impeach any other witness, for that matter. *See, e.g., United States v. Green*, 648 F.2d 587, 589-90 (9th Cir. 1981) (holding witness could not be impeached by establishing defendant used LSD from collateral source when crime charged in indictment did not involve possession or sale of LSD).

8

### III. Are the Underlying Facts of the 1983 Court Martial Inadmissible to Impeach Plaintiff's Credibility?

Rule 608(a) permits a cross-examiner to cross-examine a witness about bad acts that did not amount to criminal convictions that tend to show lack of credibility. In this case, Defendant may want to cross-examine Washington or some other Plaintiff's witness about Washington's drug use, or about any solicitation of hashish from any fellow service member. These questions relate to incidents that occurred in 1983, 25 years ago. They are so remote as to be completely without any probative value whatsoever as to credibility today. See, e.g., Rule 403 Fed. R. Evid. The 1983 incident is collateral to any issue in this case and can only serve to antagonize and enflame the jury against Washington.

### IV. Are the 1983 Court Martial Decision, the 1984 Discharge and any Underlying Facts relating to Them Inadmissible on Any Substantive Issue?

The Plaintiff's good character is not at issue in this complaint. See Rule 404(a) and Rule 405 Fed. R. Evid. Therefore, Rule 405 (b) may not be employed to sneak in evidence of Washington's Court Martial and Bad Conduct Discharge on the pretext that his good character is an issue.

Further, direct or cross examination of plaintiff's or defendant's witness on whether or not they were aware that Washington had been Court Martialed and had been dismissed from the service with a Bad Conduct Discharge is irrelevant unless Plaintiff should call a character witness which Plaintiff will not do.

Finally, Washington's claim seeks damages for lost income and benefits due to several acts of discrimination committed against him. He seeks damages for emotional distress, not for any

9

damage to his reputation in Kent County, Delaware. Therefore, proof of his Court Martial and Bad Conduct discharge is irrelevant to the issue of damages.

## CONCLUSION

There is no basis for admission of the Court Martial decision nor the Bad Conduct Discharge on any substantive issue in this case. Therefore, the Court should grant Plaintiff's Motion in Limine excluding any mention of Washington's 1983 Court Martial and his 1984 Bad Conduct Discharge.

        Respectfully submitted,

        PHILLIPS, GOLDMAN & SPENCE, P.A.

        */s/ Joseph J. Farnan, III*
        Joseph J. Farnan, III (#3945)
        1200 N. Broom St.
        Wilmington, DE 19806
        TEL: (302) 655-4200

        and

        Thomas J. Reed (admitted *Pro Hac Vice*)
        Widener University School of Law
        Delaware Volunteer Legal Services, Inc.
        Veterans Assistance Program
        4601 Concord Pike
        P.O. Box 7474
        Wilmington, DE 19803-7474

DATED: January 23, 2008