# EXHIBIT D
# PART 1

# Plaintiff's Exh. 13

TO: Whom it may concern:

Subject: Statement of Witness

Date: May 5th 2000

My name is Mr. Chuck Turner and I am writing the following statement of my own free will. I have not been promised anything in return.

During the month of April 2000 around the first week of April 2000 I was shopping in the Smyrna Delaware Autozone Store shopping for Auto Supplies. At that time I observed a black male employee go to the back of the store. Shortly afterwards, a white male wearing a white shirt stopped what he was doing behind the counter and also went into the back of the store. Afterwards, I overheard loud shouting by this individual saying, " There it is right there, in front of your eyes, are you blind, A you stupid? The other individual said, "I didn't see it ".

I was listening as the incident occurred while I stood near the steering wheels and overheard the verbal abuse and shouting toward this employee.

On April 14 , 2000 10 AM , again I came into Autozone to purchase some Anti-freeze and the same black male employee with the name Mel. On his name-tag was working the last cash register on the right as you exit the store. As I was paying for the Anti-freeze, the same white male concerning the previous mentioned incident said, " I'm going out for a smoke". At that time I asked the black male how's it like working for that guy? . Why do you asked said Mel ? . I told Mel. that I overheard the verbal abuse and yelling from his boss earlier this month, and if he needed someone to be a witness to his bosses behavior, that I would write a statement to that effect . It was at this time I wrote my name and telephone number on a piece of paper and advised Mel. to call me if he needed a statement.

I personally have had to work for employers that mistreat their employees and I don't believe its right. I hope Mel. can use this statement in his efforts to bring attention to the verbal abuse and mistreatment he received from his boss.

Please feel free to contact me if you have any questions.

Mr. Chuck Tucker
HP: 302 653-3553
BUS: 302 655-1364 after 1 PM
674 4342

# Plaintiff's Exh. 14

1st Request

| | |
|---|---|
| MAILING OFFICE—Postmark if Return Receipt was paid for at time of mailing. | CUSTOMER: Complete unshaded area (Items 1-6) and enter your name and address on the reverse. |

□ 1.  Return receipt WAS NOT paid for at time of mailing.

☑ 2a. Return receipt WAS paid for at time of mailing.

□ 2b. Return receipt showing addressee's address WAS paid for at time of mailing.

3. Article Addressed To: Attn:
Alison Smith
Autozone Relations Dept.
Dept 8029
123 South ST
Memphis Tenn. 38103

Attach fee as shown in DMM if return receipt was not paid for at time of mailing.

4. Article Number: EK06379259US

| 5. Mailing Date | 6. Type of Service |
|---|---|
| 5-5-00 | □ COD  □ Certified  □ Numbered Insured  □ Return Receipt for Merchandise  ☑ Express Mail  □ Registered |

7. Delivery Office Postmark

8. Delivered to the following individual, company or organization: Autozone

9. Delivery Date: 5-6-00

10. Address (Complete only if item 2b is checked)

11. Postal Records Show:
☑ Delivery was made
☑ Delivery was not

12. Clerk's Initials:

PS Form **3811-A**, December 1994          Domestic Return Receipt *(After Mailing)*

This the 1st return Request I requested

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

● Print name and address of delivery office in this box ●

**POSTMASTER**

MEMPHIS TN    38103

ANITA W. SYKES
CLAIMS & INQUIRY
U.S. POST OFFICE
DOVER, DE 19901-9991

734-5821

This is the
Name of lady
that helped
Me Inquire
why my
Return receit
was coming Back
to Me

MAILING OFFICE: Postmark if Return Receipt was paid for at time of mailing.

DOVER DE 19901
JUN 27 2000
USPS

Attach fee as shown in DMM if return receipt was not paid for at time of mailing.

2nd Request

CUSTOMER: Complete unshaded area (items 1-6) and enter your name and address on the reverse.
- [ ] 1. Return receipt WAS NOT paid for at time of mailing.
- [X] 2a. Return receipt WAS paid for at time of mailing.
- [ ] 2b. Return receipt showing addressee's address WAS paid for at time of mailing.

3. Article Addressed To:

ALISON SMITH
AUTOZONE RELATIONS DEPT.
DEPT 8029
123 SOUTH FRONT STREET
MEMPHIS TN    38103

4. Article Number

EK063992599US

5. Mailing Date
MAy 5, 2000

6. Type of Service
- [ ] COD
- [ ] Certified
- [ ] Numbered Insured
- [ ] Return Receipt for Merchandise
- [X] Express Mail
- [ ] Registered

7. Delivery Office: Postmark

8. Delivered to the following individual, company or organization:

Delivery Date

10. Address (Complete only if item 2b is checked.)

11. Postal Records Show:
- [ ] Delivery was made
- [ ] Delivery was not made

12. Delivery Address

PS Form **3811-A,** December 1994            Domestic Return Receipt *(After Mailing)*



MAILING OFFICE: Postmark if Return Receipt was paid for at time of mailing.

Attach fee as shown in DMM if return receipt was not paid for at time of mailing.

4. Article Number

E.{063992599US

CUSTOMER: Complete unshaded area (Items 1-6) and enter your name and address on the reverse.

☐ 1. Return receipt WAS NOT paid for at time of mailing.

☒ 2a. Return receipt WAS paid for at time of mailing.

☐ 2b. Return receipt showing addressee's address WAS paid for at time of mailing.

3. Article Addressed To:

ALISON SMITH
AUTOZONE RELATIONS DEPT.
DEPT 8029
123 SOUTH FRONT STREET
MEMPHIS TN   38103

| 5. Mailing Date | 6. Type of Service | | | | | | |
|---|---|---|---|---|---|---|---|
| MAy 5, 2000 | ☐ COD | ☐ Certified | ☐ Numbered Insured | ☐ | Return Receipt for Merchandise | ☒ Express Mail | ☐ Registered |

7. Delivery Office

8. Delivered to the following individual, company or organization

9. Delivery Date

10. Addressee (Complete only if Item 2b is Checked)

11. Postal Records Show:

12. Delivery was made

13. Delivery was not made

12. Clerk's Initials

PS Form 3811-A, December 1994          Domestic Return Receipt *(After Mailing)*

# Plaintiff's Exh. 15

# MATTLEMAN, WEINROTH & MILLER

## A PROFESSIONAL CORPORATION
### COUNSELLORS AT LAW

JOHN C. MILLER, III

NATALE G. SAVASTA ♦
STEVEN H. FINKELSTEIN♣
DELIA A. CLARK ¢
PAUL D. AARONSON
MICHAEL J. MILSTEAD +
HELENE B. RAUSH
ERIC L. METH
SHARON ORAS MORGAN
ADAM R. ELGART♠
ELISE LAZARUS
MICHAEL J. KENNEDY
LYNN M. BOWLBY♣
JOHN P. CONNORS
PINA S. WERTZBERGER
MELANIE J. THOMPSON¢
DAN C. PELLETIER+
MARIA A. DANIEL

MEMBERS OF NJ & PA BARS
♦ NJ & FL BARS
* PA BAR ONLY
+ NJ BAR ONLY
♠ PA & DE BARS
¢ NJ, PA & DE BARS
♣ NJ & NY BARS
¢ DE BAR ONLY

OF COUNSEL

GEORGE J. WEINROTH
HERMAN MATTLEMAN*
DOLORES M. BOIAZI
JOHN G. MULFORD♦
WILLIAM H. KENNEY+
GERALD J. PROFFITT♠

PLEASE REPLY TO:

OUR FILE NO.:
Delaware

34225

August 1, 2000

Alison Smith
Director of Human Relations
Department 8029
Auto Zone
123 S. Front Street
Memphis, TN 38103

RE:    Melvert Washington, Jr.
       319 Billy Mitchell Lane, Apt. 308D
       Dover, DE 19901

Dear Ms. Smith:

We have been consulted by Melvert Washington, Jr., who is a part-time employee at your Smyrna, Delaware Auto Zone store regarding alleged unfair treatment and harassment he has sustained in the work place from his immediate supervisor. The Auto Zone store number is 1157.

Mr. Washington informs us that he sent to you by registered letter a grievance letter on May 5, 2000 and attached to that letter a witness statement which clearly indicates that the harassment by Mr. Washington's immediate supervisor.

We are informed by Mr. Washington that he has not received any reply to his grievance letter or been contacted regarding same.

We are informed by Mr. Washington that he has been called various names by his supervisor including "boy". This comment has direct racial implications as you know, Mr. Washington is an African-American.

401 ROUTE 70 EAST
CHERRY HILL, NEW JERSEY 08034
TEL: (856) 429-5507
FAX: (856) 429-9036

LAND TITLE BUILDING SUITE 2226
BROAD & CHESTNUT STREETS
PHILADELPHIA, PENNSYLVANIA 19110
TEL: (215) 923-2225
FAX: (215) 567-4151

300 CONTINENTAL DRIVE, SUITE 211
NEWARK, DELAWARE 19713
TEL: (302) 731-8349
FAX: (302) 731-8753

1135 BROAD STREET, SUITE 207
CLIFTON, NEW JERSEY 07013
TEL: (973) 365-6140
FAX: (973) 365-6143

RE:   Melvert Washington, Jr.
August 1, 2000
Page 2

     I have been informed that you have not apparently received Mr. Washington's grievance letter nor the witness statement attached to the letter which verifies the harassing treatment received by Mr. Washington. I am also enclosing a letter from Mr. Washington to the area supervisor.

     The conduct alleged by Mr. Washington, if true, is a violation of the Civil Rights Act of 1970, 42 U.S.C. §1981 and Title 7 of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) to §2000(e)(17) which forbids discrimination or harassment on the basis of sex, race, religion, color or national origin.

     I am writing this letter on behalf of Mr. Washington to demand that an investigation into the harassment of Mr. Washington be taken place by the human resources department and following that investigation all appropriate action be taken.

     As you may or may not know, Mr. Washington has requested a transfer to another Auto Zone store and the transfer, for which reasons which are inexplicable, has not been authorized.

     If you have any questions regarding this letter, please direct your response to Mr. Washington at the address above or at 302-521-8407.

Sincerely,

John G. Mulford
For the Firm

JGM/kah

Enclosures

cc:  Melvert Washington, Jr.

# Plaintiff's Exh. 16



P. O. Box 2198, Memphis, TN 38101-9642 / (901) 495-6500

August 2, 2000

Via Fax No. (302) 731-8753

John G. Mulford, Esq .
Mattleman, Weinroth & Miller
200 Continental Drive, Suite 211
Newark, DE  19713

         Re:   Melvert Washington, Jr.

Dear Mr. Mulford:

Thank you for your letter of August 1st regarding the alleged unfair treatment and harassment received by Mr. Washington.  We take all such allegations seriously and will investigate the matters raised by Mr. Washington in his letter.  Once the investigation has been completed, appropriate action will be taken.

Please direct any future correspondence regarding this matter to me at:

         AutoZone, Inc.
         Dept. 8029
         123 S. Front Street
         Memphis, TN  38103-3607
         (901) 495-7327

Very truly yours,

Timothy P. Harrison
Staff Attorney
AutoZoner Relations

THE BEST PARTS IN AUTO PARTS

# Plaintiff's Exh. 17

I, Ralph S. Findle JR.    D.O.B   1-46 AGE 54  SS#_____

ADDRESS  34 Candlewick Ct. New Castle, De. 19720

HONE # (302) 322-9619   HEREBY GIVE THIS VOLUNTARY STATEMENT TO  Ron Wertz

Regional Loss Prevention Manager  AT  AutoZone Store #1157

ON  8/4/2000 at 6:30 AM/PM.  THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. ( RJF )

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by:  Ralph Findle    .

**Q What is your position with AutoZone?**

A.  Manager of Store #1157

**Q. What is your date of hire?**

A.  May 18th 1998

Q Have you seen a letter from Mel Washington dated 4/29/00 in which several issues were raised?   Y

A. Yes

Q Who showed you the letter?

A. D.M. Dennis Carruth

Q What happened next?

A. I read it and handed back to Dennis. I said it was B.S. and out of context

Q Did Denny Caruth go over the letter line by line?

A. No.

Q What Did Caruth say to you?

A. Said he thought so to but he had to send it in.

Q Do you know if he responded back to Mel?

A. No, I don't know.

SIGNED _Ralph Findle Jr._    TIME 6:50 AM/PM. DATE: 8-4-2000

WITNESS _Ronald Wertz_    TIME 6:50 AM/PM DATE: 8/4/00    Pg 1 of 15

D-00357
Washington v. AutoZone

EXHIBIT
6

Q. Were you late one day and Mel called your D.M.?

A. I was late but I believe the Dover store called

Q. Did you say anything to Mel about calling the Dover store?

A. Yes - I asked him why - because I would be here sometime.

Q. Did you hold this action against Mel in the future?

A. No.

Q. Please describe what happened concerning the overstock and Mel?

A. I had given Mel the overstock report to do. That morning. He had not returned in about 20 min. but I went back to get figures for a planogram. I saw him standing there looking at overstock I asked him what he was doing he said he couldn't find something - I looked and said its right in front of you are you Blind.

Q. Did the conversation get loud?

A. Yes. I guess it did.

Q. Did you refer to him as stupid?

A. No. Never.

Q. Please describe what happened one morning when you + Tom were standing outside before opening?

A. Tommy & I were finishing a cigarette when Mel walked up and pulled on the front doors. I said can't you see the door is locked Mel said you just like messing with me, I said yes I guess I do. (Kidding Lg)

SIGNED Ralph Ewell      TIME 7:15 AM/PM. DATE: 8-4-2000

WITNESS _____      TIME 7:15 AM/PM DATE: 8/4/00      Pg 2 of 5

Q Have you ever referred to Tom Sheehan as Hoofey?

A. I might have but it was only in a kidding way not a serious way.

Q Have you ever called Mel a "Little Boy"?

A. This was over phone calls Mel was making one morning. He had made about 4 phone calls and was ignoring customers I asked him if he had any more phone calls to make, He ignored me and said nothing. I asked him about 3 or 4 more times the same question. He said nothing and walked toward the back of the store. That's when I said OH are you going to act like a Little Boy and pout all day.

Q Did this upset Mel?

A. Yes - But - I believe he took it the wrong way. I did not mean it as a racial comment.

Q Did Antonia Farley (DM) ever talk to you about a customer complaining you wouldn't wait on them?

A. No, I don't recall hearing this from anyone.

Q Please tell me about the floor incident and Antonio?

A. Antonio came in and took me outside and reamed my ass about being late and the floors and said he wanted them done by Thurs. - This was a Monday, He left, when I came in I said I didn't give a fuck about the floors because we short handed at the time and no way could I do the floors. than.

SIGNED Ralph Biddle    TIME 7 45 AM/PM. DATE: 8-4-2000

WITNESS Arnold West    TIME 7 45 AM/PM DATE: 8/4/00    Pg 3 of 8

Q Were there any Customers Present?

A. NO

Q Did DM Denny Carruth go over Mel's + other people's reviews with you?

A. YES

Q Did he make any changes to Mel's?

A. YES  So MEL could get A better Raise.

Q So, except for one area, your DM agreed with the review you gave Mel?

A. YES.

Q Were you fair in your review of Mel?

A. YES - I Feel I WAS very FAIR.

Q Please explain what occurred concerning a starter Incident?

A. MeL did NOT Test A customer's old STARTER. And WAS bring out THE NEW ONE. I walked Up And picked Up STARTER. And Tested iT MeL said he WAS going To Test iT but didn't hAve A chANce, Customer LeFT, MeL said he didn't Like ME butting iN and MAKing him Look Like he didn't know what he WAS doing, He kept oN and ON And wouldn't Let ME SAY something I Told him To shut Up And he kept oN I said IF You keep iT Up just Punch Out And Go home

Q Were you trying to talk or was he talking over you?

A. HE WAS TALKing over ME

SIGNED _Ralph Puddock_    TIME _8:05_ AM/PM. DATE: _8-4-2000_

WITNESS _Ronald Webb_    TIME _8:05_ AM/PM DATE: _8/4/00_    Pg _4_ of _4_

D-00360
Washington v. AutoZone

Q. Have you ever told Mel "I want 2 weeks notice"?

A. I told him if he didn't like something he was doing he could give his 2 week notice and leave

Q Do you have anything else to add?

A. No.

D-00361
Washington v. AutoZone

SIGNED  Ralph Tindle Jr.    TIME 8:11 AM/PM. DATE: 8-4-2000

WITNESS  [signature]    TIME 8:11 AM/PM DATE: 8/4/00    Pg 5 of 5

# Plaintiff's Exh. 18

I, DENNIS F. CARRUTH          D.O.B. _____  147 AGE 53 SS# _____

ADDRESS  112 BOHEMIAN DRIVE

PHONE # ( 302 ) 378-7856          HEREBY GIVE THIS VOLUNTARY STATEMENT TO   Ron Wertz

Regional Loss Prevention Manager   AT   Store No.  1157; Smyrna, Delaware

ON  8/4/00  at  4:00 AM/PM. THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. (_____)

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: Dennis Carruth, District Manager

**Q What is your position with AutoZone?**

A.  I Am District Manager For The Northern Delaware Stores

**Q. What is your date of hire?**

A.  Jan 28, 1998

Q  Did you meet with Melvin Washington on 5/3/00 ?

A.  Yes, I Did

Q  Please explain what took place as a result of that meeting ?

A.  Mel Asked To Meet With Me As A Result Of His Performance Review. He Was Upset With the Performance Rating And Wanted To Tell Me His Side Of This Rating. Mel Produced A Letter Detailing All Of his # Actions for Response To Ralph's Review Of His Performance. We Went Over All The Points In The Letter And I Told Him That I Would Talk To Ralph About These Points. The Only Area I Disagreed About Was Mel's Initiative To Do Assigned Work And Waiting On Customers. I, Then, Went Over The Letter With Ralph In His Office.

Q  What was Ralph's response to the accusations in the letter ?

Ralph Denied The Verbal Abuse Part Of The Letter And Told Me He Treated Mel The Same Way He Treated All Of His Other

SIGNED _____          TIME 4:02 AM/PM. DATE: 8/4/00

WITNESS _____     TIME 4:02 AM/PM. DATE: 8/4/00          Pg 1 of 3

EXHIBIT
10

EMPLOYEES. I TOLD HIM THAT WE NEEDED TO WORK ALL THE

PROBLEMS WITH MEL OUT BETWEEN THE THREE OF US.

Q Did you go over all of the issues in the letter?

A. RALPH AND I WENT OVER THE LETTER PARAGRAPH BY PARAGRAPH

AND I GOT RALPH'S RESPONSE TO EACH COMPLAINT VERBALLY

Q Did MEL give you a copy of the letter?

A. YES—HE DID GIVE ME A COPY OF THE LETTER AND I BELIEVE

IT IS ATTACHED TO THE BACK OF THE PERFORMANCE

APPRAISAL THAT RALPH DID ON MEL'S PERFORMANCE

REVIEW.

Q What happened to the performance Review from the file?

A. MEL ASKED ME IF I COULD LET HIM TAKE THE PERFORMANCE

APPRAISAL AND GET A COPY MADE OF THE PART OF THE

APPRAISAL THAT I CHANGED FROM A "2" TO A "3."

MEL WAS SUPPOSED TO RETURN IT BACK TO RALPH THE

NEXT DAY BUT RALPH NEVER GOT IT BACK.

Q How did you feel about the scores on Review?

I THOUGHT THE REVIEW OVERALL WAS FAIR AND THAT

MEL'S PERFORMANCE WAS DOCUMENTED CORRECTLY. THE

CHANGE THAT I MADE DID NOT AFFECT ITS OVERALL RATING

Q How many tests (Certification) are part time employees required
to take?

A. PART TIME EMPLOYEES IN THE N.Y. REGION ARE ENCOURAGED TO TAKE

ALL OF THE CERTIFICATION TESTS. PART TIME EMPLOYEES HAVE TO

TAKE THE WITTDL TEST, CASH REGISTER, BEING AN AUTOZONER AND

SHRINKBUSTER TESTS WITHIN THE FIRST 30 DAYS OF

EMPLOYMENT. THERE ARE APPROXIMATELY 15 TESTS TOTAL FOR

AUTOZONERS TO TAKE.

SIGNED _____    TIME 4:35 AM/PM  DATE: 8/4/00

WITNESS _____    TIME 4:25 AM/PM  DATE: 8/4/00    Pg 2 of 3

Q. Did Melvin Washington show you a customer letter concerning Ralphs Treatment?

A. Yes, He Did.

Q. What else did he tell you about the letter?

A. First I noticed that both the initial letter and the customer letter was printed on the same printer and asked him if he had typed this letter for the customer. He responded that he did.

Q. What did Melvin say about a transfer?

A. He had asked me for a transfer to Bear to work part-time and I responded that it would be up to the manager at the Bear store to make that decision.

Q. Does Mel still want to be transferred to Bear #1159?

A. No - He has since asked me to transfer to Dover so that he can get more time on the job. Mel works full-time in Dover and would be more convenient for him. I contacted Antonio Fairley, D.M. for that store, asked if he could take Mel as a part-timer. He told me that at the present time there were no part-time positions available in that store.

Q. When was that conversation with the other D.M.?

A. I talked to Antonio on 7/31/00; Monday.

Q. Did you notify anyone after you received the original letter?

A. No, I did not because the agreement between Mel; Ralph and myself was that we were going to work out the differences.

Q. Did Mel seem to be in agreement with this?

A. Yes - All three of us agreed.

SIGNED _[signature]_     TIME _4_ : _43_ AM/**PM** DATE: _8/14/00_

WITNESS _Ronald Wertz_     TIME _4_ : _43_ AM/**PM** DATE: _8/4/00_     Pg _3_ of _3_

D-00372
Washington v. AutoZone

# Plaintiff's Exh. 19

STATEMENT

I, _Thomas Shehorn_ D.O.B. _165_ AGE _35_ SS# _____

ADDRESS _742 Fox Hole Rd Camden, Wyo. De 19934_

PHONE # (_302_) _492-3127_ HEREBY GIVE THIS VOLUNTARY STATEMENT TO Ron Wertz

_Regional Loss Prevention Manager_ AT _____

ON _8 14 100_ at _5:06_ AM/PM THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. (___)

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: _Thomas Shehorn_.

Q What is your position with AutoZone?

A. _Parts Sales manager._

Q. What is your date of hire? _May 11 - 98_

A. _____

I witness the Ralph and mel was going at each other on about the second week of June. That mel wasn't doing his job and that he went at Brandon on Sunday in the first week in June. Mel still call me on sat. night at or about 11:00 PM. he wanted me to agree with him on the statement about Ralph. Ralph has his good days and he has his Bad days. Ralph is a good man to work under. Ralph needs to show me more on the paper work. Mel needs to quiet lying that he work on saturdays and stop tring to get Ralph in trouble

Q Did Mel have arguments w/ Both Ralph & Brandon Separat

A. Yes

SIGNED _Thomas Shehorn_ TIME _5:19_ AM/PM DATE: _8-4-00_

WITNESS _Amad Alaf_ TIME _5:F_ AM/PM DATE: _8/8/0_

EXHIBIT 7

Q. What did Mel Want you to agree to?

A. That Mel wanted me to write a statement that Ralph called he incomant and he was crazy, but I told him that I was not going to agree with him because i didn't feel that it was my place to do. after this problem he started to Question my probtion as a parts sales mana, he started a argeament with me on Sunday in the first week in June about the lunch

Q. Did you agree with Mels statement about Ralph?

A. No it was not true what he said about Ralph

Q. What do you mean by Ralphs Good day & Bad day?

A. on Ralph good day he comes in with a smile and he kids around with everybody.

on his Bad dayshe comes in with a frown on his face.

Q. Have you ever heard Ralph yell at Mel?

A. No

Q. Have you ever Seen Ralph Treat Mel dipperently then anyoelee?

A. No i have not.

Q. Did you attempt to give Mel a write up for being late & what happened?

A. Yes i have and he disagee said he was not going to sign it.

Q. Do you have anything else to add?

A. No

D-00363
Washington v. AutoZone

SIGNED Thomas Shehorn    TIME 5.42 AM/PM DATE 8-4-00

WITNESS _____    TIME 5.42 AM/PM DATE 8/4/00    Pg 2 of 2

# Plaintiff's Exh. 20

STATEMENT

I, Brandon Diaz  D.O.B. _____ 1 80 AGE 20 SS# _____

ADDRESS 628 Big Woods  Smyrna, DE  19977

PHONE # (302) 653-5275  HEREBY GIVE THIS VOLUNTARY STATEMENT TO  Ron Wertz

_Regional Loss Prevention Manager_ AT 1157

ON 8/9/00 at 9:55 AM/PM. THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. (BD)

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: Brandon Diaz .

**Q What is your position with AutoZone?**

A. PSM

**Q. What is your date of hire?**

A. 4-1-00 rehire

Q Have you ever had any problems working with Ralph?

A. I have never really had any real problems working with Ralph

Q Has he ever yelled at you or raised his voice if you made a mistake?

A. Ralph has never yelled at me. He has raised his voice a little, but only when he's trying to make a point about something that should have been done, or something that we don't agree on, but you have to understand, that is how Ralph is. He isn't being mean or insulting, he just changes the tone of his voice a little, but he's never been so loud that everyone can hear him

Q Has he ever made remarks about something being done wrong was dumb or stupid?

A: Ralph has jokingly said things like "how dumb can you be" but only when he's making a point, and he is JOKING. I know

SIGNED BAD  TIME 10:05 AM/PM. DATE: 8-9-00

WITNESS Ronald Wertz  TIME 10:05 AM/PM DATE: 8/9/00  Pg 1 of 3

D-00364
Washington v. AutoZone

EXHIBIT
8

A: that Ralph does not think I'm dumb, and he knows that I won't be offended in any way. By the same token, I can say things like that to Ralph and he knows I'm joking.

Q Tell me about the conversation you had between Dennis Caruth, Mel & yourself?

A: Well, this whole thing started about two days after my rehire. Mel approached me on a Sunday and asked me if he and I were going to be cool, or if we were going to have problems, to which I replied that I don't have a problem with anyone unless I have good reason to have one. Later, he asked to see me in the office to speak to me (First I should tell you about that morning. I came to work and was about 45 minutes early, when I arrived, I only saw Tommy's car in the parking lot, and upon entering only saw Tommy in the front. I asked him if he was here alone, he said someone was in the back. I walked to the back of the store to get a drink of water, and I heard talking. After a moment I realized it was coming from the bathroom. I listened for a minute and it was Mel having a personal conversation on his cel-phone while on the clock and while Tommy was alone to run the store. Mel had been told before not to bring the cel-phone to work, so I went to the front and told Tommy that he was on the phone.) When Mel and I got into the office, he began asking me if I had heard things about him. I asked what he was talking about and he began telling me not to believe what everyone said about him. I just smiled and said O.K. Then he told me not to laugh about it and accused me of calling him crazy. I told him I never said that and he got in my face pointing his finger. I reminded

SIGNED [signature]    TIME 10 : 30 AM/PM  DATE: 8-9-00

WITNESS [signature]    TIME 10 : 30 AM/PM DATE: 8/9/00    Pg 2 of 3

D-00365
Washington v. AutoZone

A: him that I was his manager at the moment and not to interrogate me. I them started to ask him about using his phone, and replied to each of my questions demanding to know if I called him crazy. I walked away and that was it. When we met with Dennis Carruth about the incident, Mel had a couple of different versions of the incident that would have made me out to be mean and insulting, which I was not. He even lied and said that I threatened to "have him out of here so fast it would make his head spin." He also told Dennis that I had called him names which I had not. The bottom line is that he wanted to say whatever he had to say to have me fired or transferred, and he had no real reason for it. It didn't work, so he gave up, and since then he's given me no real problems. I believe that Mel is trying to do the same thing to Ralph. Ralph is a good guy and a good manager. No one else here has a problem with Ralph, and Mel has had a problem with almost everyone. I hope it is obvious that the problem is with Mel and not with Ralph.

SIGNED _____  TIME 10:40 AM/PM. DATE: 8-9-00

WITNESS _____  TIME 10:40 AM/PM. DATE: 8/8/00    Pg 3 of 3

# Plaintiff's Exh. 21

I, _FRANKLIN D. WILSON_ D.O.B. / 62 AGE _38_ SS#

ADDRESS _588 CLIFTON DR   BEAR. DE 19701_

PHONE # ( _302_ ) _832/4447_ HEREBY GIVE THIS VOLUNTARY STATEMENT TO Ron Wertz

_Regional Loss Prevention Manager_ AT _1159_

ON _08/09/26_ at _1:45_ AM/PM THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. ( _FW_ )

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by: _FRANK WILSON_ .

**Q What is your position with AutoZone?**

A. _STORE MGR of 1159_

**Q. What is your date of hire?**

A. _08/30/98_

Q _Please describe an incident between Mel Washington. and Ralph Findlo that occured at/for 1159?_

A _ON The INcident of RALPh Findle calling Melvet Washington "Alittle Boy" I DID NOT WITTNESS iT, BUT, WAS TOLD BY Mel That Ralph called Him a Boy (In RACiAL CoNTeXT) RAlph Came To me Late And Said He SAid This BUT, NOT IN Presidishal way As Mel Said He Did._

Q _Did He say "Boy" a "Little Boy" A "Little Boy"_
Q _Did you put Mel in for an award?_
A _Yes, I WROTE A EXTRA mile REPORT for melvet WAShington While AssT mgr AT 1157 for Work on CuSToma Car After I Told Him To Punch out AT The end of His Shift, I PUT The RePoRT ON The WAll And Left iT for RAlph_

SIGNED _[signature]_ TIME _1_ : _51_ AM/PM DATE: _8/9/00_

WITNESS _[signature]_ TIME _1:51_ AM/PM DATE: _8/9/00_ Pg _1_ of _3_

D-00367
Washington v. AutoZone

EXHIBIT
9

To see. After doing that I have know idea what happen to it after that.

Q Have you ever heard Ralph talking poorly about Mel to Debbie at 1152?

A Yes. I've heard Ralph call and talk to Debbie about Mel. On what he's done and the conflict he's cause.

Q Have you ever had any problem with Ralph?

A Yes, I had problems with Ralph. To me at one time with a PSM, To me he was showing favatizm to this AutoZoner, basically taking his side on things knowing that it was wrong and turn on me or some else is it was the same way. To the point when I had to get in contact with H.R. and ask what to do if I felt a case of favatizm. I also stated this on my first E. value with Ralph.

Q Please describe what you mean by favoritism?

A If I go to him and tell him what the other person did knowing that it's not right. He really would at least on it. But, is I or another would something simalar he would go off yelling, and carring on like that. He has also talk this PSM the back office and talk about the others inside the store.

Q What was his reaction when you took something to him about store.

A It would be like "So" or he would talk to him in mild and calmer matter. But, basicly he would throw it off like he didn't care.

SIGNED _[signature]_ TIME 1:51 AM/PM DATE: 08/9/2k

WITNESS _[signature]_ TIME 1:51 AM/PM DATE: 8/9/00    Pg 2 of 3

Q Why do you feel ~~the~~ Ralph reacted difficently?

A. This is in my personnal apion. I feel Ralph Has The "Archie Bunker" effect. I Do feel That There is A bit of Rasical ~~Promblem~~ Promblem with Ralph.



D-00369
Washington v. AutoZone

SIGNED _____ TIME /4:21 AM/PM DATE: 08/9/66

WITNESS _____ TIME 14 21 AM/PM DATE: 8/9/00    Pg 3 of 3

# Plaintiff's Exh. 22

STATEMENT

I, Melvert Washington Jr.   D.O.B ___ / 55 AGE 96 SS# ____

ADDRESS 319 Billy Mittell Ln   Apt 3080

PHONE # (302) 521-8407   HEREBY GIVE THIS VOLUNTARY STATEMENT TO   Ron Wertz

Regional Loss Prevention Manager   AT   Dover Delaware

ON 8/8/2000 at 750 AM/PM THIS STATEMENT IS MADE BY ME, OF MY OWN FREE WILL, WITHOUT THREAT OR INDUCEMENT OF ANY KIND. I UNDERSTAND THAT I DO NOT HAVE TO MAKE A STATEMENT AND THAT I AM FREE TO LEAVE AT ANY TIME. ( MW )

Q – Denotes a question asked by: Ron Wertz, Regional Loss Prevention Mgr.

A – Denotes an answer given by:   Melvert Washington Jr.

**Q What is your position with AutoZone?**

A. Partime Sales Associate

**Q. What is your date of hire?**

A. Sept 1999

Q. Did you receve a review from Ralph Fardle sometime between 3/11/00 and 4/29/00?

A. Yes I did.

Q Did you discuss this review with DM Danny Corith after this?

A. Yes I did discuss my review with Dennis Curnith several times after Ralph Findle ask me to sign it and insisted that I sign it, When I refused and further approach Dennis to please look at the review because I didnt agree with Ralphs appraisel and wanted Dennis to give a second opinion.

Q How many times did you ask Dennis to look at the review?

A. At least three times before he finally did sit down with me and even then after he did review the appraisel I still didnt want to sign it.

SIGNED Melvert Washington   TIME 909 AM/PM DATE: 8-8-2000

WITNESS Arnold Wertz   TIME 9.09 AM/PM DATE: 8/8/00

EXHIBIT
5

Q Then what happened?

A. Dennis suggested to me at this point that since I didn't want to sign my appraisal I should at least make a statement in my own behalf. I then told Dennis I would and also I was going to address my mistreatment I received from Ralph when I was selling a DL32183 starter to a customer.

Q When was this meeting?

A. On April 26, 2000

Q Then, you wrote the letter on 4/29/00 and took a copy of the appraisal and the letter to Dennis. Is that correct?

A yes it is.

Q Was this on 5/4/00?

A yes it is.

Q What did Denny do?

A. Dennis then wrote refused to sign Appraisal on my Performance Appraisal And dated it 5-4-2000. And the Dennis told me on 5-4-2000 that he was turning the information over to Human Relations to let them handle it.

Q on 5/5/00 according to your Post office Receipt you mailed a copy of the letter to Corporate? Why?

A. To cover myself just in case Dennis didn't send in the paperwork as he promised he would to Autozone Human Relations.

Q Did you inquire about it to Dennis?

A. yes several times and on 5-12-2000 Dennis informed

SIGNED _Melvat Washington_    TIME _9 09_ AM/PM DATE: _8-8-2000_

WITNESS _Ronald West_    TIME _9 09_ AM/PM DATE: _8/8/2008_    Pg _2_ of _4_

me that he had just sent in 4-29-2000 paperwork.

Q What did Dennis tell you after this date when you asked him about the letter?

A. Dennis said I don't know Didn't you send your paperwork in, I'm still waiting to hear just Like you, they will contact you.

Q Did Dennis say anything about talking to Ralph about the letter?

A. I ask Dennis did he talk to Ralph about the 4-29-2000 letter and had Ralph seen the letter? Dennis said yes he did mention the letter To Ralph but he didn't show it to Ralph and that Ralph said OK.

Q Did you have a Conversation with Dennis on 7/29/00 about your Transfer to Dover? What did he say?

A. Dennis said that he was waiting for Antonio Farley to call him back, Also Dennis said that Ralph Findle had been bad mouthing me to Debbie the 1152 Store Manager

Q How would you like to See this investigation end?

A. I would like my transfer to 1152 Dover Store, Antonio Farley promised me when he interviewed me in the Dover Store in Sept 1999, that I would be transfered to 1152 with the first available opening. that's the only reason I agreed to start in 1157 Smyrna Store in the first place.

I think Ralph Findle should be terminated for his behavior and unprofessional manner in which he treats people.

Q Did Dennis Call you on 8/2 r 8/3 and What did he Say?

A. Dennis my Dennis called me on my cell Phone and left A message

SIGNED _Melvert Washington_        TIME _909_ AM/PM  DATE: _8-8-2000_

WITNESS _Kenneth West_        TIME _9:09_ AM/PM DATE: _8/8/00_        Pg _3_ of _4_

to return his call right away, or call him at home tonight, it was important. When I did call Dennis on his cell phone at 302 540 2716, his first words were, " Mel you didn't tell me you had gone and got an Attorney.

Q. Do you have anything else to add?

A. Yes I do. At all times I have always tried to do my best, and if I could I would work fulltime, but I already have a fulltime job I hope the truth comes out of all this and we all learn something that helps AutoZone.

Q. Were you treated fair during this Interview?

A. Yes I was to the best of my Knowledge.

Q. Were there any threats or promises made?

A. No.



SIGNED _Melvaf Wal___    TIME _9:09_ AM/PM. DATE: _8-8-20 00_

WITNESS _M___    TIME ___:___ AM/PM. DATE: ___    Pg. _1_ of _4_

# Plaintiff's Exh. 23



‫ כ‬. Box 2198, Memphis, TN  38101-9842  /  (901) 495-6500

August 30, 2000

Melvert Washington, Jr.
319 Billy Mitchell Lane, Apt. 308D
Dover, DE  19901

Dear Mr. Washington:

It was a pleasure speaking with you today by telephone.  In answer to your question, we
have completed the investigation into the allegations you raised in your letter, and have
taken appropriate action.   As we discussed, I cannot divulge the findings of the
investigation or give any details as to corrective action.

Very truly yours,

Timothy P. Harrison
AutoZoner Relations

# Plaintiff's Exh. 24

# MEMO NOTE

**TO:**      Mr. Richard Robinson, DM, Autozone 11/57
             Greg Antzell, Acting 1157 Autozone Store Manager

**FROM:**    Mr. Melvert Washington Jr.
             Part-time Sales Personnel - 1157

**SUBJECT:** Schedule Flexibility

**DATE:**    September 8, 2000

Dear Sir,

   With all due respect, you are aware this store has undergone many personnel changes all of which I'm sure are in the best interest of Autozone.

   Mr. Richard Robinson was good enough to meet with me on August 2000, in order that I might request and share my availability in terms of Autozone having a flexible schedule that I might request.

   It was discussed at that time I am and was prior to becoming employed with Autozone employed full time.  However, I would be able to work *Monday - Friday 7:30 a.m. - 1:30 p.m. and on Saturdays and Sundays I would be available to open and work until 3 p.m. or 4 p.m.  In addition, if I required time off weekends that I would make a request.*

   Finally, I am writing,  this letter  for any forthcoming and presently acting managers addressing my scheduling concerns as not to conflict with my personal needs and the needs of Autozone.  Thank you for your attention in this matter.

Respectfuly,


Melvert Washington Jr.


Note: Mr. Robinson, asked me to Reconcider my transfer request after Mr. Findle was terminated and other employees left Autozone, and also Said the problem with Supervisor no longer existed, Basically he Said he was short on employees and Needed my help due to Manpower problems.