# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

MELVERT WASHINGTON, JR.,    )
                                 )
               Plaintiff,  )
                                 )
         v.               )      Civil Action No. 04-320 (SLR)
                                 )
AUTOZONERS, INC.,         )
                                 )
            Defendant,  )

## PLAINTIFF'S OPENING BRIEF IN OPPOSITION TO
## DEFENDANT'S MOTION IN LIMINE

PHILLIPS, GOLDMAN & SPENCE, PA
Joseph J. Farnan, III (Bar No. 3945)
1200 N. Broom St.
Wilmington, DE 19806
TEL: (302) 655-4200
jjf@pgslaw.com

and

Thomas J. Reed (*admitted Pro Hac Vice*)
Widener University School of Law
Delaware Volunteer Legal Services, Inc.
Veterans Assistance Program
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474

Date: January 30, 2008

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................. i

TABLE OF CITATIONS............................................................................... iii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS.................. 1

STATEMENT OF THE ISSUES....................................................................... 2

FACTS..................................................................................................... 3

SUMMARY OF ARGUMENT......................................................................... 8

ARGUMENT.............................................................................................. 13

    I.  ARE PLAINTIFF'S EXHIBITS PERTAINING TO PLAINTIFF'S INITIAL COMPLAINT ...    13
    FILED WITH THE DELAWARE DEPARTMENT OF LABOR ADMISSIBLE FOR ANY
    PURPOSE?

    II. ARE PLAINTIFF'S EXHIBITS PERTAINING TO HIS ORIGINAL 2000 INTERNAL.....    18
    DISCRIMINATION COMPLAINT AND DEFENDANT'S INVESTIGATIONS OF THAT
    COMPLAINT AND FOLLOW-UP  BETWEEN 2000 AND AUGUST 2001 ADMISSIBLE
    FOR ANY PURPOSE?.

    III. ARE PLAINTIFF'S EXHIBITS PERTAINING TO COMPARABLE FULL TIME ..........    26
    EMPLOYEES , THEIR EARNINGS AND BENEFITS AND ANY CORRECTIVE ACTION
    REPORTS ADMISSIBLE FOR ANY PURPOSE?

    IV. MAY JAMES MCIVER AND FRANKLIN WILSON TESTIFY AS WITNESSES?.......    28

CONCLUSION............................................................................................ 30

**TABLE OF CITATIONS**

**CASES**

Beech Aircraft v. Rainey, 488 U.S. 153 (1988 ) ........................................  14

Daubert v. Merrell Dow Pharmaceuticals, Inc.,  509 U.S. 579 (1993)........  6

Hester v. BIC Corp., 225 F.3d 178 (2nd Cir. 2000)....................................  29

Lightfoot v. Union Carbide Corp., 110 F.3d 898 (2d Cir. 1997)................  30

Mahlandt v. Wild Canid Survival, Inc., 588 F.2d 626 (8th Cir. 1978)........  29

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)..........  9 , 10, 12, 19, 20, 23

Spruill v. Winner Ford of Dover, Inc.,  175 F.R.D. 194 (D. Del. 1997).....  17

Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089 (3d Cir. 1995)........  17

United States v. Gomez- Norena, 908 F.2d 497 (9th Cir. 1990).................  20

United States v. Hardy, 228 F.3d 745 (6th Cir. 2000).................................  20

United States v. Hernandez-Quartez, 717 F.2d 552 (11th Cir. 1983)...........  20

United States v. Pelullo, 964 F.2d 193 (3rd Cir. 1992)................................  16

United States v. White, 890 F.2d 1012  (8th Cir. 1989)...............................  20

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 401.........................................................................  18

Fed. R. Evid. 402.........................................................................  14

Fed. R. Evid. 403.........................................................................  28

Fed. R. Evid. 601.........................................................................  28

Fed. R. Evid. 607.........................................................................  9, 30

Fed. R. Evid. 701........................................................................ 12, 28, 29, 30

Fed. R. Evid. 801(c)..................................................................... 27

Fed. R. Evid. 801(d)(2)(D)........................................................... 29

Fed. R. Evid. 803(6)..................................................................... 24, 27, 29

Fed. R. Evid. 803(8)..................................................................... 9, 14, 15

Fed. R. Evid. 807......................................................................... 15

Fed. R. Evid. 901(b)..................................................................... 14

Fed. R. Evid. 1003....................................................................... 14

Fed. R. Evid. 804(b)..................................................................... 15

## MISCELLANEOUS

James Garrity and Paul F. White, *Labor and Employment Law; The* ...... 26

*Use of an Economist in Labor and Employment Disputes: Legal and*

*Practical Considerations,* 74 FLA. BAR J. 55 (2000)

Social Security Death Index downloaded http://search.ancestry.com/...... 25

cgi-bin/sse 26 Jan. 2008.

Jack B. Weinstein, Marilyn Berger and Joseph M. McLaughlin,

WEINSTEIN'S FEDERAL EVIDENCE §§ 404.20(2)( c)................................ 21

Jack B. Weinstein, Marilyn Berger and Joseph M. McLaughlin,

WEINSTEIN'S FEDERAL EVIDENCE §§ 404.22(b)..................................... 21

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

Melvert Washington, Jr., the Plaintiff, filed an employment discrimination complaint with the Delaware Department of Labor on May 29, 2002.  He alleged that Autozoners, Inc., the Defendant, intentionally discriminated against him on account of his race by denying him the opportunity to take a full-time position with Defendant and to be promoted to Parts Service Manager.  He contended he was qualified for the position but white employees with less experience and education were promoted over him.  The Department of Labor found probable cause to believe a violation had occurred on May 31, 2003.  The determination of the Department of Labor was forwarded to the Equal Employment Opportunity Commission who issued a Notice of Right to Sue letter on February 26, 2004.

Washington filed his complaint in this Court in three counts on May 19, 2004.  Count I alleged that Defendant had subjected Washington to differential treatment by failing to promote him due to his race.  Count II alleged that Washington was constructively discharged because of the hostile work environment countenanced by Defendant.  Count III alleged that Defendant retaliated against Washington because he made a complaint about racial discrimination against his store manager, Ralph Findle.

After the close of discovery, Defendant moved for summary judgment on December 21, 2005 . Plaintiff cross-moved for summary judgment on January 5, 2006.  The Court issued its order on summary judgment on September 22, 2006.  The Court granted defendant's summary judgment motion with respect to Count I of plaintiff's complaint alleging differential treatment and failure to promote.   It denied summary judgment with respect to Counts II and III  of the complaint.

1

The final pre-trial conference in this matter is scheduled for February 6, 2008.  On January 23, 2008, Plaintiff filed a motion in limine to preclude any use of his 1983 Court Martial and his 1984 discharge for impeachment or any other purpose.(D.I, 60).

On January 23, 2008, Defendant filed its Motion in Limine to exclude certain documentary evidence and the testimony of James McIver, Franklin Wilson and Dr. David Black. (D.I. 58). This brief is in opposition to that motion.

## STATEMENT OF THE ISSUES[1]

I.  ARE PLAINTIFF'S EXHIBITS PERTAINING TO PLAINTIFF'S INITIAL COMPLAINT FILED WITH THE DELAWARE DEPARTMENT OF LABOR ADMISSIBLE FOR ANY PURPOSE?

II. ARE PLAINTIFF'S EXHIBITS PERTAINING TO HIS ORIGINAL 2000 INTERNAL DISCRIMINATION COMPLAINT AND DEFENDANT'S INVESTIGATIONS OF THAT COMPLAINT AND FOLLOW-UP BETWEEN 2000 AND AUGUST 2001 ADMISSIBLE FOR ANY PURPOSE?.

III. ARE PLAINTIFF'S EXHIBITS PERTAINING TO COMPARABLE FULL TIME EMPLOYEES , THEIR EARNINGS AND BENEFITS AND ANY CORRECTIVE ACTION REPORTS ADMISSIBLE FOR ANY PURPOSE?.

IV. MAY JAMES MCIVER AND FRANKLIN WILSON TESTIFY AS WITNESSES?

---

[1] In its Motion in Limine, Defendant also makes a time barred attempt to strike Dr. Black as an expert.  Plaintiff addresses this portion of Defendant's Motion in Plaintiff's Melvert Washington's Motion to Strike Defendant AutoZone's Motion in Limine as to Plaintiff's Economic Expert, which is being contemporaneously filed herewith.

## FACTS

In order to facilitate discussion of the issues presented by Defendant's Motion in Limine, the relevant facts relating to each issue will be set out below in an attempt to reconcile Defendant's Motion in Limine with Plaintiff's Exhibits.

**ISSUE I:** Washington filed a complaint with the Delaware Department of Labor on May 29, 2002. (Plaintiff's Exhibit 49). This complaint was supported by sworn affidavits from Leon Bynum (Plaintiff's Exhibit 58), Shane Treesh (Plaintiff's Exhibit 48), and James McIver. (Plaintiff's Exhibit 55). The Department of Labor acknowledged receipt of that complaint on June 3, 2002. (Plaintiff's Exhibit 50). In due course the Department of Labor issued a Notice of Charge of Discrimination (Plaintiff's Exhibit 51) and continuation sheet. (Plaintiff's Exhibit 52). The Department of Labor issued a Notice of Reasonable Cause on May 30, 2003 (Plaintiff's Exhibit 59), resulting in the Equal Employment Opportunity Commission issuing a Notice of Right to Sue on February 26, 2004. (Plaintiff's Exhibit 61). Defendant objects to the admission of all these exhibits in part (1) of its Motion in Limine. (*See* Exhibit E to Defendant's Motion in Limine).

**ISSUE II:** Washington sent a memo to Defendant's then-District Manager, Dennis Carruth, relaying among other things that Ralph Findle, the Smyrna store manager, had used a racial slur against him, calling him "a little boy." (Plaintiff's Exhibit 11). The memo appears to be dated April 29, 2000. Defendant made no immediate response to Washington's complaint. In May 2000, Washington collected a statement from Chuck Tucker that related to an instance of verbal abuse directed at Washington. (Plaintiff's Exhibit 13). In May and June 2000, Washington sent copies of Plaintiff's Exhibits 11 and 12 to Defendant's Memphis home office directed to Human

3

Relations. (Plaintiff's Exhibit 14). Defendant made no response to these repeat mailings. In August 2000, Washington received help from John Mulford, Esq., a Dover attorney. Mulford wrote to Defendant's Human Relations Director asking if she had received Washington's complaint. (Plaintiff's Exhibit 15). Defendant's staff attorney acknowledged receipt of this letter on August 2, 2000. (Plaintiff's Exhibit 16).

Within two days after Defendant's staff attorney acknowledged receipt of Mulford's later, Ron Wertz, the Regional Loss Prevention Manager, started an investigation into this matter. He collected statements from Ralph Findle (Plaintiff's Exhibit 17), Dennis Carruth (Plaintiff's Exhibit 18), Thomas Shehorn (Plaintiff's Exhibit 19), Brandon Diaz (Plaintiff's Exhibit 20), Franklin Wilson (Plaintiff's Exhibit 21) and from Washington (Plaintiff's Exhibit 22). At the end of August, Defendant's staff attorney acknowledged that the investigation had been completed. (Plaintiff's Exhibit 23).

Defendant fired Findle and Carruth at or about this time. Washington then wrote his new District Manager stating when he would be available to work part-time. (Plaintiff's Exhibit 24). This memo was also sent to Brian Paduano the new Smyrna store manager. (Plaintiff's Exhibit 25). Washington contends that these documents are background evidence of Defendant's concerted effort to retaliate against him for making a protected complaint about racial discrimination to his District Manager. Washington contends that this was the first link in the chain of events that drove him out of Defendant's employ in 2002.

Washington contends that shortly after Plaintiff's Exhibits 24 and 25 were sent, Defendant started its concerted retaliation against him, trying to drive him out of his part time job by creating a hostile work environment. Wertz started a second investigation, this time into

accusations by white and hispanic co-workers against Washington, in October, 2000. He

collected statements from Richard Henion (Plaintiff's Exhibit 26), Brian Paduano (Plaintiff's

Exhibit 27), Robert Baker (Plaintiff's Exhibit 28), James Zambrano (Plaintiff's Exhibit 29),

Shawn Permilia (Plaintiff's Exhibits 30 and 33), and Thomas Shehorn (Plaintiff's Exhibit 31).

Wertz also collected a statement from Washington (Plaintiff's Exhibit 32). Defendant took no

overt action against Washington at this time. However, on October 11, 2000, Defendant's

employee "Shawn" told Sandra Surman that Washington was no longer an employee. (Plaintiff's

Exhibit 34).

About that same time, Washington made a second complaint to Defendant's New York

Regional Human Relations Manager relating to a racial slur being used against him by Shaun

Permelia. (Plaintiff's Exhibit 35). Defendant took no action relating to this complaint.

Washington sent a second, corrected copy to the Human Relations Manager on October 16, 2000.

(Plaintiff's Exhibit 36).

While Washington's complaints were pending, his managers issued what Defendant refers to

in its manual as "Corrective Action Reports" for very minor infractions of company rules.

(Plaintiff's Exhibits 9 (Feb. 2, 2000), 12 (Apr. 2, 2000), and 37 ( Feb. 8, 2001)). Washington

also received a low performance appraisal from Leon Bynum, the new store manager in April,

2001. (Plaintiff's Exhibit 41). Washington, meanwhile, had sent a memo to Aleon Kelston, the

Distict Manager, complaining about the way in which his part-time work schedule was being

handled by store manager Leon Bynum. (Plaintiff's Exhibit 39).

Defendant objects to all these exhibits on the ground that each describes an alleged discrete

adverse employment action that is time-barred under *National Railroad Passenger Corp. v.*

5

*Morgan,* 536 U.S. 101 (2002). (*See* items (2) and (3) in Defendant's Motion in Limine and Exhibits B, C , and D).

**ISSUE III:**  Washington's complaint seeks damages for lost wages and fringe benefits resulting from Defendant's repeated, unjustified refusal to make him a full-time employee and to promote him to Part Sales Manager.  A competent microeconomic loss forecaster will assist the jury in appraising the effect of non promotion by comparing Washington's actual earnings as a maintenance man and part time employee with projected earnings for the same period of time using comparable full-time employees' earnings for comparative purposes.  Doctor David Black has been retained to make this review and appraisal.  Due to the long delay in bringing this claim to trial, a delay caused in part by a natural disaster (Hurricane Katrina), Doctor Black's original calculations now need revision to be accurate, since the Court has ruled that Deanna Brown is not a comparable employee for comparative purposes.  The Court has also ruled that any failure to take Washington on as a full-time employee and to promote him prior to August 2001 is time-barred as discrete acts.  (*See* D.I. 53 at 13).  Defendant objects to admission of his original loss projection calculations (Plaintiff's Exhibit 63) and to his testimony, asserting that Dr. Black's testimony fails to meet the criteria for useful expert opinion evidence established by *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) .

**ISSUE IV:**  Doctor Black based his original 2005 calculations on comparable earnings by full-time employees at the Smyrna store.  The Court eliminated Deanna Brown from consideration in any economic loss forecasting. (D.I. 53 at 13).  Without presenting any claim that the promotion of Shane Treesh from part-time to full time employee and Part Sales Manager was in itself an adverse employment action, Washington's expert, Dr. Black needs the promotion

date and earnings data for Mr. Treesh to revise his calculations. Doctor Black also needs to review data on other comparable employees to make his calculations as accurate as possible. These documents include Plaintiff's Exhibits 72 and 73 (Robert Baker); 75 and 78 (Shane Treesh); 76 (earnings records David Sobotkin); 77 (earnings records James Zambrano); 79 (earnigns records Thomas Shehorn); and 80 (earnings record Pilar Sanchez). These exhibits represent the basis for Dr. Black's opinion evidence and are admissible to the extent that they are basis information.

Doctor Black also needed Washington's earnings for 2001 and 2002 to make his calculations in order to account for any mitigation of damages. The best source for that information are Washington's federal and state income tax returns for 2001 and 2002. (Plaintiff's Exhibits 66, 67, 69 and 69).

Defendant objects to the admission of these exhibits in parts 7 and 8 of its Motion in Limine (See Exhibits F, G and H) on the ground that the records are hearsay, and not the subject of expert testimony under Rule 702. Defendant also objects that these documents are excessively prejdicial under Rule 403.

Defendant also objects to admission of corrective action reports against David Sobotkin (Plaintiff's Exhibits 81, 82, 83, and 84), the employment application of Brandon Diaz (Plaintiff's Exhibit 85), and corrective action reports against Robert Baker (Exhibits 86, 87, 88, 89) and Deanna Brown (Plaintiff's Exhibit 90 and 91). Washington offers these corrective action reports to show a pattern of favoritism excusing major violations of company policy by white employees that was part of the hostile work environment that Washington endured. Defendant objects on the ground that the evidence is time-barred by the Court's summary judgment ruling and by

7

*National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

**ISSUE V:** Finally, Defendant objects to any testimony by scheduled Plaintiff's witnesses

James McIver and Franklin Wilson. Defendant also objects to admitting their statements.

(Plaintiff's Exhibits 55 and 21). Defendant asserts that McIver's statement is improper lay

opinion evidence therefore he should be excluded as a witness. Defendant asserts that Wilson

would testify only as to a discrete adverse employment action that is time-barred, making his

evidence inadmissible.

## SUMMARY OF ARGUMENT

### *1. Delaware Department of Labor Documents*

Defendant contends that Washington's complaint with the Delaware Department of Labor

(Plaintiff's Exhibit 49) supported by sworn affidavits from Leon Bynum (Plaintiff's Exhibit 58),

Shane Treesh (Plaintiff's Exhibit 48), and James McIver (Plaintiff's Exhibit 55), the Department

of Labor acknowledged receipt of that complaint (Plaintiff's Exhibit 50), the Department of

Labor's Notice of Charge of Discrimination (Plaintiff's Exhibit 51) and continuation sheet

(Plaintiff's Exhibit 52), its Notice of Reasonable Cause on May 30, 2003 (Plaintiff's Exhibit 59),

and the EEOC Notice of Right to Sue letter (Plaintiff's Exhibit 61) are inadmissible because the

probative value of these exhibits are greatly outweighed by prejudice to Defendant and would

require a "trial within a trial" to establish, as Defendant contends, the Department of Labor

investigation was fatally flawed.

Washington contends that Defendant denied in its answer to Plaintiff's complaint that

Washington had exhausted his administrative remedies before filing suit, thus throwing the

burden of proof of exhaustion of remedies back at Washington. Plaintiff's Exhibits 49, 50, 51,

52, 59 and 61 are government records admissible as an exception to the hearsay rule under Fed. R. Evid. 803(8). They are the sole means of proving exhaustion of remedies. The three supporting affidavits, Plaintiff's Exhibits 48, 55 and 58, in addition to being kept by the Department of Labor in the ordinary course of its investigative business and under statutory duty, are marked in evidence in order to track them should it become necessary to refresh a witness' recollection or to impeach a retracting witness under R. 607. The probative value of these exhibits outweighs any potential prejudice to Defendant, waste of time or confusion of the issues.

### 2. *Evidence of Hostile Work Environment and Retaliation Prior to August 2001.*

Defendant objects to Plaintiff's Exhibits 11, 12, 13, 14 and 15 that relate his original April 2000 complaint against Defendant's store manager, Findle, and theDefendant's response to his original complaint on the ground that each describes an alleged discrete adverse employment action that is time-barred under *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).

Defendants also object to Plaintiff's Exhibits 17, 18, 19, 20, 21, 22 and 23 relating to Defendant's August, 2000, investigation into Washington's discrimination charge on the same ground. Defendant further objects to Plaintiff's Exhibits relating to Defendant's October, 2000, investigation into charges made by white employees against Washington, also on the ground that these actions are time-barred under *Morgan*. Defendant objects to Plaintiff's Exhibit 34 which is an affidavit by a disinterested witness relating to Defendant's hostile work environment at the Smyrna Store on the same ground.

Defendant objects to Washington's second complaint in October 2000 to Defendant's New York Regional Human Relations Manager relating to a racial slur being used against him by

Shaun Permelia. (Plaintiff's Exhibit 35 and 36).

From April 2000 through February 2001, Washington received three "Corrective Action

Reports" for very minor infractions of company rules. (Plaintiff's Exhibits 9 , 12 , and 37).

Washington also received a low performance appraisal from Leon Bynum, the new store manager

in April, 2001. (Plaintiff's Exhibit 41).  Defendant objects to these exhibits as time-barred under

*Morgan* as well.  Finally, Defendant objects to Plaintiff's Exhibit 39, Washington's 2001 memo

to District Manager Aleon Kelston, complaining about the way in which his part-time work

schedule was being handled by Defendant's store manager on the same grounds.

Washington offers all these exhibits to establish that Defendant's Smyrna store was a

continuing racially hostile work environment.  *Morgan* specifically excepted hostile work

environment claims from the 300 day time limitation, thus making all these exhibits relevant to

Washington's hostile work environment count of complaint.  Washington further offers all these

exhibits as "background evidence" that explains why Defendant's refusal after August, 2001, to

take him on as a full-time employee and promote him were part of a concerted scheme of

retaliation against Washington for his race discrimination complaint to Defendant's management.

*Morgan* specifically allows "background evidence" like these exhibits to be admitted to explain

ambiguous actions by an employer.

### 3. Information Relied on By Dr Black

Doctor Black based his original 2005 calculations on comparable earnings by one full-time

employee at the Smyrna store.  Without presenting any claim that the promotion of Shane Treesh

from part-time to full time employee and Part Sales Manager was in itself an adverse

employment action, Washington's expert, Dr. Black needs the promotion date and earnings data

for Mr. Treesh to revise his calculations. Doctor Black also needs to review earnings data on other comparable employees to make his calculations as accurate as possible. These documents include Plaintiff's Exhibits 72 and 73 (Robert Baker); 75 and 78 (Shane Treesh); 76 (earnings records David Sobotkin); 77 (earnings records James Zambrano); 79 (earnigns records Thomas Shehorn); and 80 (earnings record Pilar Sanchez). These exhibits represent the basis for Dr. Black's opinion evidence and are admissible to the extent that they are basis information. Defendant objects to the introduction of these exhibits on the ground that they are not the subject of expert testimony under Rule 702. Defendant also objects that these documents are excessively prejudicial under Rule 403. Washington notes that all these records are the Defendant's business records and are admissible under R. 803(6) for the truth of the matter contained. Washington also notes that the exhibits are trustworthy accounts of routine business transactions between Defendant and full-time employees at its Smyrna store. The probative value of these exhibits as the sole source of comparable earnings data actually outweighs any outside chance of unfair prejudice to Defendant.

Doctor Black also needed Washington's earnings for 2001 and 2002 to make his calculations in order to account for any mitigation of damages. The best source for that information are Washington's federal and state income tax returns for 2001 and 2002. (Plaintiff's Exhibits 66, 67, 69 and 69). Defendant objects to the admission of Washington's income tax returns on the grounds of probative value exceeded by prejudice.

Defendant also objects to admission of corrective action reports against David Sobotkin (Plaintiff's Exhibits 81, 82, 83, and 84), the employment application of Brandon Diaz (Plaintiff's Exhibit 85), and corrective action reports against Robert Baker (Exhibits 86, 87, 88, and 89) and

11

Deanna Brown. (Plaintiff's Exhibit 90 and 91). Washington offers these corrective action reports to show a pattern of favoritism excusing major violations of company policy by white employees that was part of the hostile work environment that Washington endured. Defendant objects on the ground that the evidence is time-barred by the Court's summary judgment ruling and by *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Washington notes that *Morgan* does not bar background evidence showing that other employees with worse Corrective Action Records held full-time positions and were promoted in the ordinary course of Defendant's business, while Washington was denied full-time status and a promotion after August 2001.

### 5. *McIver and Wilson's Live Testimony*

Finally Defendant objects to any testimony by scheduled Plaintiff's witnesses James McIver and Franklin Wilson. Defendant also objected to admitting their statements. (Plaintiff's Exhibits 55 and 21). Defendant asserts that McIver's statement is improper lay opinion evidence therefore he should be excluded as a witness. Defendant asserts that Wilson would testify only as to a discrete adverse employment action that is time-barred, making his evidence inadmissible. Washington notes that both witnesses will be called to testify as to facts they observed concerning a hostile work environment and retaliation against Washington. Any opinion that might be expressed by either witness will be based on first-hand observations and will be helpful to the jury in explaining their factual observations, thus admissible under Fed.R. Evid. 701. The statements of these witnesses are marked into evidence in case they are needed to refresh recollection or to impeach the witness.

12

## ARGUMENT

### I. Are Plaintiff's Exhibits Pertaining to Plaintiff's Initial Complaint filed with the Delaware Department of Labor Admissible for Any Purpose?

Defendant contends that Plaintiff's Exhibit 49, 50, 51, 52, and 61 as well as the statements of Shane Treesh (Plaintiff's Exhibit 48), Leon Bynum (Plaintiff's Exhibit 58), and James McIver (Plaintiff's Exhibit 55) are inadmissible. In order to properly appraise these contentions, Washington will use a three part analysis of the evidence stating why the evidence is relevant, reliable and why probative value is not greatly exceeded by unfair prejudice to Defendant.

#### A. Relevance

Exhibits 49 through 52 and 61 establish that Washington has exhausted all appropriate administrative remedies, part of his burden of proof.     Washington's amended complaint alleged that Washington had exhausted all administrative remedies. (*See* D.I. 6 at ¶ 4 and paragraph 4 of Defendant's amended answer denying this paragraph (D.I. 18)). Washington may prove exhaustion by testimonial or documentary evidence or by both means. Of course Defendant is free to propose an adequate stipulation on this issue to eliminate the need for such proof. Exhibit 49 is Washington's original complaint establishing the 300 day statute of limitations for adverse employment actions. Exhibit 50 acknowledged receipt of the complaint, Exhibits 51 and 52 comprise the statutory notice of charge of discrimination, Exhibit 61 was the notice of reasonable cause and Exhibit 59 was the Department of Labor's Notice of Reasonable Cause, followed by the EEOC's Notice of Right to Sue (Plaintiff's Exhibit 61). All these exhibits are relevant to proof of exhaustion of administrative remedies.

The statements of Bynum, Treesh and McIver are relevant to the charge filed by Washington because each statement establishes an adverse employment action by Defendant against Washington falling within the 300 day statute of limitations. They are also independently relevant either to refresh the recollection of all three men who are listed as Plaintiff's witnesses in the Proposed Pre-trial Order. Rule 402 dictates that all relevant evidence be admitted unless specifically excluded by the other Federal Rules of Evidence, an Act of Congress or by the U.S. Constitution.

### B. Reliability

Defendant claims that Exhibits 48, 49, 50, 51, 52, 55, 58 and 61 are inadmissible as unreliable hearsay. All of these exhibits came from the files and records of the Delaware Department of Labor. Defendant does not dispute the authenticity of these exhibits, *See* Fed.R. Evid. 901(b), nor does Defendant dispute that the copies supplied to Defendant are duplicates within the meaning of Fed. R. Evid. 1003.

Fed. R. Evid. 803(8) admits facts contained in government reports as an exception to the hearsay rule. Further any opinion based on observed facts is also admissible. *Beech Aircraft v. Rainey*, 488 U.S. 153, 170 (1988). Justice Brennan, speaking for the Court in *Beech* stated that:

> . . . . evaluative reports are admissible "unless the sources of information or other circumstances indicate lack of trustworthiness." This trustworthiness inquiry -- and not an arbitrary distinction between "fact" and "opinion" -- was the Committee's primary safeguard against the admission of unreliable evidence, and it is important to note that it applies to all elements of the report. Thus, a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof -- whether narrow "factual" statements or broader "conclusions" -- that she determines to be untrust-worthy.
>
> Moreover, safeguards built into other portions of the Federal Rules, such as those dealing with relevance and prejudice, provide the court with additional means of scrutinizing and, where appropriate, excluding evaluative reports or portions of them. And

14

of course it goes without saying that the admission of a report containing "conclusions" is
subject to the ultimate safeguard -- the opponent's right to present evidence tending to
contradict or diminish the weight of those conclusions.

*Beech*, U.S. 167-68.

Defendant claims that Exhibits 48, 55 and 58 are also inadmissible hearsay. That would depend

of course on the use to which Washington will put these exhibits. Rule 801(c) defines "hearsay"

as ". . . a statement, other than one made by the declarant while testifying at the trial or hearing,

offered in evidence to prove the truth of the matter asserted." If the exhibits are used only to

refresh recollection or to impeach the credibility of Bynum, McIver or Treesh, then Washington

will use them for a non-hearsay purpose.

     If any of the three witnesses are unavailable at trial, Washington may offer these exhibits

under Rule 803(8) and under Rule 807, the catch-all exception to the hearsay rule. First, all three

Exhibits are from the complaint file of the Delaware Department of Labor. They qualify as

government documents under Rule 803(8) because the Department of Labor has a statutory duty

to investigate discrimination charges and to record the statements of witnesses. Each witness'

statement in turn would be the only source of their evidence. The statements do not qualify

under Rule 803 or 804(b) in their own right, but in the interest of justice, the jury should have the

evidence of these unavailable witnesses for the light that their statements shed on Washington's

claim of racial discrimination in the work place. Rule 807 states that:

A statement not specifically covered by Rule 803 or 804 but having equivalent
circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the
court determines that (A) the statement is offered as evidence of a material fact; (B) the
statement is more probative on the point for which it is offered than any other evidence
which the proponent can procure through reasonable efforts; and (C) the general purposes
of these rules and the interests of justice will best be served by admission of the statement

into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

If any of the three potential witnesses become unavailable, then their observations incorporated in Exhibits 48, 55 and 58 are evidence of material adverse employment acts by Defendant satisfying the first prong of Rule 807. These exhibits then become more probative than any other source of the unavailable witness's testimony, to the extent that neither Bynum nor McIver have been deposed. If anything in Treesh's statement does not appear in his depositions then the depositions are not a good alternative source of his evidence. That satisfies the second prong. The third prong is satisfied because the general interests of justice will be served by receiving the evidence of disinterested eye witnesses to Defendant's adverse employment actions who are not parties to this cause.

The general criteria for employing Rule 807 in the Third Circuit has been spelled out in *United States v. Pelullo*, 964 F.2d 193 (3rd Cir. 1992):

> . . . Although Rule 803(24) may be read as requiring only that the proponent give notice of the hearsay *statement* (and its particulars, including the name and address of the declarant), in *Furst* we construed the notice provision to require the proponent to give notice of its intention specifically to rely on the rule as grounds for admissibility. *See Furst*, 886 F.2d at 574. *See also United States v. Tafollo-Cardenas*, 897 F.2d 976, 980 (9th Cir. 1990) (prosecutor must give notice of *Rule 803(24)* as basis for admissibility; *but see United States v. Benavente Gomez*, 921 F.2d 378, 384 (1st Cir. 1990) (requiring that notice be given of the existence of the evidence).

*Pelullo*, 964 F.2d 202. The disclosure of these statements early in the discovery phase and the statement in this brief that Washington intends to submit these exhibits as substantive evidence if any of the witnesses become unavailable at trial satisfies the *Pellulo* requirement of specific

16

notice of intent to use these exhibits under Rule 807.

## C. Probative Value and Prejudice

Defendant acknowledged that the only Delaware case dealing with the admissibility of a

Delaware Department of Labor employment discrimination investigation, *Spruill v. Winner Ford*

*of Dover, Inc.*, 175 F.R.D. 194 (D. Del. 1997), held that the facts discovered and incorporated in

the Department of Labor report were admissible at trial under the government records exception

to the hearsay rule. The *Spruill* Court noted that:

> The federal circuit courts of appeals have not treated uniformly the issue of the
> admissibility of EEOC findings and their state counterparts, see *Johnson v. Yellow Freight
> Sys., Inc.,* 734 F.2d 1304, 1309 (8th Cir. 1984) (citing cases). One view is such findings are
> *per se* admissible, while other courts reserve the decision on admissibility to the discretion
> of the trial judge. *Id.* The Third Circuit Court of Appeals falls within the latter category.
> *Starceski v. Westinghouse Elec. Corp.,* 54 F.3d 1089, 1099 n.12 (3d Cir. 1995); see also
> *Walton v. Eaton Corp.,* 563 F.2d 66 (3d Cir. 1977).

*Spruill*, 175 F.R.D. at 196. The Court then stated that the facts found by the Delaware

Department of Labor would be excluded because they were cumulative. *Id.* The Court followed

*Starceski,* that held that the admission or exclusion of EEOC findings is within the discretion of

the trial judge under Rule 403. *Starceski*, 563 F.2d 110.

Washington needs to show that he exhausted his administrative remedies because Defendant

denied that he had done so in its answer. The way to prove that is to submit government

documents showing that he had made a timely filing of complaint, an administrative

determination of the original claim, and had received a consent to sue letter. Unless Defendant is

willing to agree to these events, the Court has no other source for this information. Washington

cannot testify to these events from his own knowledge. The investigator who undertook to

investigate his file is no longer with the Department of Labor and the custodian of the

Washington file has no personal knowledge of any of these event. Therefore, these exhibits have high probative value on a key issue.

On the other hand, unfair prejudice to the Defendant is nil. The investigative report can be redacted to remove conclusions of law, if the Court finds them to be unfairly prejudicial. The original complaint, acknowledgment of receipt, redacted findings and consent to sue do not unfairly portray the Defendant as somehow per se guilty of a violation. Proving exhaustion by calling witnesses could unduly lengthen the time of this trial beyond any reasonable limitations. Therefore, these exhibits should be admitted.

## II. ARE PLAINTIFF'S EXHIBITS PERTAINING TO HIS ORIGINAL 2000 INTERNAL DISCRIMINATION COMPLAINT AND DEFENDANT'S INVESTIGATIONS OF THAT COMPLAINT AND FOLLOW-UP BETWEEN 2000 AND AUGUST 2001 ADMISSIBLE FOR ANY PURPOSE?

### A. Relevance

Rule 401 Fed. R. Evid. states that "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 states that relevant evidence is admissible unless barred by the Federal Rules of Evidence, an Act of Congress or by the Constitution of the United States. Plaintiff's proffer of the Exhibits objected to by Defendant is based on three theories: "background evidence" of inextricably intertwined acts by Defendant's employees in retaliation for Washington's 2000 racial discrimination complaint; "background evidence" for Plaintiff's expert, Dr. Black, and evidence of a continuing series of events constituting a hostile work environment

### 1. Background Evidence

Washington's initial charge was timely filed within 300 days of an adverse employment action. Defendant does not contest this. Washington's claim that he was subjected to a hostile work environment and retaliation after August 1, 2001 by refusal to promote him and to make him a full-time employee requires background evidence to understand the nature and extent of Defendant's systematic use of its promotion and hiring policies from 2001 through 2002 to keep Washington from moving ahead with Defendant as a full-time employee and parts service manager.

As noted in the Court's Memorandum Opinion on Summary Judgment, Washington cannot assert any economic or other injury from adverse employment actions taken against him prior to August 2001. The Court cited *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101 (2002) for the proposition that Washington is time-barred from asserting any claim for damage due to adverse actions occurring between the time he was hired and August 2001. Plaintiff does not seek damages for any of these adverse actions, based on the Court's ruling.

However, Washington asserts claims that he was subjected to a continuing hostile work environment and to systematic retaliation for an act connected with one of the time-barred adverse employment actions. *Morgan* sheds light on both issues.

First, consider the Court's appraisal of evidence explaining a discrete adverse employment action that is not time barred. Justice Thomas' writing for the majority, specifically dealt with "background evidence" that explained the employer's behavior. He stated that " [n]or does the statute bar an employee from using the *prior acts as background* evidence in support of a timely claim." *Morgan*, 536 U.S. at 113 (emphasis added). Please note that Justice O'Connor's

19

dissenting opinion does not disagree with this statement by Justice Thomas for the majority. *See*

536 U.S. at 123-28.

"Background evidence" means evidence that helps to give a full and accurate portrayal of a

particular event. "Background evidence" routinely emerges in drug courier cases where police

officers testify as to "drug courier profile" evidence to show how police were directed to take a

defendant under surveillance. *See, e.g., United States v. Gomez- Norena*, 908 F.2d 497, 501 (9th

Cir. 1990) (holding drug courier profile evidence admitted "to provide the jury with a full and

accurate portrayal of the events as they unfolded"); *United States v. Hernandez-Quartez*, 717

F.2d 552, 555 (11th Cir. 1983);  *United States v. White*, 890 F.2d 1012, 1014  (8th Cir. 1989)

(holding drug courier profile evidence from police experts admissible as background evidence)

"Background evidence" is also admitted to explain conspiratorial schemes. *See ,e.g,. United*

*States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000) (holding "background or res gestae evidence

consists of those other acts that are inextricably intertwined with the charged offense or those

acts, the telling of which is necessary to complete the story of the charged offense.")

One commentator explains "background evidence" in a criminal law context in the course of

explaining how R. 404(b) operates to allow admission of other acts evidence:

> It is sometimes difficult to draw a line between testimony or other evidence pertaining to
> the crime charged and evidence concerning other wrongful conduct with which the crime is
> inextricably intertwined.  In such a situation, despite all precautions, a suggestion of the
> other crime is bound to creep in.  Therefore, evidence of other acts is sometimes admitted
> even though it is not offered to show any material, consequential fact, simply because it
> cannot realistically be disentangled from admissible evidence pertaining to the charged
> crime. This type of other-crimes evidence is admitted if it *contributes to an understanding*
> *of the event in question*, even if it reveals crimes other than those charged, because
> exclusion under those circumstances would render the testimony incomplete and
> confusing. All circuits adopt this view.

Jack B. Weinstein, Marilyn Berger and Joseph M. McLaughlin, WEINSTEIN'S FEDERAL

EVIDENCE §§ 404.20(2)( c) (inextricably intertwined acts);  404.22(b) (admissibility of similar

acts in civil actions)(citations omitted)(Emphasis added).

In order to tell Washington's story of retaliation, Washington must explain why Defendant

took adverse employment actions after August, 2001.  These retaliatory actions were a response

to his April, 2000, charge of racial discrimination made against Findle.   Much of this

inextricably intertwined history is documented by memos, investigative reports and statements

collected by the Defendant.  Exhibit 6 is the original complaint concerning racial discrimination

made by Washington against Ralph Findle. Exhibit 11 is a second revised version sent to

Defendant's home office to put Defendant on notice that Washington was the victim of racial

discrimination.  Exhibit 14 shows that Defendant received Washington's complaint at the home

office.  Mr. Mulford's letter, Exhibit 15, and Mr. Harrison's response show that Defendant had

notice of Washington's racial discrimination complaint, following procedures in Exhibit 1, the

Defendant's employee handbook.  Exhibits 17 through 22 are statements taken by Defendant's

investigator in August 2000, relating to Washington's racial discrimination complaint.

Washington will prove that seemingly unconnected acts by Leon Bynum in 2001 and 2002

are simply repercussions or "fall-out" from Defendant's investigation of Washington's 2000

racial discrimination charge and Defendant's retaliation against Washington.  Exhibit 23 is an

acknowledgment letter from Defendant's counsel relating to Washington's telephone

conversation about his race discrimination complaint.  It shows that the home office knew and

understood his complaint.

The statements collected in October, 2000, by Defendant's investigator from Washington's fellow employees, embodied in Exhibits 24 through 34 show a concerted scheme to retaliate against Washington for his actions, and explain why acts by Leon Bynum denying Washington's 2001 and 2002 request for full time employment and promotion were in retaliation for Washington's complaint against Findle.

Exhibits 35, 36 and 39 show that Washington was suffering from additional discrimination at the workplace later in 2000, causing him to send a complaint to the New York district manager and later to the Baltimore district manager. These exhibits show how the concerted scheme included "benign neglect" of Washington's plea for fair treatment, starting in 2001 and continuing through 2002. Exhibit 48, a statement by Shane Treesh, was ratified during his deposition, amplifying his deposition and explaining his motive to appear as a witness. (*See* May 13, 2005 Treesh Deposition at 35 attached as Exhibit A).

Exhibit 56 is a hand-written memo by Washington summarizing a conversation held on July 8, 2002, concerning Washington's request to be a full-time employee and to be promoted. It was produced by Defendant. It identifies an act by Defendant *after* Washington had filed his initial complaint with the Delaware Department of Labor, an equivocal offer of a full-time position somewhere in the Autozone system.

### 2. Hostile Work Environment

The *Morgan* majority also examined the hostile work environment. Justice Thomas wrote that:

> Hostile environmental claim are different in kind from discrete acts. Their very nature involved repeated conduct. . . ("the repeated nature of the harassment or its intensity constitutes evidence that management knew or should have known of its existence.") The

"unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . .

*Morgan*, 536 U.S. at 115. Justice O'Connor dissented on this precise issue: she believed as did

her dissenting colleagues, that the majority incorrectly determined that a hostile work

environment claim would encompass acts committed more than 300 days prior to the initiation of

charges. *Morgan*, 536 U.S. at 123-25.

The exhibits referred to in part A(1) establish a continuing atmosphere of subtle racial

hostility and tension at the Defendant's Smyrna store. Washington made two complaints about

other employee's racist remarks in 2000. (Plaintiff's Exhibits 6, 11, 35, 36). One resulted in an

investigation (Plaintiff's Exhibits 14 through 23); the other did not. One of the persons he

accused of racial remarks was involved in an attempt to get rid of Washington: the October, 2000

investigation into Washington's alleged threats made to other employees. (Plaintiff's Exhibits 35

and 36).

These 2000 events were followed by other incidents in 2001 and 2002 within the 300 day

period: Defendant's persistent refusal to take Washington on as a full-time employee (*See*

Plaintiff's Exhibits 42, 44, 45), shouting matches between Washington and his manager (*See*

Plaintiff's Exhibit 55), and changing the work schedule to make sure that Washington could not

arrive on time for work. (*See* Exhibit A at 31-32).

To conclude:  all the exhibits challenged by Defendant as time-barred discrete adverse

employment actions are not the basis of any claim for relief made by Washington. They are,

however, evidence of a hostile work environment and of retaliation that *Morgan* held to be

admissible evidence.

**B. Reliability**

Defendant was the source of Plaintiff's Exhibits 9 , 11, 12, 13, 14, 15,16, 17,18,19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 39 and 41.  They were produced in response to Washington's Notice to Produce or produced at Washington's May 12, 2005 deposition by defense counsel.  Defendant cannot attack these exhibits as not authentic or not the best evidence.

All of these exhibits were kept and maintained in the ordinary course of business by Defendant for a business purpose: loss control. Therefore each and every exhibit is a business record as defined by Fed. R. Evid. 803(6) and admissible.  These exhibits are reliable enough to be admitted.[2]

**C. Probative Value**

The exhibits mentioned under this issue record for the most part contemporaneous activities of Defendant's employees relating to hostile work environment and retaliation.  In some instances the exhibits are the sole source of crucial information, e.g., Plaintiff's Exhibit 17

---

[2] Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * *
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

(statement of Ralph Findle) because Findle is dead.[3]   In other instances, the actions taken or

refused by Defendant's Smyrna store manager make no sense without the background of

complaints made against Washington by white fellow employees. (*See* Exhibits 29 through 33).

These exhibits show a hostile work environment at Defendant's Smyrna store that Defendant did

little to curb after Ralph Findle was let go.  Hence all these exhibits are probative of a hostile

work environment and retaliation.

    Again, there is no unfair prejudice to Defendant arising from admission of these exhibits.

The originals of these exhibits were in Defendant's possession and control since their creation.

The information contained in these exhibits was available to Defendant from April 2000 onward.

Defendant has the ability to produce witnesses and documentary evidence showing that

Defendant did not condone a hostile work environment at the Smyrna store.  Defendant may

produce witnesses to show that the chain of events that drove Washington out of the Smyrna

store were just coincidental, if it can.  The jury will not be irrationally prejudiced against

Defendant by reason of the investigation into Findle's actions or the second investigation into

Washington's alleged behavior.  Washington's second complaint about racial slurs that went

unanswered will not cause the jury to disregard the Court's instruction on the weight and

credibility of the evidence.  Therefore the exhibits should be admitted.

---

[3]  Social Security Death Index Ralph J. Findle SS# 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 downloaded
http://search.ancestry.com/cgi-bin/sse 26 Jan. 2008.

**III. ARE PLAINTIFF'S EXHIBITS PERTAINING TO COMPARABLE FULL TIME EMPLOYEES , THEIR EARNINGS AND BENEFITS AND ANY CORRECTIVE ACTION REPORTS ADMISSIBLE FOR ANY PURPOSE?**

## A. Relevance

Doctor Black needs information from Defendant's comparable employees in order to make an economic loss forecast that would be useful to the jury in appraising the damage done to Washington by Defendant.   Otherwise, Dr. Black would have no information on the earnings of a full time sales associate or part sales manager and his conclusions would be flawed. *See* James Garrity and Paul F. White, *Labor and Employment Law; The Use of an Economist in Labor and Employment Disputes: Legal and Practical Considerations,* 74 FLA. BAR J. 55, 60-61 (2000) (hereafter "Garrity & White").  Plaintiff's Exhibits 72 and 73 (Robert Baker); 75 and 78 (Shane Treesh); 76 (earnings records David Sobotkin); 77 (earnings records James Zambrano); 79 (earnings records Thomas Shehorn); and 80 (earnings record Pilar Sanchez) provide the necessary comparable data to permit sound economic loss analysis.   Exhibits 72 and 75, employment applications for two persons who were taken on as full-time employees and later promoted to Parts Service Manager, are also relevant to the qualifications needed for full-time work and for a Parts Sales Manager as defined by Plaintiff's Exhibits 2 and 3.   Since the Court has ruled that the hiring of Treesh and Baker as full-time employees cannot be an adverse employment action on which a separate claim may be grounded, (D.I. 53 at 12-13) and Washington does not assert any such claim at this time, the employment applications are "background evidence" with respect to job descriptions and actual qualifications.   Thus these two exhibits are relevant under a *Morgan* analysis as well.

26

**B. Reliability**

Plaintiff's Exhibits 72, 73, Exhibits 75, 76, 77, 78 , 79 and 80 are hearsay. Fed. R. Evid. 801(c). However all these exhibits are records made and kept in the ordinary course of business by Defendant. Each exhibit qualifies under the business records exception to the hearsay rule, Fed.R. Evid. 803(6). Each exhibit is authentic and a duplicate of originals maintained by Defendant. Fed. R. Evid. 1003. There are no reliability issues with respect to these exhibits.

**C. Probative Value**

Washington does not need anything other than the earnings records in Exhibits 73, 74, 76, 77, 78, 79 and 80 and the employment applications and Corrective Action Records in Plaintiffs' Exhibits 72, 74 and 75 as basis for Dr. Black's expert opinion evidence. Washington will happily redact Exhibit 72 and 75 to exclude everything other than these items.

Plaintiff's Exhibits 73, 76, 77, 78, 79 and 80 are the only source of comparable earnings for full-time employees at Defendant's Smyrna store during the period in question. The unfair prejudice to Defendant caused by using these comparables as basis for Dr. Black's evidence is nil. Although these exhibits, when compared with Washington's part-time earnings (Plaintiff's Exhibit 64) show that Washington's pay as a part-time employee was lower than others at the Smyrna store from August 2001 to July 2002, that was an economic choice Defendant made in its hiring process and Defendant cannot now cry "foul" if that choice is introduced as basis or background evidence. Exhibits 72, 74 and 75 are relevant to showing Defendant's criteria for hiring and promoting during the relevant period, and also show the result of Corrective Action Reviews issued against white employees. Washington recognizes that promoting Deanna Brown in 2002 when he was injured in an auto accident and unable to work does not constitute an

27

actionable adverse employment action, but Brown's qualifications for the job explain what Defendant considered necessary or desirable in a full-time employee and parts service manager in 2002. The Court should overrule this portion of Defendant's Motion in Limine and admit Plaintiff's Exhibits 72, 73, 74, 75, 76, 77, 78, 79 and 80.

## IV. MAY JAMES MCIVER AND FRANKLIN WILSON TESTIFY AS WITNESSES?

### A. McIver

*1. Relevance.* McIver's testimony, as shown by his statement (Plaintiff's Exhibit 55) relates to an incident that occurred in January 2002 between Washington and Defendant's store manager in front of several customers. Washington contends this is part of a pattern of retaliation and hostile work environment, making McIver's testimony relevant to this suit.

*2. Reliability.* McIver will testify from first-hand knowledge. He is presumed to be a competent witness. *See* Fed. R. Evid. 601-602. Lay opinion grounded on first hand knowledge is admissible when helpful to the jury. Fed. R. Evid. 701.

*3. Probative Value.* Rule 403 excludes evidence if its probative value is substantially outweighed by unfair prejudice to the opponent, waste of time and confusion of the issues. McIver's evidence is probative of one potential adverse employment action within the statutory period. His evidence will be brief and will not waste the court's or the jury's time or confuse the issues in this case. Unfair prejudice to Defendant is nil.

### B. Wilson

*1. Relevance.* Wilson's testimony is relevant to establishing a hostile work environment

and as background evidence showing why adverse employment decisions taken against Washington from August 2001 to July, 2002, were part of a concerted plan to push Washington out of Defendant's Smyrna store. Wilson's evidence will be essentially that of his statement given in August 2000. (Plaintiff's Exhibit 21). Wilson was in a position to witness events occurring between Defendant's manager and Washington that he believed were racially-motivated. Wilson, a Parts Sales Manager, was part of Defendant's management team, a "white shirt." He spoke for Defendant as a junior manager. *See* (2) below for discussion of vicarious admissions.

    *2. Reliability.* Wilson's statement came from Defendant's business records, and is admissible as a business record under Fed. R. Evid. 803(6). Wilson's opinions and observations related to his work that included supervising Washington. His testimony amount to vicarious admissions. *See Mahlandt v. Wild Canid Survival, Inc.,* 588 F.2d 626 (8th Cir. 1978); Fed. R. Evid. 801(d)(2)(d). Since Wilson was part of Defendant's management team, his statements need not be founded on personal knowledge to be admissible. *Mahlandt,* 588 F.2d at 630-31.

    Wilson's live testimony before the Court and jury will traverse the same opinions and observations as appear in his statement. (Plaintiff's Exhibit 21). Any opinion expressed by Wilson relating to a hostile work environment at Defendant's Smyrna store are lay opinions based on first had observations and admissible under R. 701.

    The general standard for admitting lay opinion relating to racist motivation was spelled out in *Hester v. BIC Corp.,* 225 F.3d 178 (2nd Cir. 2000). The Court held that lay opinion evidence that management was motivated by racism was not based on being part of the decision-making team and was generally unhelpful to the jury and inadmissible. *Id.* at 185. The Court let stand its earlier decision that

allowed lay opinion evidence in an age discrimination case, *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898 (2d Cir. 1997). In *Lightfoot*, the 2nd Circuit held that Rule 701 allowed a former employee to give an opinion that age played a factor in the plaintiff's termination. The former employee had worked for Union Carbide for nearly twenty years, worked under the defendants accused of termination on account of age, and had been personally involved in the termination procedures. *Id.* at 911. Wilson was part of management, Washington worked under him and he was personally involved in the racist environment of Defendant's Smyrna Store.

    *3. Probative Value.* Wilson is the only living source, other than Washington, who was present at the Smyrna store when Findle called Washington a "boy." He is a disinterested witness who has no personal grudge against Defendant. Since Wilson will be present and subject to cross-examination on observed facts and on his opinion relating to racist conduct, any unfair prejudice to Defendant is minimized by the ability to impeach Wilson's credibility and to prove contrary admissions if any.

    *4. Evidence for Impeachment Purposes*

    McIver's statement ( Plaintiff's Exhibit 55) and Wilson's statement (Plaintiff's Exhibit 21) are listed because either party may change their story and the exhibits then become impeaching evidence. *See* Fed.R. Evid. 607.

    Therefore, McIver and Wilson should be permitted to testify as to their factual observations of racially discriminatory conduct directed at Washington, and in Wilson's case, lay opinion evidence relating to racism at Defendant's Smyrna store.

## CONCLUSION

    Therefore, Defendant's Motion in Limine should be denied because the Exhibits Defendant

seeks to suppress are relevant, authentic and not barred by any of the Federal Rules of Evidence or by Act of Congress.

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

Joseph J. Farnan, III (#3945)
1200 N. Broom St.
Wilmington, DE 19806
TEL: (302) 655-4200
jjf@pgslaw.com

and

Thomas J. Reed (admitted *Pro Hac Vice*)
Widener University School of Law
Delaware Volunteer Legal Services, Inc.
Veterans Assistance Program
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474

Date: January 30, 2008