# EXHIBIT A

MAY 3 1 2005

```
                                                                    1
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE
 2
    MELVERT WASHINGTON, JR.,         :
 3                                   :
         Plaintiff,                  :
 4                                   :  C.A. No.
         v.                          :  04-320 (SLR)
 5                                   :
    AUTOZONERS, INC., a Nevada       :
 6  corporation,                     :
                                     :
 7       Defendant.                  :

 8            Deposition of SHANE TREESH, taken

 9  pursuant to notice before Adam D. Miller, Registered

10  Professional Reporter and Certified Shorthand

11  Reporter, in the law offices of Phillips, Goldman &

12  Spence, P.A., 1200 North Broom Street, Wilmington,

13  Delaware, on Friday, May 13, 2005, beginning at

14  approximately 10:32 a.m., there being present:

15  APPEARANCES:

16            WIDENER UNIVERSITY SCHOOL OF LAW
                4601 Concord Pike
17              Wilmington, Delaware 19803
              BY:  THOMAS J. REED, ESQUIRE
18               -AND-
              PHILLIPS, GOLDMAN & SPENCE, P.A.
19              1200 North Broom Street
                Wilmington, Delaware 19806
20            BY:  JOSEPH J. FARNAN, III, ESQUIRE
              Attorneys for Plaintiff
21

22                 CORBETT & ASSOCIATES
                Registered Professional Reporters
23         1400 French Street    Wilmington, DE 19801
                       (302) 571-0510
24                 www.corbettreporting.com
```

1  or he would call him late. And Mel would just
2  express that he couldn't get there any faster or
3  whatever and that he mentioned it to Leon and
4  everyone what his, his set schedule was and it never
5  really changed.
6     Q.  What was Mr. Bynum's management policy at
7  your store about coming late to work?
8     A.  The individual, I think, just got a
9  talking-to.
10    Q.  Did Mr. Bynum make accommodations for
11 people who had job conflicts like Mr. Washington?
12    A.  He'd try to work around it. If you said
13 you needed certain hours or whatever, he would try to
14 put you in for it. But if the schedule didn't allow
15 it, he'd put you in where he needed you.
16    Q.  That would be with knowledge of what you
17 described to us with regard to -- I'm sorry. Let me
18 rephrase that.
19       Mr. Bynum knew that Mr. Washington had
20 given some guidance as to when he got off his job at
21 Delaware State; is that correct?
22    A.  Yes.
23    Q.  And when you were responsible for doing
24 the scheduling for Mr. Bynum, Mr. Bynum had you

1  schedule Mr. Washington such that he could not have
2  any break between his job and yours, other than
3  travel time?
4       A.   Yes.  He'd express to me what hours he
5  wanted him to work.  And then I would alter the
6  schedule so it would not be -- it wasn't exactly like
7  that, so he could get to work on time.
8            And the other AutoZoners, the parts
9  sales managers that did the schedule, would follow
10 what Leon told them and put him for, for those exact
11 hours.  I was the only one that really kind of tried
12 to work with his schedule and put him in to where he
13 could get to work on time.
14      Q.   Let's talk a minute about Mr. Washington's
15 request to go full time.  You told us about one or
16 two occasions when he asked about going full time.
17 Did he make the request again in the year 2002, if
18 you know?
19      A.   Yes.
20      Q.   And to whom did he make that request?
21      A.   To Leon again, because he was the current
22 manager.
23      Q.   When did that take place, if you know?
24      A.   I don't know.

SHANE TREESH

35

```
 1  any statement to the Delaware Department of Labor?
 2       A.   Yes.
 3       Q.   And tell us how that came about.
 4       A.   I talked it over with Mel.  And I just put
 5  together what I remembered happening on certain
 6  events, submitted them.
 7       Q.   And who typed that statement up, if you
 8  remember?
 9       A.   I typed it up on his computer.
10       Q.   And to whom did you deliver that
11  statement?
12       A.   I actually gave it to Melvert Washington,
13  and he submitted it.
14       Q.   And before you came to the deposition
15  today, did you have an opportunity to review that
16  statement?
17       A.   Yes.
18       Q.   And having now reviewed it, is that
19  statement true and accurate, to the best of your
20  knowledge, at the time you gave it?
21       A.   Yes, it is.
22            MR. REED:  May I have a minute to
23  consult with co-counsel.
24            MS. HILDAGO:  Sure.
```

CORBETT & ASSOCIATES