## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MELVERT WASHINGTON, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-320 (SLR) |
| | ) | |
| AUTOZONERS, INC., | ) | |
| | ) | |
| Defendant, | ) | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

PHILLIPS, GOLDMAN & SPENCE, PA
Joseph J. Farnan, III (Bar No. 3945)
1200 N. Broom St.
Wilmington, DE 19806
TEL: (302) 655-4200
jjf@pgslaw.com

and

Thomas J. Reed (*admitted Pro Hac Vice*)
Widener University School of Law
Delaware Volunteer Legal Services, Inc.
Veterans Assistance Program
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474

Date: February 1, 2008

Table of Contents

| No. | Instruction | Page |
|-----|-------------|------|
| 1 | Title VII I Introductory Instructions | Plaintiff-1 |
| 2 | Title VII Elements of a Title VII Claim–disparate treatment | Plaintiff-2 |
| 3 | Elements of a Title VII Action–Harassment–Hostile Work Environment | Plaintiff-4 |
| 4 | Title VII Definitions–Hostile or Abusive Work Environment | Plaintiff-6 |
| 5 | Title VII Definitions–Constructive Discharge | Plaintiff-9 |
| 6 | Elements of a Title VII Claim–Retaliation | Plaintiff-12 |
| 7 | Title VII Damages–Compensatory damages–General Instruction | Plaintiff-13 |

## PROPOSED INSTRUCTION 1

In this case, Melvert Washington, Jr., the Plaintiff, makes a claim under a Federal Civil Rights statute that prohibits employers from discriminating against an employee in the terms and conditions of employment because of the employee's race, color, religion, sex or national origin.

More specifically, Mr. Washington claims that Autozoners, Inc. the Defendant, discriminated against him on account of his race in the following ways:

1.  By creating a hostile work environment that forced him to quit his part-time job with Autozone;

2.  By retaliating against him for making a complaint to his superior about racial slurs in the workplace; and

3.  By refusing to hire him as a full time employee or to promote him to Parts Service Manager.

Defendant denies that Mr. Washington was discriminated against in any way. Further, Defendant denies that it retaliated against Mr. Washington in any way.

*Source:* 3rd Circuit Model Civil Jury Instruction 5.0

Plaintiff-1

**PROPOSED INSTRUCTION 2**

In this case, Mr. Washington is alleging that Autozone failed to take him on as a full-time employee and to promote him. In order for Mr. Washington to recover on this discrimination claim against Autozone, Mr. Washington must prove that Autozone intentionally discriminated against Mr. Washington. This means that Mr. Washington must prove that his membership in the African-American race was a motivating factor in Autozone's decision not to hire Mr. Washington full time or to promote him.

To prevail on this claim, Mr. Washington must prove both of the following by a preponderance of the evidence:

First, Autozone failed to hire Mr. Washington full time or to promote him; and

Second: Mr. Washington's membership in the African-American race was a motivating factor in Autozone's decision.

In showing that Mr. Washington's membership in the African-American race was a motivating factor for Autozone's actions, Mr. Washington is not required to prove that his membership in the African-American race was the sole motivation or even the primary motivation for Autozone's decision. Mr. Washington need only prove that his membership in the African-American race played a role in Autozone's decision not to hire him full time or to

promote him.

*Source:* 3rd Circuit Model Civil Jury Instruction 5.1.2.  *Desert Palace, Inc v. Costa,* 539 U.S. 90

(2003)

## PROPOSED INSTRUCTION 3

Mr. Washington claims that he was subject to harassment by Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum and that this harassment was motivated by Mr. Washington's race.

Autozone is liable for the actions of Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum if Mr. Washington proves all of the following elements by a preponderance of the evidence:

First, Mr. Washington was subjected to racial slurs, failure to hire full-time and failure to promote, poor sales performance reviews and repeated Corrective Action Records for minor infractions of Autozone rules and by a secret investigations into his conduct by  Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum

Second  Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum's conduct was not welcomed by Mr. Washington.

Third, Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum were motivated by the fact that Mr. Washington is an African-American.

Fourth: the conduct was so severe or pervasive that a reasonable person in Mr. Washington's position would find his work environment to be hostile or abusive. This element requires you to look at the evidence from the point of view of a reasonable African-American's reaction to Mr. Washington's work environment.

Fifth: Mr. Washington believed his work environment to be hostile or abusive as a result of Ralph Findle, Shawn Permelia, Ron Wertz, Tom Shehorn, Richard Henion, Brandon Diaz, and Leon Bynum's conduct.

Sixth: Mr. Washington suffered an adverse "tangible employment action" as a result of the hostile work environment; a tangible employment action is defined as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.

Seventh: Management level employees knew, or should have known, of the abusive conduct. Management level employees should have known of the abusive conduct if (1) an employee provided management level personnel with enough information to raise a probability of racial harassment in the mind of a reasonable employer, or if 2) the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

*Source:* 3rd Circuit Model Civil Jury Instruction 5.1.4.; *Jensen v. Potter*, 435 F.2d 444 (3rd Cir. 2006)

Plaintiff-5

## PROPOSED INSTRUCTION 4

In determining whether a work environment is "hostile" you must look at all of the circumstances which may include:

- The total physical environment of Mr. Washington's work area.

- The degree and type of language and insult that filled the environment before and after Mr. Washington arrived.

- The reasonable expectations of Mr. Washington upon entering the environment.

- The frequency of the offensive conduct.

- The severity of the conduct.

- The effect of the work environment on Mr. Washington's mental and emotional well-being

- Whether the conduct was unwelcome, that is, conduct Mr. Washington regarded as unwanted or unpleasant.

- Whether the conduct was pervasive.

- Whether the conduct was directed toward Mr. Washington.

- Whether the conduct was physically threatening or humiliating.

- Whether the conduct was merely a tasteless remark.

- Whether the conduct unreasonably interfered with Mr. Washington's work performance.

    Conduct that amounts only to ordinary socializing in the work place, such as occasional horseplay, occasional abuse of abusive language, tasteless jokes, and occasional teasing does not

constitute an abusive or hostile work environment. A hostile work environment can be found only if there is extreme conduct amounting to a material change in the terms and conditions of employment. Moreover, isolated incidents, unless extremely serious will not amount to a hostile work environment.

It is not enough that the work environment was generally harsh, unfriendly, unpleasant, crude or vulgar to all employees. In order to find a hostile work environment, you must find that Mr. Washington was harassed because of his race. The harassing conduct may, but need not be racial in nature. Rather, its defining characteristics is that the harassment complained of is linked to Mr. Washington's African-American race. The key question is whether Mr. Washington as a member of the African-American race, was subjected to harsh employment conditions to which men and women who were not of the African-American race were not.

It is important to understand that, in determining whether a hostile work environment existed at the Autozone store in Smyrna, you must consider the evidence from the perspective of a reasonable African-American. That is, you must determine whether a reasonable African-American would have been offended or harmed by the conduct in question. You must evaluate the total circumstances and determine whether the alleged harassing behavior could be objectively classified as the kind of behavior that would seriously affect the psychological or emotional well-being of a reasonable African American. The reasonable African-American is simply one of normal sensitivity and emotional make-up.

Plaintiff-7

*Source:*  3rd Circuit Model Civil Jury Instruction 5.2.1.;*Jensen v. Potter*, 435 F.2d 444 (3rd Cir.

2006);  *Bonenberger v. Plymouth Twp,* 132 F.3d 20 (3rd Cir. 1997).

## PROPOSED INSTRUCTION 5

Mr. Washington claims that Autozone discriminated against him because of Mr. Washington's complaint about racial slurs made to Autozone's Human Relations Department in August, 2000.

To prevail on this claim, Mr. Washington must prove all of the following by a preponderance of the evidence:

First, Mr. Washington, an African-American, made a written complaint to Autozone's senior management that Ralph Findle, his store manager, had used the racial slur "boy" directed at him in the presence of store customers.

Second: Mr. Washington was subjected to a materially adverse action at the time, or after, the protected conduct took place

Third: there was a causal connection between Autozone's repeated failures to hire Mr. Washington full-time or to promote him, a secret investigation into accusations made by white employees against Mr. Washington, changing Mr. Washington's part-time work schedule so that he could not come to work on time, and issuing Corrective Action Records for minor infractions and Mr. Washington's complaint about racial slurs in the workplace.

Concerning the first element, Mr. Washington need not prove the merits of his complaint about the use of racial slurs against him, but only that Mr. Washington was acting under a good faith belief that Mr. Washington's right to be free from discrimination on the basis of race was violated.

Concerning the second element, the term "materially adverse" means that Mr. Washington must show that Autozone's repeated failures to hire Mr. Washington full-time or to promote him, a secret investigation into accusations made by white employees against Mr. Washington, changing Mr. Washington's part-time work schedule so that he could not come to work on time, and issuing Corrective Action Records for minor infractions was serious enough that it well might have discouraged a reasonable worker from making further reports about the use of racial slurs or other acts of racial discrimination.

Concerning the third element, that of causal connection, that connection may be shown in many ways. For example, you may or may not find that there is a sufficient connection through timing, that is, Autozone's actions followed shortly after Autozone became aware of Mr. Washington's complaint about racial slurs. Causation is, however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Washington or a change in demeanor toward Mr. Washington.

Ultimately, you must decide whether Mr. Washington's complaint about racial slurs used by his manager had a determinative effect on Autozone's repeated failures to hire Mr.

Washington full-time or to promote him, a secret investigation into accusations made by white employees against Mr. Washington, changing Mr. Washington's part-time work schedule so that he could not come to work on time, and issuing Corrective Action Records for minor infractions. "Determinative effect" means that if not for Mr. Washington's complaint about racial slurs used by his manager, the Autozone's repeated failures to hire Mr. Washington full-time or to promote him, a secret investigation into accusations made by white employees against Mr. Washington, changing Mr. Washington's part-time work schedule so that he could not come to work on time, and issuing Corrective Action Records for minor infractions would not have occurred.

*Source:* 3rd Circuit Model Civil Jury Instruction 5.1.7; *Burlington N. & S. Ry v. White,* 126 S.Ct. 2405 (2006)

Plaintiff-11

**PROPOSED INSTRUCTION 6**


Mr. Washington claims that he was forced to resign due to Autozone's discriminatory conduct. Such a forced resignation, if proven, is called a "constructive discharge."


To hold Autozone liable for Mr. Washington's decision to resign, Mr. Washington must prove all of the following by a preponderance of the evidence:


First: Autozone intentionally made Mr. Washington's working conditions so intolerable that a reasonable person would feel forced to resign; note that mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not necessarily so intolerable as to compel a reasonable person to resign.


Second: Mr. Washington's membership in the African-American race was a motivating factor in defendant's conduct.


Third: Mr. Washington resigned from his position.


*Source:* 3rd Circuit Model Civil Jury Instruction 5.2.2; *Pennsylvania Police Dept. v. Suders*, 542 U.S. 129 (2004)


Plaintiff-12

**PROPOSED INSTRUCTION 7**

I am now going to instruct you am now going to instruct you on damages. Just because I am instructing you on how to ward damages does not mean that I have any opinion on whether or not [defendant] should be held  liable.


If you find by a preponderance of the evidence that Autozone intentionally discriminated against Mr. Washington in respect to subjecting him to a hostile work environment, to constructive discharge, to retaliation for making a complaint about racial slurs in the work place and/or failure to hire full-time or to promote due to racial discrimination, then you must consider the issue of compensatory damages. You must award Mr. Washington an amount that will fairly compensate him or any injury that Mr. Washington actually sustained as a result of Mr. Washington's conduct. The damages that you ward must be fair compensation. no more and no less. The award of compensatory damages is meant to put Mr. Washington in the position that he would have occupied if the discrimination had not occurred.   Mr. Washington has the burden of proving damages by a preponderance of the evidence.


Mr. Washington must show that the injury would not have occurred without Autozone's act or omission.  Mr. Washington must also show that Autozone's act or omission played a substantial part bringing about the injury, and that the injury was either a direct result or a reasonably probable consequence of Autozone's acts or omissions. This  test-- a substantial part in bringing about the injury-- is to be distinguished from the test you must employ in determining

whether Autozone's actions or omissions were motivated by discrimination. In other words, even assuming that Autozone's actions or omissions were motivated by discrimination, Mr. Washington is not entitled to damages for an injury unless Autozone's discriminatory actions or omissions actually played a substantial part in bringing about that injury.

There can be more than one cause of injury. To find that Autozone's acts or omissions caused Mr. Washington's injury, you need not find that Autozone's acts or omissions was the nearest cause, either in time or space. However, if Mr. Washington's injury was caused by a later, independent, event that intervened between Autozone's acts or omissions and Mr. Washington's injury, Autozone is not liable unless the injury was reasonably foreseeable by Autozone.

In determining the amount of any damages that you decide to award, you should be guided by common sense, You must use sound judgment in fixing an award of damages. drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation. or guesswork.

You may award damages for any pain, suffering, inconvenience, mental anguish, or loss of enjoyment of life that Mr. Washington experienced as a consequence of Autozone's alleged unlawful acts or omissions  No evidence of the monetary value of such intangible things as pain and suffering has been, or need be. introduced into evidence. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award you make

would he fair in light of the evidence presented at the trial,

I instruct you that in awarding compensatory damages, you are not to award damages for the mount of wages that Mr. Washington would have earned, either in the pastor in the future, if he had continued in employment with Autozone. These elements of recovery of wages that plaintiff would have received from defendant are called "back pay" and "front pay".Under applicable law, the determination of 'back pay' and "front pay' is for the court. "Back pay"and "front pay" are to he awarded separately under instructions that I will soon give you, and any amounts for "back pay" and 'front pay" are to be entered separately on the verdict form.

You may award damages for monetary losses that Mr. Washington may suffer in the future as a result of Autozone's allegedly unlawful acts or omissions. For example. you may award damages for loss of earnings resulting from any harm to Mr. Washington's reputation that was suffered as a result of Autozone's allegedly unlawful acts or omissions. Where a victim of discrimination has been terminated by an employer, and has sued that employer for discrimination, he may find it more difficult to be employed in the future. or may have to take a job that pays less than if the discrimination had not occurred. That element of damages is distinct from the amount of wages Mr. Washington would have earned in the future from Autozone if he had retained the job.

As I instructed you previously. Mr. Washington has the burden of proving damages by a preponderance of the evidence. But the law does not require that Mr. Washington prove the

Plaintiff-15

amount of his losses with mathematical precision; it requires only as much definiteness and accuracy circumstances permit.

You are instructed that Mr. Washington has a duty under the law to 'mitigate' his damages - that means that Mr. Washington must take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by Autozone. It is Autozone's burden to prove that Mr. Washington has failed to mitigate. So if Autozone persuades you by a preponderance of the evidence that Mr. Washington failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of Mr. Washington's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In assessing damages, you must not consider attorney fees or the costs of litigating this case.  Attorney fees and costs, if relevant at all, are for the court and not the jury to determine. therefore. attorney fees and costs should play no part in your calculation of any damages.

*Source:*  3rd Circuit Model Civil Jury Instruction 5.4.1.

Plaintiff-16

Respectfully submitted,

PHILLIPS, GOLDMAN & SPENCE, P.A.

Joseph J. Farnan, III (#3945)
1200 N. Broom St.
Wilmington, DE 19806
TEL: (302) 655-4200
jjf@pgslaw.com

and

Thomas J. Reed (admitted *Pro Hac Vice*)
Widener University School of Law
Delaware Volunteer Legal Services, Inc.
Veterans Assistance Program
4601 Concord Pike
P.O. Box 7474
Wilmington, DE 19803-7474

Date: February 1, 2008