IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELVERT WASHINGTON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-320 (SLR) |
| | ) |
| AUTOZONER, INC., a Nevada Corporation | ) |
| | ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF**
**DEFENDANT AUTOZONE'S MOTION *IN LIMINE***

Matthew F. Boyer (Del Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 252-4217
Facsimile: (302) 658-0380
Email: mboyer@cblh.com
Email: tholly@cblh.com

Tracy F. Kern (LA Bar #20246)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENÈGRE,
L.L.P.
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8134
Facsimile: (504) 589-8134
E-mail: tkern@joneswalker.com

Laurie M. Chess (Fla. Bar #655751)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENEGRE,
L.L.P.
601 Brickell Key Drive, Suite 500
Miami, Florida 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
E-mail: lchess@joneswalker.com

*Counsel for Defendant, AutoZone, Inc.*

DATED: February 4, 2008

I. **INTRODUCTION**

AutoZone's assumptions about Plaintiff's intent to try to litigate claims at trial that have already been dismissed and claims that are time-barred were correct - - Plaintiff is indeed seeking to litigate claims of a **racially** hostile work environment and **racial discrimination** (claims never asserted in his Delaware Department of Labor ("DDOL") charge, and thus not properly before this Court), and to litigate claims that this Court has already dismissed, such as his failure to promote, racially differential treatment, and any claims based on a discrete act that occurred before August of 2001. In his Opening Brief in Opposition to Defendant's Motion *in Limine* ( "Plaintiff's Opposition")[1], Plaintiff responds by asserting that all of the evidence is "background evidence" for his constructive discharge and/or retaliation claims. Plaintiff fails to cite any authority to suggest that "background evidence" trumps the Federal Rules of Evidence and case law interpreting this. Indeed the decisions Plaintiff cites deal with drug courier profiles - - something not at issue in this litigation. (Opposition, pp. 19-21).[2] The second means by which Plaintiff seeks to introduce this inadmissible evidence is to impermissibly blend his hostile work environment claim with his promotion claims and other claims of disparate treatment.

What AutoZone did not anticipate is that Plaintiff would seek to add NEW claims to this litigation a few weeks before trial. As will be discussed below, Plaintiff claims that earnings records of Thomas Sheeron, David Sobotkin, James Zambrano, and Pilar Sanchez are relevant to show that "Washington's pay as a part-time employee was lower than others at the Smyrna store

---

[1] Because AutoZone adopted the form of a Memorandum of Points and Authorities in support of its motion, Plaintiff's "response" should have been in the form of a memorandum, rather than a brief.

[2] While Plaintiff's solicitation of drugs and resulting bad conduct discharge is at issue as explained in AutoZone's Answering Brief to Plaintiff's Motion *in Limine*, any "profiling" of any witness or plaintiff is not relevant to this proceeding.

I. **INTRODUCTION**

AutoZone's assumptions about Plaintiff's intent to try to litigate claims at trial that have already been dismissed and claims that are time-barred were correct - - Plaintiff is indeed seeking to litigate claims of a **racially** hostile work environment and **racial discrimination** (claims never asserted in his Delaware Department of Labor ("DDOL") charge, and thus not properly before this Court), and to litigate claims that this Court has already dismissed, such as his failure to promote, racially differential treatment, and any claims based on a discrete act that occurred before August of 2001. In his Opening Brief in Opposition to Defendant's Motion *in Limine* ( "Plaintiff's Opposition")[1], Plaintiff responds by asserting that all of the evidence is "background evidence" for his constructive discharge and/or retaliation claims. Plaintiff fails to cite any authority to suggest that "background evidence" trumps the Federal Rules of Evidence and case law interpreting this. Indeed the decisions Plaintiff cites deal with drug courier profiles - - something not at issue in this litigation. (Opposition, pp. 19-21).[2] The second means by which Plaintiff seeks to introduce this inadmissible evidence is to impermissibly blend his hostile work environment claim with his promotion claims and other claims of disparate treatment.

What AutoZone did not anticipate is that Plaintiff would seek to add NEW claims to this litigation a few weeks before trial. As will be discussed below, Plaintiff claims that earnings records of Thomas Sheeron, David Sobotkin, James Zambrano, and Pilar Sanchez are relevant to show that "Washington's pay as a part-time employee was lower than others at the Smyrna store

---

[1] Because AutoZone adopted the form of a Memorandum of Points and Authorities in support of its motion, Plaintiff's "response" should have been in the form of a memorandum, rather than a brief.

[2] While Plaintiff's solicitation of drugs and resulting bad conduct discharge is at issue as explained in AutoZone's Answering Brief to Plaintiff's Motion *in Limine*, any "profiling" of any witness or plaintiff is not relevant to this proceeding.

from August of 2001 to July 2002." (Opposition, p. 27). Plaintiff overlooks the fact that he has never made a disparate **pay** claim and has made no failure to promote claim with respect to **any** of these individuals. Because Plaintiff never asserted these claims, no discovery has been conducted on them. Should Plaintiff be permitted to not only introduce evidence pertaining to claims that have been dismissed and/or not properly asserted through the "backdoor," but also to present evidence regarding claims that have never been asserted, the unfair prejudice to AutoZone is clear. AutoZone will be placed in the position of having to defend claims on which it has already prevailed through summary judgment and claims that have never been addressed.

With respect to the DDOL proceeding, Plaintiff claims all of the evidence he submitted (his statements and those of others) as well as the DDOL cause determination are relevant because AutoZone denies Plaintiff exhausted his administrative remedies before filing suit. (Opposition, p. 8). AutoZone does deny that Plaintiff exhausted his administrative remedies on any RACE discrimination claim or claim pertaining to a discrete act that occurred before August of 2001. There is **no** dispute that Plaintiff properly exhausted administrative remedies on his retaliation claim and that he was not required to file a second charge with the DDOL concerning his claim of constructive discharge. AutoZone has always been willing to enter into a stipulation that Plaintiff exhausted all administrative remedies before the DDOL and the Equal Employment Opportunity Commission on his claim **for retaliation**. Plaintiff has not agreed to such a stipulation. Because Plaintiff seeks to litigate claims never raised before the DDOL, Plaintiff has never agreed to enter into such a stipulation.

Finally, Plaintiff tries to create more issues and confusion over matters that are not even in dispute. Plaintiff claims that AutoZone has objected to certain of Plaintiff's exhibits that AutoZone has **not** moved to exclude, such as 9, 12, 37, 81-84, 86-91. AutoZone does not contest

the admissibility of these documents and has neither moved to exclude them nor objected to their admissibility in the PreTrial Order. Thus, Plaintiff's arguments about the admissibility of these documents are irrelevant.

II. **Law and Argument**

    A. **Evidence and Testimony Submitted to the DDOL or Related to the DDOL Investigation and the Contents of the DDOL Letter and Notice of Reasonable Cause Finding Are Not Admissible.**

Plaintiff claims that all of these documents are admissible to show Plaintiff exhausted his administrative remedies and that the statements of Plaintiff and his witnesses are not hearsay because they may be used to "refresh a witness's recollection or to impeach a retracting witness." (Opposition, p. 9). Again, AutoZone does not dispute either that Plaintiff filed a **retaliation** charge with the DDOL or that he was issued a right to sue on his **retaliation** claim.

A key dispute that has arisen in this litigation is whether Plaintiff may litigate a claim for racial discrimination or racial harassment when Plaintiff did not raise these claims in his DDOL charge. To the contrary, in his charge (which governs the scope of these proceedings), Plaintiff claimed that AutoZone retaliated against him by "denying [him] the opportunity to advance by way of promotion and have created a hostile work environment by accusing [him] of violating standard company policies, which [he has] not." (Attachment E to previously filed Affidavit of Tim Holly). A **retaliatory** hostile work environment claim is NOT the same as a **racially** hostile work environment claim as the alleged cause of conduct is completely different. In the **retaliation** context, a plaintiff would have to show his work environment was permeated with insult and injury **due to the fact he engaged in protected activity**. *Hamera v. County of Berks*, 248 Fed. Appx. 422, 424 (3d Cir. 2007). In a **racially** hostile work environment, a plaintiff would have to show this conduct was due to his **race**. *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005). Plaintiff never checked the "race" box on his DDOL charge or made any

factual allegations that AutoZone mistreated him due to his **race**. Thus, to the extent Plaintiff is trying to litigate any claim of race discrimination (be it disparate treatment or a hostile work environment), AutoZone cannot and will not stipulate that Plaintiff exhausted his remedies on such a claim. However, AutoZone will stipulate to the fact that Plaintiff filed a charge and that he received his right to sue on his retaliation claim. Therefore, Plaintiff's charge and all documents that were created in connection with it, which mainly concerned his failure to obtain a full time position (a claim this Court **dismissed**) is not relevant and is unfairly prejudicial because it recounts allegations of discrimination not at issue and because it pertains to promotion and disparate treatment claims that have been dismissed.

With respect to the statements Plaintiff and his witnesses gave to the DDOL, Plaintiff failed to offer any authority to contradict the well-settled rule that such statements are hearsay. Rather, he claims that these documents should be admitted because they are relevant. As Plaintiff recognizes, however, "relevant" evidence is not admissible if excluded by the other Federal Rules of Evidence. (Opposition, p. 14). This evidence is not relevant for the reasons discussed above, but even if relevant, they are still hearsay without exception.

Plaintiff also claims the statements are necessary to refresh the memories of witnesses or to impeach them. (Opposition, pp. 9, 14). That is not a recognized exception to the hearsay rules.

Plaintiff claims that these statements are kept by the DDOL in the regular course of its business, ostensibly to argue that these documents are admissible under Fed.R.Evid. 803(6). The "business records" exception pertains to documents "made at or near the time by . . . a person with knowledge, if kept in the course of a regularly conducted **business** activity, and if was the regular practice of that business activity to make the memorandum . . ." Fed.R.Evid. 803(6),

(emphasis added). While this Rule may provide for the admissibility of certain documents **created** by the DDOL, it does not apply to documents **Plaintiff and others** chose to voluntarily submit to the DDOL. Plaintiff and his witnesses are not businesses, let alone individuals who make or keep statements as part of a "regularly conducted business activity." Therefore, the statements are hearsay without any exception.

Plaintiff's final argument is that these statements should come under the general "catch all exceptions" to the hearsay rules and Fed.R.Evid. 807 in case the witnesses are not available to testify. (Opposition, p. 16). Given that AutoZone did not have the opportunity to cross-examine these witnesses when they gave their statements to the DDOL, there is no indicia of reliability or trustworthiness to them.

With respect to the DDOL cause determination, Plaintiff fails to offer any argument regarding admissibility other than he needs this to show the chain of events to satisfy exhaustion of administrative remedies requirements. (Opposition, p. 17). While he argues the document is admissible pursuant to Rule 803(8), he fails to address the numerous decisions cited by AutoZone which recognize the minimal relevance and great potential for unfair prejudice and confusion of the issues when a *cause* determination is admitted in a **jury** trial. It is telling that Plaintiff fails to identify even one decision in which a cause determination was admitted in evidence in a jury trial. Accordingly, the cause determination should be excluded.

**B.    Testimony and Evidence Regarding Plaintiff's Dismissed Claims As Well as NEW Claims Plaintiff Appears To Be Asserting Should Be Excluded.**

Throughout this entire litigation, the only people Plaintiff claims got full time positions that Plaintiff should have received are Shane Treesh, Deanna Brown, and Robert Baker. This Court squarely held that any promotion claim related to Mr. Treesh was time-barred because Mr. Treesh received his positions in May and December of 2000, any promotion claim related to Mr.

Baker was time-barred because Mr. Baker was hired and promoted in August of 2000 and February of 2001, and Plaintiff could not base any claim on Ms. Brown's promotion because Plaintiff was not similarly situated to her. (Docket 54, pp. 11-13). This Court also ruled that "any discrete event occurring before August 2001 is time-barred under Title VII." (Docket 54, p. 12).

On the one hand, Plaintiff seems to recognize that his failure to promote claim with respect to any positions held by Robert Baker, Shane Treesh, and Deena Brown, have been dismissed by this Court. (Opposition, pp. 10, 26-28). Yet, on the other, he claims these personnel and earnings records of these individuals are relevant as "background evidence" to support his retaliation claim and to show "criteria for hiring and promoting during the relevant period." (Opposition, pp. 10, 27). This is illogical. The Court has already ruled that Plaintiff may not base any claim on the positions held by these individuals. AutoZone should not have to defend a claim that this Court has already dismissed.

More troubling is Plaintiff's explanation of why he "needs" earnings records of other individuals (in addition to those of Mr. Baker, Mr. Treesh, and Ms. Brown), Pilar Sanchez, Thomas Shehorn, David Sobotkin, and James Zambrano. Plaintiff claims that these records are necessary to show "the qualifications needed for full-time work and for a Parts Sales Manager" and to show "comparable earnings for full-time employees." (Opposition, pp. 26, 27).[3] From the inception of this litigation through the Pretrial Order filed on January 30, 2008, Plaintiff has **never** asserted that he should have received any position obtained by these individuals.

---

[3] As discussed in AutoZone's Opposition to Plaintiff's Motion to Strike, Plaintiff claims that his expert needs these records to draft a new expert report, and AutoZone objects to any new report being generated at this 11th hour and to any testimony by Dr. David Black at all since his testimony should have to be limited to the report he gave in July of 2005 - - which Plaintiff concedes is **not** relevant any more.

Nor could Plaintiff base any promotion claim comparing himself to any of these individuals because **all** of these new comparators received their positions **well before August of 2001**: Mr. Sobotkin was hired on August 9, 2000 (produced to Plaintiff as D358) and received a full time position at least as of June 2001 (produced to Plaintiff as D388-389); Mr. Zambrano was hired as a full time employee on February 18, 2000 (produced to Plaintiff as D824) and became a PSM on May 7, 2000 (produced to Plaintiff as D825); Mr. Shehorn was hired as a full time employee on May 11, 1998 (produced to Plaintiff as D549) and became a PSM on November 21, 1999 (produced to Plaintiff as D544); and Ms. Sanchez was hired on August 28, 2000 (produced to Plaintiff as D359) and was promoted to a full time PSM position in November of 2000 (produced to Plaintiff as D416-17). All of these documents are attached hereto as Exhibit 1. Thus, because these individuals **all** obtained a full-time and/or PSM position well before August of 2001 (and most before Mr. Treesh and Mr. Baker), none of their earnings records or personnel documents are relevant. Moreover, having to not only defend against claims that have been dismissed but against NEW claims would be extremely and unfairly prejudicial to AutoZone.

C.  **Testimony and Evidence Pertaining to Untimely Allegations and Allegations as to Which Plaintiff Failed to Exhaust His Administrative Remedies Should Be Prohibited.**

Plaintiff argues that testimony and evidence pertaining to his original race discrimination complaint in 2000, his disputes with his co-workers in 2000, and countless documents pertaining to what Plaintiff characterizes as "additional discrimination in the workplace" (Opposition, p. 22) are admissible as evidence of: "'background evidence' of inextricably intertwined acts by Defendant's employees in retaliation for Washington's 2000 racial discrimination; 'background evidence' for Plaintiff's expert . . . , [sic] and evidence of a continuing series of events constituting a hostile work environment." (Opposition, p. 18).

As discussed above, Dr. Black should not be able to use these documents. With respect to "background evidence" of retaliation, a plaintiff need not prove the merit of his underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997); *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005); *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir. 1989). AutoZone will stipulate that: (1) Plaintiff complained to the company in 2000 in good faith that he believed he was being discriminated against and (2) the company received and investigated Plaintiff's complaint. In light of such a stipulation, the underlying details of Plaintiff's complaint and the company's investigation are **not** relevant to Plaintiff's remaining retaliation and constructive discharge claims and, therefore, are **not** admissible. In *Churney v. Village of Downers Grove*, 122 F.Supp.2d 921 (N.D. Ill. 2000), an employee sued her former employer claiming that it retaliated against her for filing a sex discrimination charge. The employer filed a motion *in limine* to exclude "all evidence and testimony regarding the allegations made in this charge" and offered to stipulate that a charge was filed and the employee received a right to sue. In granting the employer's motion, the court aptly noted that "the only relevant aspect of [the employee's] charge of discrimination is the fact that it was filed. That is, therefore, **the only evidence that should be admitted.**" *Id.* at 922. Similarly, the underlying allegations behind Plaintiff's complaint to AutoZone are not relevant to his retaliation claim - - but merely the fact that he complained of what he believed to be discriminatory conduct - - a fact AutoZone will stipulate to.

Moreover, Plaintiff never asserted a racial discrimination or racial harassment allegation in his DDOL charge. Should AutoZone have to defend itself against actions never raised in the DDOL proceeding (and which are obviously time-barred), the potential for unfair prejudice and

confusion of the issues is obvious. Plaintiff admits that he cannot seek to hold AutoZone liable for the underlying alleged racial harassment and discrimination that led him to complain in 2000. (Opposition, p. 19). However, should the jury hear evidence regarding his complaint, the jury will likely think AutoZone can be held liable for a claim of racial harassment or racial discrimination - - which is NOT at issue in this litigation.

With respect to Plaintiff's argument that all of the alleged disparate treatment and harassment that occurred before August of 2001 can serve as "background evidence" for his retaliatory hostile work environment claim, Plaintiff is mistaken. Plaintiff is attempting to impermissibly blur a racial discrimination claim (not at issue in this litigation) with his retaliation and constructive discharge claims. Plaintiff claims he was subjected to a hostile work environment due to his complaint to the company in 2000 (*i.e*, retaliated against) and that this retaliatory hostile work environment forced him to resign in July of 2002 (*i.e.*, constructively discharged). Plaintiff cannot try to interject a discrimination claim (not raised) with his retaliatory hostile environment claim. *See Lester v. Natsios*, 290 F.Supp.2d 11, 33 (D.D.C. 2003) ("[d]iscrete acts constituting discrimination or retaliation **are different in kind from a hostile work environment that must be based on severe or pervasive discriminatory intimidation or insult**" (emphasis added); *Parker v. State, Dep't of Public Safety*, 11 F.Supp.2d. 446, 475 (D. Del. 1998) (". . . the dangers of allowing standard disparate treatment claims to be converted into a contemporaneous hostile work environment claims are apparent. Such an action would significantly blur the distinctions between both the elements that underpin each cause of action and kinds of harm each cause of action was designed to address. . ."); *Gardner v. Tripp County, South Dakota*, 66 F.Supp.2d 1094, 1100-01 (D.S.D. 1998) (retaliation claims are distinct from hostile work environment claims because "if the same set of facts could support both

claims, state and federal regulations that provide a separate cause of action for retaliatory acts would be rendered superfluous").

Similarly, Plaintiff cannot try to introduce evidence pertaining to untimely, discrete acts, under the guise as "background evidence."

### D. Testimony and Report of Dr. David Black Should Be Prohibited.

In its Motion *in Limine*, AutoZone presented three grounds for excluding Dr. Black: (1) his testimony was not relevant any longer because his entire 2005 report was based on a comparison between Plaintiff and Shane Treesh, and this Court already ruled that Plaintiff could not base any failure to obtain a full time position or management position on the positions held by Mr. Treesh; therefore, his testimony based on this report and his report should be excluded pursuant to Fed.R.Evid. 401; (2) his testimony would be confusing to the jury and unfairly prejudicial because it would lead to AutoZone having to defend itself against a promotion claim that this Court has already dismissed (the failure to promote claims with respect to positions obtained by Mr. Treesh); therefore, he should be prohibited from testifying or offering his report pursuant to Fed.R.Evid. 403; and (3) his testimony could not satisfy the requirements of *Daubert* because it and his report were based on a comparison to one employee that is no longer at issue in this trial and because the report did not take into account Plaintiff's post-AutoZone earnings; therefore, his testimony should be excluded pursuant to Fed.R.Evid. 702.

Plaintiff's Opposition does **not** address the inadmissibility of Dr. Black's testimony. Plaintiff did file a Motion to Strike Defendant AutoZone's Motion *in Limine* as to Plaintiff's Economic Expert. However, the sole basis for that motion is that the Scheduling Order issued in January 3, 2005 stated that *Daubert* motions must be brought by August 22, 2005, and his argument that AutoZone's Motion *in Limine* is untimely. (Motion to Strike, ¶ 7). Plaintiff has not

timely addressed the Rule 401 and 403 arguments. Indeed, Plaintiff admits that Dr. Black's testimony and report is based on calculations of earnings of one full-time employee in the Smyrna store, Shane Treesh, and asserts that because this comparison is no longer relevant, Dr. Black "needs information from Defendant's [other] comparable employees [alleged to be Pilar Sanchez, Thomas Shehorn, James Zambrano, and David Sobotkin] in order to make an economic loss forecast that would be **useful** to the jury in appraising the damage. . . . .**Otherwise, Dr. Black would have no information on the earnings of a full time sales associate or part sales manager and his conclusions would be flawed**" (Opposition, pp. 10, 26) (emphasis added).

Plaintiff also seems to recognize that Dr. Black's report is not relevant because Dr. Black failed to take into account Plaintiff's duty to mitigate his damages and his report would have to include this information to make the report meaningful. (Opposition, pp. 6-7, 11). AutoZone agrees. Accordingly, for the reasons set forth in AutoZone's original Memorandum of Points and Authorities and in its Opposition to Plaintiff's Motion to Strike, Docket 59), Dr. Black should be excluded from testifying and his report should be deemed inadmissible.

E.   **Testimony of Franklin Wilson Should Be Prohibited.**

Plaintiff admits that Mr. Wilson's testimony would be limited to that set forth in a statement (Plaintiff's Exhibit D (21)). (Opposition, pp. 28-29). Thus, the only testimony Mr. Wilson would be offering is that PLAINTIFF told him that Mr. Findle called him a "boy" in 2000 and that Mr. Findle allegedly admitted to calling him a "boy" and denied it was racial. This testimony would only be relevant had Plaintiff asserted a racially hostile work environment claim, which he has NOT. Thus, Mr. Wilson has no admissible testimony to offer.

F.  **Personnel Records and Earning Records of Robert Baker, Deanna Brown, James Zambrano, Shane Treesh, Thomas Shehorn, Pilar Sanchez, and Brandon Diaz Should Be Prohibited (Exhibit H (72-80, and 85)).**

As discussed above, Plaintiff may not base any claim on his failure to obtain positions held by any of these individuals. Thus, the earnings records and personnel documents pertaining to them are irrelevant.

G.  **Plaintiff's Tax Records from Years 2000-2001 Should Be Prohibited.**

Again, Plaintiff claims these records are relevant because his expert needs them to **redo** his previously submitted expert report "to make his calculations in order to account for any mitigation of damages." (Opposition, p. 11). First, AutoZone has not, as Plaintiff alleged, objected to the use of his 2002 records, but rather his 2000 and 2001 records. Second, as explained above, the expert report deadline passed three years ago. Plaintiff's expert should not be permitted to redo his report at the 11th hour.

III.  **CONCLUSION**

Plaintiff is attempting not only to litigate claims that have been dismissed and claims over which he failed to exhaust his administrative remedies, but also to assert completely new claims -- all under the guise as "background evidence." From the proposed verdict form, jury instructions, and Plaintiff's Opposition, it is clear that Plaintiff wants to litigate everything that ever allegedly happened to him from the inception of his employment in 1999 until he quit in 2002. Such a tactic completely ignores not only the Court's summary judgment ruling, but also the procedures required to bring Title VII claims. In addition to ignoring these substantive rules and the Court's ruling, the Plaintiff's tactics will extend this trial if Plaintiff is permitted to introduce evidence of race discrimination that he never previously asserted and which have no relevance to any remaining claims, as well as to add new promotion claims. AutoZone will be

forced to defend itself against these allegations. Accordingly, for the reasons set forth herein as well as in its opening Memorandum of Points and Authorities, AutoZone asks this Court to exclude: 1) any testimony or evidence by Plaintiff or others submitted in connection with the Delaware Department of Labor ("DDOL") investigation, the DDOL investigation itself, and the DDOL Notice of Reasonable Cause Finding; (2) any testimony or evidence pertaining to Plaintiff's failure to promote claim that was dismissed upon AutoZone's Motion for Summary Judgment; (3) any testimony or evidence pertaining to discrete acts that occurred before August of 2001 and to claims over which Plaintiff failed to exhaust his administrative remedies; (4) testimony by Dr. David Black; (5) testimony of James McIver; (6) testimony of Franklin Wilson; (7) "personnel records" and "earnings records" of Robert Baker, Deanna Brown, James Zambrano, Shane Treesh, Thomas Shehorn, Pilar Sanchez, and Brandon Diaz; and (8) plaintiff's tax records from years 2000 and 2001.

Respectfully Submitted,

*/s/ Tim M. Holly*
Matthew F. Boyer (Del Bar No. 2564)
Timothy M. Holly (Del. Bar No. 4106)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 North Orange St.
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 252-4217
Facsimile: (302) 658-0380
Email: mboyer@cblh.com
Email: tholly@cblh.com

<div style="display: flex;">
<div>

Tracy F. Kern (LA Bar #20246)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENÈGRE,
L.L.P.
201 St. Charles Avenue, 47th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8134
Facsimile: (504) 589-8134
E-mail: tkern@joneswalker.com

</div>
<div>

Laurie M. Chess (Fla. Bar #655751)
JONES, WALKER, WAECHTER,
POITEVENT, CARRERE & DENEGRE,
L.L.P.
601 Brickell Key Drive, Suite 500
Miami, Florida 33131
Telephone: (305) 679-5728
Facsimile: (305) 679-5710
E-mail: lchess@joneswalker.com

*Counsel for Defendant, AutoZone, Inc.*

</div>
</div>

DATED: February 4, 2008